1    GREGORY R. McCLINTOCK, P.C.
     WARD L. BENSHOOF, P.C.
2    PATRICK W. DENNIS
     ELAINE M. LEMKE
3    **McCLINTOCK, WESTON, BENSHOOF,**
        **ROCHEFORT, RUBALCAVA & MacCUISH**
4    444 South Flower Street, Fifth Floor
     Los Angeles, California 90071
5    Telephone: (213) 623-2322

6    Attorneys for Defendant, Counter-
     claimant and Cross-Claimant POTLATCH CORPORATION
7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11   UNITED STATES OF AMERICA, et    )    NO. CV 90-3122-AAH (JRx)
     al.,                             )
12                                    )    ANSWER OF DEFENDANT
               Plaintiffs,            )    POTLATCH CORPORATION TO
13                                    )    FIRST AMENDED COMPLAINT;
         vs.                          )    COUNTERCLAIMS; CROSS-
14                                    )    CLAIMS; DEMAND FOR JURY
     MONTROSE CHEMICAL CORPORATION OF )    TRIAL
15   CALIFORNIA, et al.,              )
                                      )
16             Defendants.            )
     _____ )
17   POTLATCH CORPORATION,            )
                                      )
18             Counterclaimant,       )
                                      )
19        vs.                         )
                                      )
20   UNITED STATES OF AMERICA, THE    )
     SECRETARY OF COMMERCE, THE       )
21   SECRETARY OF THE INTERIOR, THE   )
     UNDERSECRETARY FOR OCEANS AND    )
22   ATMOSPHERE, THE ADMINISTRATOR OF )
     THE ENVIRONMENTAL PROTECTION     )
23   AGENCY, STATE OF CALIFORNIA,     )
     STATE LANDS COMMISSION,          )
24   DEPARTMENT OF FISH AND GAME,     )
     DEPARTMENT OF PARKS AND          )
25   RECREATION, DEPARTMENT OF HEALTH )
     SERVICES, CALIFORNIA STATE WATER )
26   RESOURCES BOARD, and LOS ANGELES )
     REGIONAL WATER QUALITY CONTROL   )
27   BOARD,                           )
                                      )
28             Counterdefendants.     )
     _____ )

wlb\potlatch\pld\answer.3

1                              SERVICE LIST

2

3    Ian Fan
     Assistant United States Attorney
4    1100 United States Courthouse
     312 North Spring Street
5    Los Angeles, California  90012
     **(Attorneys for UNITED STATES OF AMERICA,**
6    **THE SECRETARY OF COMMERCE, THE SECRETARY OF THE**
     **INTERIOR, THE UNDERSECRETARY FOR OCEANS AND**
7    **ATMOSPHERE, THE ADMINISTRATOR OF THE ENVIRONMENTAL**
     **PROTECTION AGENCY)**

8

9
     B. Richard Marsh, Esq.
10   Wesley G. Beverlin, Esq.
     Knapp, Marsh, Jones & Doran
11   Manulife Plaza, Suite 1240
     515 S. Figueroa Street
12   Los Angeles, California  90071
     **(Attorneys for COUNTY SANITATION DISTRICT**
13   **NO. 2 OF LOS ANGELES COUNTY)**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                  2

```
 1   POTLATCH CORPORATION,              )
                                        )
 2              Cross-Claimant,         )
                                        )
 3        vs.                           )
                                        )
 4   COUNTY SANITATION DISTRICT NO. 2)
     OF LOS ANGELES,                    )
 5                                      )
                Cross-Defendant.        )
 6   _____)
                                        )
 7   POTLATCH CORPORATION,              )
                                        )
 8              Cross-Claimant,         )
                                        )
 9        vs.                           )
                                        )
10   COUNTY SANITATION DISTRICT NO. 2)
     OF LOS ANGELES, and DOES 1        )
11   through 40,000, being a class of)
     persons and entities similarly   )
12   situated,                         )
                                        )
13              Cross-Defendant.        )
     _____)
14
```

## I.

## ANSWER

COMES NOW defendant Potlatch Corporation ("Potlatch"), and responding for itself alone to the First Amended Complaint, answers and alleges as follows:

1. To the extent paragraph 1 of plaintiffs' First Amended Complaint contains conclusions of law, it requires no response. Potlatch is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies the same.

2. To the extent paragraph 2 of plaintiffs' First Amended Complaint contains conclusions of law, it requires no

1    response.  Potlatch is without knowledge or information sufficient

2    to form a belief as to the truth of the remaining allegations and

3    therefore denies the same.

4         3.  Potlatch admits this Court has jurisdiction over

5    this action.

6         4.  Responding to paragraph 4 of the First Amended

7    Complaint, Potlatch denies the factual allegations thereof, except

8    that Potlatch admits that plaintiffs have alleged injury occurring

9    in this District.

10        5.  Responding to paragraph 5 of the First Amended

11   Complaint, Potlatch is without knowledge or information sufficient

12   to form a belief as to the truth of the allegations of paragraph

13   5 and therefore denies the same.

14        6.  Responding to paragraph 6 of the First Amended

15   Complaint, Potlatch is without knowledge or information sufficient

16   to form a belief as to the truth of the allegations of paragraph

17   6 and therefore denies the same.

18        7.  Responding to paragraph 7 of the First Amended

19   Complaint, Potlatch is without knowledge or information sufficient

20   to form a belief as to the truth of the allegations of paragraph

21   7 and therefore denies the same.

22        8.  Responding to paragraph 8 of the First Amended

23   Complaint, Potlatch is without knowledge or information sufficient

24   to form a belief as to the truth of the allegations of paragraph

25   8 and therefore denies the same.

26        9.  Responding to paragraph 9 of the First Amended

27   Complaint, Potlatch is without knowledge or information sufficient

28   ///

1  to form a belief as to the truth of the allegations of paragraph
2  9 and therefore denies the same.

3      10.  Responding to paragraph 10 of the First Amended
4  Complaint, Potlatch is without knowledge or information sufficient
5  to form a belief as to the truth of the allegations of paragraph
6  10 and therefore denies the same.

7      11.  Responding to paragraph 11 of the First Amended
8  Complaint, Potlatch admits that it is incorporated under the laws
9  of the State of Delaware and that during the period from 1952 to
10  January 1979, it owned a paper products manufacturing plant in
11  Pomona, California, and that it operated that plant from 1952 to
12  mid-1978.   Except as expressly admitted or alleged, Potlatch
13  denies the allegations of paragraph 11.

14      12.  Responding to paragraph 12 of the First Amended
15  Complaint, Potlatch is without knowledge or information sufficient
16  to form a belief as to the truth of the allegations of paragraph
17  12 and therefore denies the same, except that Potlatch admits that
18  it sold its paper products manufacturing plant in Pomona,
19  California to the Simpson Paper Company in January 1979.

20      13.  Responding to paragraph 13 of the First Amended
21  Complaint, Potlatch is informed and believes that the allegations
22  therein are true and on that basis admits that the same are true.

23      14.  Responding to paragraph 14 of the First Amended
24  Complaint, Potlatch admits that the terms "DDT" and "PCBs" were
25  listed as hazardous substances under CERCLA subsequent to the time
26  that Potlatch owned and operated its Pomona plant.   Potlatch is
27  without knowledge or information sufficient to form a belief as to
28  ///

the truth of the remaining allegations of paragraph 14 and therefore denies the same.

15. Responding to paragraph 15 of the First Amended Complaint, Potlatch is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15 and therefore denies the same.

16. Responding to paragraph 16 of the First Amended Complaint, Potlatch admits that the San Pedro Channel is located off the coast of California near the City of Los Angeles. Potlatch is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 16 and therefore denies the same.

17. Responding to paragraph 17 of the First Amended Complaint, Potlatch is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 17 and therefore denies the same.

18. Responding to paragraph 18 of the First Amended Complaint, Potlatch is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 18 and therefore denies the same.

19. Responding to paragraph 19 of the First Amended Complaint, Potlatch is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 19 and therefore denies the same.

20. Responding to paragraph 20 of the First Amended Complaint, Potlatch is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 20 and therefore denies the same.

21.   Responding to paragraph 21 of the First Amended Complaint, Potlatch is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 21 and therefore denies the same.

22.   Responding to paragraph 22 of the First Amended Complaint, Potlatch is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22 and therefore denies the same.

23.   Responding to paragraph 23 of the First Amended Complaint, Potlatch is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 23 and therefore denies the same.

24.   Responding to paragraph 24 of the First Amended Complaint, Potlatch is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24 and therefore denies the same.

25.   Responding to paragraph 25 of the First Amended Complaint, Potlatch is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25 and therefore denies the same.

26.   Responding to paragraph 26 of the First Amended Complaint, Potlatch is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 26 and therefore denies the same.

27.   Responding to paragraph 27 of the First Amended Complaint, Potlatch denies the allegations therein, except that it admits it sold its plant in Pomona to Simpson Paper Company in January 1979.

1       28. Responding to paragraph 28 of the First Amended

2 Complaint, Potlatch admits it sold its plant in Pomona, California

3 to Simpson Paper Company in January 1979. Potlatch is without

4 knowledge or information sufficient to form a belief as to the

5 truth of the remaining allegations of paragraph 28 and therefore

6 denies the same.

7       29. Responding to paragraph 29 of the First Amended

8 Complaint, Potlatch is without knowledge or information sufficient

9 to form a belief as to the truth of the allegations of paragraph

10 29 and therefore denies the same.

11       30. Responding to paragraph 30 of the First Amended

12 Complaint, Potlatch is without knowledge or information sufficient

13 to form a belief as to the truth of the allegations of paragraph

14 30 and therefore denies the same.

15       31. Responding to paragraph 31 of the First Amended

16 Complaint, Potlatch is without knowledge or information sufficient

17 to form a belief as to the truth of the allegations of paragraph

18 31 and therefore denies the same.

19       32. Responding to paragraph 32 of the First Amended

20 Complaint, Potlatch is without knowledge or information sufficient

21 to form a belief as to the truth of the allegations of paragraph

22 32 and therefore denies the same.

23       33. Paragraph 33 of the First Amended Complaint

24 contains conclusions of law, and therefore it requires no

25 response.

26       34. Paragraph 34 of the First Amended Complaint

27 contains conclusions of law, and therefore it requires no

28 response.

35. Paragraph 35 of the First Amended Complaint contains conclusions of law, and therefore it requires no response.

36. Responding to paragraph 36 of the First Amended Complaint, Potlatch reincorporates its responses to paragraphs 1 through 35.

37. Paragraph 37 of the First Amended Complaint contains conclusions of law, and therefore it requires no response.

38. Paragraph 38 of the First Amended Complaint contains conclusions of law, and therefore it requires no response.

39. Responding to paragraph 39 of the First Amended Complaint, Potlatch denies that the "Potlatch/Simpson plants and the land on which they are located" are "facilities" within the meaning of CERCLA. Potlatch is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 39 and therefore denies the same.

40. Responding to paragraph 40 of the First Amended Complaint, Potlatch is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 40 and therefore denies the same.

41. Responding to paragraph 41 of the First Amended Complaint, Potlatch is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 41 and therefore denies the same.

42. Responding to paragraph 42 of the First Amended Complaint, Potlatch is without knowledge or information sufficient

1   to form a belief as to the truth of the allegations of paragraph
2   42 and therefore denies the same.

3       43.   Responding to paragraph 43 of the First Amended
4   Complaint, Potlatch denies the allegations of paragraph 43.

5       44.   Responding to paragraph 44 of the First Amended
6   Complaint, Potlatch is without knowledge or information sufficient
7   to form a belief as to the truth of the allegations of paragraph
8   44 and therefore denies the same.

9       45.   Responding to paragraph 45 of the First Amended
10  Complaint, Potlatch is without knowledge or information sufficient
11  to form a belief as to the truth of the allegations of paragraph
12  45 and therefore denies the same.

13      46.   Responding to paragraph 46 of the First Amended
14  Complaint, Potlatch denies the allegations as to itself and is
15  without knowledge or information sufficient to form a belief as to
16  the truth of the remaining allegations of paragraph 46 and
17  therefore denies the same.

18      47.   Responding to paragraph 47 of the First Amended
19  Complaint, Potlatch denies the allegations as to itself and is
20  without knowledge or information sufficient to form a belief as to
21  the truth of the remaining allegations of paragraph 47 and
22  therefore denies the same.

23      48.   Responding to paragraph 48 of the First Amended
24  Complaint, Potlatch denies the allegations as to itself and is
25  without knowledge or information sufficient to form a belief as to
26  the truth of the remaining allegations of paragraph 48 and
27  therefore denies the same.

28  ///

49.   Responding to paragraph 49 of the First Amended Complaint, Potlaint is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 49 and therefore denies the same.

50.   Responding to paragraph 50 of the First Amended Complaint, Potlatch denies the allegations of paragraph 50.

51.   Responding to paragraph 51 of the First Amended Complaint, Potlatch realleges and incorporates by reference its responses to paragraphs 1 through 35.

52.   Responding to paragraph 52 of the First Amended Complaint, Potlatch is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 52 and therefore denies the same.

53.   Responding to paragraph 53 of the First Amended Complaint, Potlatch is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 53 and therefore denies the same.

54.   Paragraph 54 of the First Amended Complaint contains conclusions of law, and therefore it requires no response.

55.   Responding to paragraph 55 of the First Amended Complaint, Potlatch is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 55 and therefore denies the same.

56.   Responding to paragraph 56 of the First Amended Complaint, Potlatch is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 56 and therefore denies the same.

57. Responding to paragraph 57 of the First Amended Complaint, Potlatch is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 57 and therefore denies the same.

58. Responding to paragraph 58 of the First Amended Complaint, Potlatch is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 58 and therefore denies the same.

59. Responding to paragraph 59 of the First Amended Complaint, Potlatch is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 59 and therefore denies the same.

60. Responding to paragraph 60 of the First Amended Complaint, Potlatch is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 60 and therefore denies the same.

61. Responding to paragraph 61 of the First Amended Complaint, Potlatch is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 61 and therefore denies the same.

62. Responding to paragraph 62 of the First Amended Complaint, Potlatch is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 62 and therefore denies the same.

63. Responding to paragraph 63 of the First Amended Complaint, Potlatch is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 63 and therefore denies the same.

## AFFIRMATIVE AND OTHER DEFENSES

### Failure To State A Claim Upon Which
### Relief Can Be Granted

1.   The First Amended Complaint and each claim therein fail to state a claim upon which relief can be granted.

### Statutes Of Limitations

2.   The First Amended Complaint and each claim therein are barred by the applicable statutes of limitations including, but not limited to, Section 113(g) of CERCLA, 42 U.S.C. § 9613(g).

### Failure To Join Indispensable Parties

3.   Plaintiffs have failed, under Federal Rules of Civil Procedure 12 and 19, to join indispensable parties known by plaintiffs to have discharged hazardous substances into the areas set out in the First Amended Complaint.   Consequently, the Court cannot grant the requested relief.

### Failure To Join Potentially
### Responsible Parties As Defendants

4.   Plaintiffs have failed to join as defendants owners, operators, generators and transporters who released hazardous substances which caused the injuries of which the plaintiffs complain in their First Amended Complaint.   As a result, it would be unjust and contrary to the public interest to ///

1   impose upon Potlatch any liability for the matters alleged in the
2   First Amended Complaint.

3

4   **Acts Or Omissions Of Third Parties/Act Or Acts Of God**

5           5.   Potlatch is informed and believes, and on that
6   basis alleges, that the actual or threatened releases of hazardous
7   substances alleged in the First Amended Complaint, if any, were
8   caused solely by the acts or omissions of third parties who were
9   not employees or agents of Potlatch, which acts or omissions did
10  not occur in connection with a contractual relationship, existing
11  directly or indirectly, with Potlatch.  At no time did Potlatch
12  exercise control over the persons or entities responsible for
13  actual or threatened releases of the hazardous substances, if any,
14  alleged in the First Amended Complaint.  At all times Potlatch
15  acted with due care with respect to such hazardous substances, and
16  took reasonable precautions against foreseeable acts or omissions
17  of any third parties and the consequences that could foreseeably
18  result therefrom.  Therefore, pursuant to Section 107(b)(3) of
19  CERCLA, 42 U.S.C. § 9607(b)(3), Potlatch is not liable to
20  plaintiffs for the matters asserted in the First Amended
21  Complaint.

22          6.   Potlatch is informed and believes, and on that
23  basis alleges, that the actual or threatened releases of hazardous
24  substances alleged in the First Amended Complaint, if any, were
25  caused solely by an act or acts of God and/or by an act or acts of
26  God in combination with acts or omissions of third parties alleged
27  in paragraph 5, above.  Therefore, pursuant to Sections 107(b)(1)
28  and (4) of CERCLA, 42 U.S.C. §§ 9607(b)(1) and (4), Potlatch is

1  not liable to plaintiffs for the matters asserted in the First
2  Amended Complaint.

3

4              **Costs And Damages Incurred Prior To**

5                 **CERCLA Are Not Recoverable**

6         7.   Plaintiffs  are  barred,  pursuant  to  Section
7  107(f)(1)  of  CERCLA,  42  U.S.C.  §  9607(f)(1),  from  recovering
8  response  costs  or  damages  for  injuries  to  natural  resources,  if
9  any,  incurred  prior  to  the  enactment  of  CERCLA  on  December  11,
10  1980.   If  any  releases  by  Potlatch  occurred,  which  is  denied,  such
11  releases  and  any  damage  caused  thereby  occurred  prior  to  the
12  enactment  of  CERCLA  on  December  11,  1980,  and  therefore  Potlatch
13  is  not  liable  for  such  damages  pursuant  to  Section  107(f)(1)  of
14  CERCLA,  42  U.S.C.  §  9607(f)(1).

15

16              **Federally Permitted Releases**

17         8.   At  all  times  material  hereto,  any  and  all  of  the
18  releases  alleged  by  plaintiffs  as  being  attributable  to  Potlatch,
19  or  which  allegedly  originated  from  its  plant  in  Pomona,  or  which
20  are  alleged  to  have  resulted  in  plaintiffs'  incurrence  of  response
21  costs  or  any  natural  resources  damages,  were  federally  permitted
22  releases  exempt  from  liability  under  Section  107(j)  of  CERCLA,  42
23  U.S.C.  §  9607(j).

24

25                  **Cause In Fact**

26         9.   Plaintiffs  have  not  alleged  and  cannot  prove  any
27  facts showing that Potlatch's conduct was the cause in fact of any
28  releases  or  threatened  releases  alleged  in  the  First  Amended

1   Complaint or that such alleged releases or alleged threatened

2   releases, if any, caused injury to natural resources or

3   necessitated the incurrence of response costs.

4

5                         **Proximate Cause**

6         10.  Plaintiffs have not alleged and cannot prove any

7   facts showing that the conduct of Potlatch was the proximate cause

8   of any releases or threatened releases alleged in the First

9   Amended Complaint or that such alleged releases, if any, were the

10   proximate cause of injury to natural resources or necessitated the

11   incurrence of response costs.

12

13                     **De Minimis Discharges**

14         11.  Any discharge of hazardous substances by Potlatch,

15   which is denied, was <u>de</u> <u>minimis</u> and therefore such alleged

16   discharge was not the cause of damages alleged by plaintiffs and

17   therefore Potlatch has no liability.

18

19         **No Liability For Actions Undertaken Pursuant**

20               **To State Or Federal Authority**

21         12.  Any actions undertaken by Potlatch were at the

22   direction or with the permission or acquiescence of state and

23   federal authorities and therefore Potlatch has no liability.

24

25                             **License**

26         13.  The First Amended Complaint and each claim therein

27   are barred because Potlatch was licensed, and in some instances

28   compelled, by plaintiff State of California, through the Los

1   Angeles Regional Water Quality Control Board, to dispose of

2   industrial wastes in the manner in which it did.   Further,

3   operations at the Potlatch plant were approved by agencies of the

4   State of California having regulatory authority over waste

5   disposal from the Potlatch plant.

6

7                         **Failure To Comply With**

8                      **National Contingency Plan**

9           14.   The response costs allegedly incurred by plaintiffs

10  have not been approved under, and are inconsistent with, the

11  National Contingency Plan.   By reason of the foregoing, plaintiffs

12  are not entitled to recover from Potlatch response costs or any

13  other relief requested in the First Amended Complaint.

14

15               **Lack Of Standing To Sue Under CERCLA**

16          15.   Plaintiffs lack standing to assert any claims

17  purportedly alleged in the First Amended Complaint under CERCLA.

18

19           **Failure Of EPA To Fulfill Responsibilities**

20             **To Assist In Prompt Abatement Of Alleged**

21                      **Hazardous Conditions**

22          16.   Beginning no later than 1981, EPA had the legal

23  responsibility under Section 104 of CERCLA, 42 U.S.C. § 9604, and

24  Executive Order No. 12316, dated August 14, 1981, as amended on

25  May 5, 1983 by Executive Order No. 12418,  to use technical and

26  financial resources available to it, including the "Superfund"

27  created by CERCLA, to promptly, effectively and cost-efficiently

28  ///

respond to and abate alleged actual or threatened releases of hazardous substances.

17. EPA and its Administrator have failed persistently to take prompt, effective and cost-efficient action to respond to any of the alleged releases and threatened releases in the First Amended Complaint. Potlatch is informed and believes and therefore alleges that these omissions by EPA have resulted and will result in the exacerbation of any and all of the damages alleged in the First Amended Complaint. Consequently, EPA is responsible for said damage.

### Negligence

18. Potlatch is informed and believes, and on that basis alleges, that plaintiffs, and their agents, did not exercise ordinary care, caution and prudence to prevent the alleged releases, if any, and that any resulting injuries sustained were caused and contributed to, in whole or in part, by the negligence of the plaintiffs.

### Undue Delay/Mitigation Of Damages

19. The plaintiffs have known, or should have known, of any alleged releases for many years. The plaintiffs have had the ability and the authority to take corrective action with respect thereto. If plaintiffs are entitled to recover any costs or damages, such recovery must be reduced by the excess costs and damages attributable to plaintiffs' prolonged failure to take appropriate action to mitigate such costs and damages prior and subsequent to the institution of this action.

## Comparative Fault/Contributory Negligence

20.   Plaintiffs, by their conduct, negligent acts and omissions, have contributed to and proximately caused the injuries of which they complain in their First Amended Complaint.   As such, the First Amended Complaint and each claim therein is barred by the contributory negligence of plaintiffs.

## Joint And Several Liability

21.   The statutes and other law relied upon by plaintiffs in the First Amended Complaint do not authorize the imposition of joint and several liability upon Potlatch.

22.   Potlatch is not jointly and severally liable in that imposition of such liability on Potlatch would be fundamentally inequitable.   Furthermore, plaintiffs' response costs and damages, if any, are divisible and susceptible of apportionment, thereby making joint and several liability unnecessary and inappropriate.

## Equitable Factors Under CERCLA

23.   Application of equitable factors requires that Potlatch's share of liability be determined to be zero.

## Failure To Incur Response Costs

24.   The claims for relief alleged in the First Amended Complaint are barred by plaintiffs' failure to incur response costs.

///

## **Failure To Comply With Preassessment**

## **Screen Regulations**

1
2
3       25.   Any document or documents alleged by plaintiffs to
4  constitute a Preassessment Screen Determination fail to satisfy
5  the criteria set forth in 43 C.F.R. § 11, and/or are inconsistent
6  with the National Contingency Plan, and therefore cannot serve as
7  the basis for any recovery against Potlatch.
8
9                            **Estoppel**
10      26.   Plaintiffs are barred from recovery by the doctrine
11 of estoppel in that plaintiffs either specifically approved
12 Potlatch's actions with respect to any and all discharges of
13 wastewater from the Potlatch plant into the Los Angeles County
14 Sanitation Districts ("LACSD") wastewater collection and treatment
15 system or authorized or directed Potlatch with respect to any and
16 all such discharges.  In approving, authorizing or directing
17 Potlatch's actions, the plaintiffs acted in concert as agents of
18 one another.
19      27.   Plaintiffs are further barred from recovery by the
20 doctrine of estoppel in that plaintiffs in conjunction and in
21 coordination with the LACSD developed and implemented guidelines
22 and requirements respecting discharges into the wastewater system,
23 guidelines and requirements with which Potlatch complied.
24
25                            **Laches**
26      28.   By reason of the facts alleged in paragraphs 12
27 through 27 herein, the First Amended Complaint and each claim
28 therein are barred by the doctrine of laches in that plaintiffs

had notice of the alleged acts or omissions contained in the First
Amended Complaint and had authority under existing law to prevent
such acts or omissions but refrained from doing so to the
detriment of Potlatch.

### Waiver

29.   By reason of the facts alleged in paragraphs 12
through 27 herein, the First Amended Complaint and each claim
therein are barred by the doctrine of waiver.

### Unclean Hands

30.   The plaintiffs, by virtue of their acts of
negligence in prescribing, supervising, monitoring and controlling
any alleged discharges of hazardous substances, caused any
releases and threatened releases of hazardous substances, if such
are found to exist.   Furthermore, the plaintiffs have exacerbated
the costs and difficulties of abatement of the alleged conditions
by their failure to perform their duties to remedy such conditions
and their negligent abatement attempts.   As a consequence, the
plaintiffs, as the entities responsible for creating the
conditions of which they now complain, lack the clean hands
necessary to invoke equity jurisdiction.

### CERCLA Is Unconstitutional

31.   Plaintiff's First Amended Complaint relies solely
upon CERCLA, 42 U.S.C. § 9601 et seq.   Alleged actions or conduct
of Potlatch took place prior to enactment of CERCLA, and were
lawful in all respects under all federal and state laws then

1  applicable.    Retroactive  application  of  CERCLA  to  Potlatch's

2  alleged conduct violates the Due Process Clauses of the Fifth and

3  Fourteenth Amendments of the United States Constitution.

4        32.   CERCLA is unconstitutionally vague and violates the

5  Due  Process  Clause  of  the  Fifth  Amendment  by  impermissibly

6  allowing selective enforcement of CERCLA.

7        33.   The  enactment  of  CERCLA  was  an  unconstitutional

8  delegation of power to the Executive Branch and violates the Tenth

9  Amendment of the United States Constitution.

10        34.   The  creation  of  a  federal  cause  of  action  for

11  damages  for  natural  resources  in  CERCLA  is  an  unconstitutional

12  exercise of power by the federal government lacking the requisite

13  nexus to the Commerce Clause of the United States Constitution.

14        35.   The  enactment  of  Section  113(g)(1)  of  CERCLA,  42

15  U.S.C.  §  9613(g)(1),  to  revive  expired  statute  of  limitations

16  periods,  constitutes  double  jeopardy  in  violation  of  the  United

17  States Constitution.

18

19              **Prior Authorization Of Commitment**

20                **Of Natural Resources**

21        36.   The  methods  used  to  dispose  of  wastes  and  the

22  substances  disposed  of  at  the  White's  Point  Outfall  were

23  specifically  identified  as  an  irreversible  and  irretrievable

24  commitment  of  natural  resources,  and  plaintiffs  are  therefore

25  precluded by Section 107(f)(1) of CERCLA, 42 U.S.C. § 9607(f)(1),

26  from attempting to recover from defendants any alleged damages or

27  response costs.

28  ///

## Lack Of Government Control Over Natural Resources

37.   Plaintiffs are precluded from bringing an action against defendants for the recovery of response costs and damages for alleged injury to natural resources because the natural resources which are the subject of this action are not natural resources "belonging to, managed by, held in trust by, and pertaining to, or otherwise controlled by" the plaintiffs under Section 101(16) of CERCLA, 42 U.S.C. § 9601(16).

## Consent

38.   Having consented to the alleged releases from the Joint Outfall System ("JOS"), including the Joint Water Pollution Control Plant ("JWPCP") facility, plaintiffs consented to the injury alleged in the First Amended Complaint, and by such consent, are barred from maintenance of this action.

## Assumption Of Risk

39.   At the time that plaintiffs consented to the alleged releases from the JOS, including the JWPCP facility, plaintiffs knowingly and expressly assumed the risk that the conditions alleged to exist at the White's Point Outfall would exist.   Such assumption of risk is a total bar to the maintenance of this action.

WHEREFORE, defendant Potlatch Corporation prays that:

1.   The First Amended Complaint be dismissed with prejudice;

///

1        2.   Potlatch be awarded its costs and reasonable

2  attorney's fees herein; and

3        3.   For such other and further relief as the Court

4  deems proper.

5

6

7                         **II.**

8               **COUNTERCLAIMS**

9

10       All of Potlatch's counterclaim allegations assume that

11  the plaintiffs' claims against Potlatch are true and proper, which

12  Potlatch denies.   The assumption is solely for the purpose of

13  asserting these counterclaims, which are therefore alleged in the

14  alternative and do not constitute an admission by Potlatch of any

15  liability of any kind.

16

17              **JURISDICTION AND VENUE**

18       1.   These counterclaims are made pursuant to Federal

19  Rule of Civil Procedure 13.   Jurisdiction over Potlatch's

20  counterclaims is conferred upon this Court by 28 U.S.C. §§ 1331,

21  1332, 1346 and 2201, and 42 U.S.C. §§ 9607 and 9613.

22       2.   Venue is proper in this district pursuant to 28

23  U.S.C. §§ 1331 and 1402, and 42 U.S.C. § 9613(b).

24

25                 **PARTIES**

26       3.   Counterclaimant Potlatch Corporation ("Potlatch")

27  is incorporated under the laws of the State of Delaware and doing

28  business in the State of California.   From 1952 until January

1979, Potlatch owned a paper products manufacturing plant in
Pomona, California and operated that plant from 1952 to mid-1978.

       4.   Counterdefendants are the plaintiff governments.
Specifically, counterdefendants are the United States, including,
but not limited to, the Environmental Protection Agency, the
Department of Commerce, the Department of the Interior, the
National Oceanic and Atmospheric Administration, and the
Department of Defense, including, but not limited to, the
Department of the Army, the Department of the Navy and the
Department of the Air Force; and the State of California
("State"), including, but not limited to, the Department of Fish
and Game ("Fish and Game"), the State Lands Commission ("SLC"),
the Department of Parks and Recreation ("Parks"), the Department
of Transportation ("DOT"), the Department of Water Resources
("DWR"), the Department of Health Services ("DOHS"), the State
Water Resources Control Board ("State Board") and the Regional
Water Quality Control Board -- Los Angeles Region ("Regional
Board") (all government entities are hereinafter collectively
referred to as "plaintiff governments").

       5.   On or about August 24, 1990, Potlatch presented
written claims to the State, including the SLC, Fish and Game and
Parks.   Potlatch is informed and believes, and on that basis
alleges, that on or about September 7, 1990, supplemental written
claims were presented to the DOT, DWR, DOHS, the State Board and
the Regional Board.   These claims set forth the central facts
pertaining to the State's involvement in the release of hazardous
substances alleged in the First Amended Complaint, and demand that
the State assume any and all liability arising from the alleged

releases or threats of releases alleged therein.  At the time of this pleading, the State has either denied or failed to respond to these claims.

## GENERAL ALLEGATIONS

6.   Potlatch is informed and believes, and on that basis alleges, that plaintiff governments and their agencies or departments selected, used, permitted, owned, operated, managed and/or exercised jurisdiction over several ocean disposal sites offshore Southern California including the Los Angeles Harbor, various locations in the San Pedro Channel and the Palos Verdes Shelf, including White's Point, all of which sites are described more fully in the First Amended Complaint (hereinafter referred to collectively as the "Ocean Disposal Sites").   Plaintiff governments allege that hazardous substances have been disposed at the Ocean Disposal Sites.  Potlatch is informed and believes, and on that basis alleges, that plaintiff governments selected, used, permitted, owned, operated, managed and/or exercised jurisdiction over such Ocean Disposal Sites at all relevant times and continue to do so.   If, as plaintiff governments allege, hazardous substances have been released into the environment from the Ocean Disposal Sites so as to cause natural resource damages and the incurrence of any response costs, then plaintiff governments are liable to Potlatch for any and all of Potlatch's costs of response, costs of defending the First Amended Complaint and any costs of response or damages for which Potlatch may be found to be liable under the First Amended Complaint.

///

1    7.  Potlatch is informed and believes, and on that
2  basis alleges, that plaintiffs were knowingly and willfully
3  negligent with regard to their ownership, operation, use,
4  permitting, oversight and management of the Ocean Disposal Sites
5  identified above in paragraph 6.

6    8.  Potlatch is informed and believes, and on that
7  basis alleges, that plaintiff governments violated their own
8  standards and/or regulations, as well as other federal regulations
9  in owning, using, permitting, managing, and exercising
10  jurisdiction over the Ocean Disposal Sites.

11    9.  Potlatch is informed and believes, and on that
12  basis alleges, that plaintiff governments knew or should have
13  known in the early 1970s, if not before, that hazardous substance
14  including, but not limited to, PCBs and DDT, were being discharged
15  at the Ocean Disposal Sites.  Specifically, the plaintiff
16  governments knew or should have known in the early 1970s the
17  quantities of hazardous substances, including PCBs and DDT,
18  discharged from the LACSD JOS and the injury, if any, to the
19  waters in and around the Ocean Disposal Sites.

20    10.  The plaintiff governments, acting through the
21  United States Army Corps of Engineers, the Environmental
22  Protection Agency, the Regional Water Quality Control Board, the
23  Department of Park and Recreation and possibly others, issued
24  various permits including, but not limited to, National Pollutant
25  Discharge Elimination System ("NPDES") permits and/or
26  independently reviewed the permits for the discharge of hazardous
27  substances at the Ocean Disposal Sites.

28  ///

1        11.   Potlatch is informed and believes, and on that

2   basis alleges, that LACSD was issued a NPDES permit by the

3   Regional Board and that the NPDES permit provided that the LACSD

4   could discharge PCBs from its facility into the ocean from the

5   White's Point Outfall.

6        12.   Despite the plaintiff governments' knowledge of the

7   discharge of PCBs with the effects alleged by plaintiffs,

8   plaintiff governments failed to deny the NPDES permit to the LACSD

9   or to any other users of the Ocean Disposal Sites or to amend or

10  revoke the permits after issuance.   Moreover, the plaintiff

11  governments failed to take timely action to alleviate the alleged

12  contamination.

13       13.   Potlatch is further informed and believes, and on

14  that basis alleges, that discharges of such hazardous substances

15  as generated by agencies or departments of the plaintiff

16  governments caused or contributed to the damages to natural

17  resources alleged by the plaintiff governments in this case.

18

19      __COUNT I -- CERCLA § 107(a) CLAIM FOR COST RECOVERY__

20       14.   Potlatch incorporates by reference Counterclaim

21  paragraphs 1 through 13 as though fully set forth herein.

22       15.   Potlatch asserts counterclaims for the recovery of

23  its costs of response to the releases and/or threatened releases

24  of hazardous substances alleged by plaintiffs pursuant to Section

25  107(a)(B) of CERCLA, 42 U.S.C. § 107(a)(B), against plaintiff

26  governments in their capacities as owners and operators of

27  facilities, and/or as persons who arranged for disposal of

28  hazardous substances, and/or as generators of hazardous substances

released into the environment, and/or as transporters of hazardous substances.

16.   Potlatch has incurred and will continue to incur necessary costs of response consistent with the National Contingency Plan, as set forth in Section 107(a)(B) of CERCLA, 42 U.S.C. § 9607(a)(B), as a result of actual and/or threatened releases of hazardous substances from the Ocean Disposal Sites as alleged by plaintiff governments in the First Amended Complaint. Said costs include, but are not limited to, Potlatch's costs of investigating the alleged actual and/or threatened releases as well as attorney's fees incurred to enforce CERCLA.

17.   Plaintiff governments have alleged that all of the Ocean Disposal Sites, as well as the Joint Outfall System ("JOS") owned and operated by the Los Angeles County Sanitation Districts ("LACSD"), are "facilities" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).   Therefore, on information and belief, Potlatch alleges that plaintiff governments and/or their agencies or departments are liable to Potlatch for all of its costs of response because they are current owners and operators of said facilities, under Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1), and were owners and operators of said facilities when the alleged disposals of hazardous substances took place, under Section 107(a)(2), 42 U.S.C. § 9607(a)(2).

18.   Potlatch is informed and believes, and on that basis alleges, that agencies or departments of the plaintiff governments owned or operated facilities in Los Angeles County which were and/or are dischargers of wastewater to the LACSD JOS described in paragraphs 13 and 29 of the First Amended Complaint.

It is further alleged upon information and belief that some or all of these facilities generated hazardous substances that were discharged to the JOS which, in turn, were discharged into the environment as alleged in plaintiffs' First Amended Complaint. Therefore, plaintiff governments and/or their agencies or departments are liable to Potlatch for its costs of response pursuant to Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), as persons who arranged for the disposal of hazardous substances.

19.   If the allegations in the First Amended Complaint are true, which Potlatch denies, the plaintiff governments by their actions in permitting, managing and otherwise authorizing Potlatch's discharge, and all other discharges to the Ocean Disposal Sites, are "persons who by contract, agreement or otherwise arranged for the disposal or treatment . . . of hazardous substances . . .," within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), and are therefore liable to Potlatch for all of its costs of response.

20.   If the allegations of the First Amended Complaint are true, which Potlatch denies, then plaintiff governments, acting through their respective agencies or departments, by permitting, authorizing or otherwise approving of Potlatch's use of the JOS as well as the operation at the other Ocean Disposal Sites, are "person(s) who [accept][] . . . or accepted any hazardous substances for transport to disposal or treatment facilities or sites selected by such persons . . ." and are liable for all of Potlatch's response costs pursuant to CERCLA Section 107(a)(4), 42 U.S.C. § 9607(a)(4).

///

1    21.  Potlatch is further informed and believes, and on

2  that basis alleges that, the United States Army Corps of

3  Engineers, a department or agency of the plaintiff United States,

4  generated, transported and arranged for the disposal of dredged

5  spoils believed to contain hazardous substances from various

6  locations in Los Angeles Harbor to the Ocean Disposal Sites

7  outside of the Los Angeles Harbor.  Therefore, the U.S. Army Corps

8  of Engineers is liable to Potlatch under CERCLA Sections 107(a)(3)

9  and (4), 42 U.S.C. §§ 9607(a)(3) and (4), for all of Potlatch's

10  costs of response.

11

12        **COUNT II -- CERCLA § 113(f) CLAIM FOR CONTRIBUTION**

13    22.  Potlatch incorporates by reference Counterclaim

14  paragraphs 1 through 21, above, as though fully set forth herein.

15    23.  Pursuant to Section 113(f)(1) of CERCLA, 42 U.S.C.

16  § 113(f)(1), any person may seek contribution from any other

17  person who is liable or potentially liable under Section 107(a) of

18  CERCLA, 42 U.S.C. § 9607(a), during any civil action under Section

19  107(a) of CERCLA, 42 U.S.C. § 9607(a).  Potlatch hereby asserts a

20  counterclaim for contribution, indemnification, setoff and

21  recoupment from plaintiff governments for any and all response

22  costs incurred by Potlatch as well as any natural resource damages

23  or response costs Potlatch may be found liable for as a result of

24  plaintiffs' First Amended Complaint and any and all of Potlatch's

25  defense costs and other attorney's fees incurred as a result of

26  this litigation.

27    24.  Potlatch asserts that plaintiff governments are

28  liable to Potlatch under Section 113(f) of CERCLA, 42 U.S.C. §

9613(f), for the reasons alleged in paragraphs 1 through 23 of this Counterclaim.

### COUNT III -- SUBROGATION

25.    Potlatch asserts a counterclaim for contribution, indemnification, setoff and recoupment against the plaintiff governments based on its right to subrogation.

26.    Potlatch incorporates by reference Counterclaim paragraphs 1 through 24, above, as though fully set forth herein.

27.    If Potlatch is liable as alleged in the First Amended Complaint, which Potlatch denies, then Potlatch would be subrogated to all rights, claims and causes of action of the United States against the State, and Potlatch would be subrogated to all rights, claims and causes of actions of the State against the United States under Section 112(c)(2) of CERCLA, 42 U.S.C. § 9612(c)(2), and common law principles of subrogation.

### COUNT IV -- NEGLIGENCE AND NEGLIGENCE PER SE

28.    Potlatch asserts a counterclaim for contribution, indemnification, setoff and recoupment against the plaintiff governments based on their negligence in the conduct of their permitting activities for, in their capacity as the owners and operators (or trustees) of, in their capacity as those who arranged for the disposal of hazardous substances at, and in their capacity as transporters of hazardous substances to the Ocean Disposal Sites described herein.

29.    Potlatch incorporates by reference Counterclaim paragraphs 1 through 27, above, as though fully set forth herein.

30.   If the allegations of the First Amended Complaint are true, which Potlatch denies, then at all times relevant to the First Amended Complaint, the plaintiff governments were in violation of applicable statutes and regulations promulgated thereunder, all as alleged in these counterclaims, so as to constitute negligence per se, which negligence per se is the proximate cause of the injuries and damages alleged in the First Amended Complaint, and plaintiff governments are liable therefore.

31.   If the allegations of the First Amended Complaint are true, which Potlatch denies, then at all relevant times to the First Amended Complaint, the plaintiff governments negligently owned, located, created, maintained, controlled, managed and operated several, if not all, of the Ocean Dumping Sites so as to cause or permit the release of hazardous substances into the environment and to proximately cause the injuries and damages alleged in the First Amended Complaint.

32.   If the allegations of the First Amended Complaint are true, which Potlatch denies, then at all relevant times the plaintiff governments were negligent in the performance of their permitting duties, which negligence was the sole or substantial cause of the injuries or damages alleged in the First Amended Complaint.

## COUNT V -- DANGEROUS CONDITION OF PUBLIC PROPERTY

33.   Potlatch asserts a counterclaim for contribution, indemnification, setoff and recoupment against the State for its maintenance of a dangerous condition on public property.

///

34. Potlatch incorporates by reference Counterclaim paragraphs 1 through 32, above, as though fully set forth herein.

35. The State owned and/or controlled certain Ocean Dumping Sites within the meaning of California Government Code § 835.

36. If plaintiffs' allegations, that releases of hazardous substances into the Bight Area have caused, and threaten to cause, danger to the public health, welfare and the environment, and injury to the natural resources, are true, which Potlatch denies, then the Bight Area was and continues to be in a dangerous condition.    Therefore, the State is liable for maintaining a dangerous condition on its property.    California Government Code § 835.

37. If plaintiffs' allegations are true, which Potlatch denies, then the State's property was in a dangerous condition at the time of all injuries alleged in the First Amended Complaint, this dangerous condition was the proximate cause of those injuries, and this condition created a reasonably foreseeable risk of the injuries alleged.    California Government Code § 835.

38. If plaintiffs' allegations are true, which Potlatch denies, then Potlatch is informed and believes, and on that basis alleges, that employees of the State, acting within the scope of their employment, created the dangerous condition through their wrongful and/or negligent acts and/or omissions.    California Government Code § 835.

39. If plaintiffs' allegations are true, which Potlatch denies, the State, by and through its various agencies, departments and employees, had actual and/or constructive

knowledge of the dangerous condition alleged in the First Amended Complaint and had sufficient time prior to the alleged injury to have taken measures to protect against the dangerous condition. California Government Code §§ 835, 835.2

40.   If plaintiffs' allegations are true, which Potlatch denies, then the State's acts and/or omissions were unreasonable and/or negligent in light of the practicability and cost of pursuing alternative courses of action available to it.

### COUNT VI -- BREACH OF A MANDATORY DUTY

41.   Potlatch asserts a counterclaim for contribution, indemnification, setoff and recoupment against the State of California for its failure to discharge its mandatory duties in accordance with California Government Code § 815.6.

42.   Potlatch incorporates by reference Counterclaim paragraphs 1 through 40, above, as though fully set forth herein.

43.   The State has been and is under mandatory duties imposed by the following enactments, among others, each of which was designed to protect against the kind of harm alleged in the First Amended Complaint:

(a)   California Health & Safety Code § 25100, et seq. and regulations promulgated thereto require the California Department of Health Services ("DOHS") to review county and regional waste disposal plans to determine whether there is a need for additional or expanded hazardous waste facilities to safely manage the proper disposal of hazardous waste produced within the counties and regions, and to adopt, and revise when appropriate, standards and regulations for the management of hazardous wastes

1   to protect against hazards to the public health, to wildlife and

2   to the environment; and

3        (b)   California   Water   Code   § 13000   _et_   _seq_.   and

4   regulations promulgated thereunder impose a mandatory duty on the

5   State Water Resources Control Board ("State Water Board") and the

6   Regional Water Quality Control Board, Los Angeles ("Regional Water

7   Board") to control water quality through a state policy for water

8   quality control, to protect present and future beneficial uses of

9   water against untreated wastewater discharges.  Additionally, the

10  statute requires the Boards to issue orders specifying abatement

11  or remedial action to correct violations by any person or entity

12  who discharges any wastes into the waters of California in

13  violation of waste discharge requirements or other orders or

14  prohibitions issued by the California Regional Water Quality

15  Control Board, and/or who threatens to create, or creates a

16  nuisance as a result of that discharge.  Moreover, this statute

17  and its regulations impose a mandatory duty on the State and

18  Regional Water Boards to give the highest priority to improving or

19  eliminating discharges that adversely affect ocean areas subject

20  to massive waste discharge.  This statue and its regulations also

21  impose a mandatory duty on the State and Regional Water Boards to

22  consider the effects of discharges to the ocean on the ocean

23  chemistry and mixing processes, marine life conditions, other

24  present or proposed outfalls in the vicinity, and relevant aspects

25  of areawide waste treatment management plans and programs, but not

26  of convenience to the discharger.  The State and Regional Water

27  Board are also under the mandatory duty to require toxic and hard-

28  to-treat substances to be pretreated at the source if such

substances would be incompatible with effective and economical treatment in municipal treatment plants. Overall, this statute and its regulations impose a mandatory duty on the State and Regional Water Boards to formulate and adopt a water quality control plan for ocean waters of the State which guarantees that the standards adopted are adequate and are not allowing degradation to indigenous marine species.

44. If plaintiffs' allegations are true, which Potlatch denies, then the State and the entities identified in Counterclaim paragraph 4 had and have a mandatory duty to abate any nuisance and/or dangerous condition that arose in the Southern California Bight Area beyond those duties identified in Counterclaim paragraph 43.

45. Notwithstanding the mandatory duties identified in Counterclaim paragraphs 43 and 44, the State, DOHS, State Water Board and Regional Water Board have breached their mandatory duties and those breaches were the proximate cause of the injury alleged in the First Amended Complaint.

## COUNT VII -- NUISANCE

46. Potlatch asserts a counterclaim for contribution, indemnification, setoff and recoupment against the plaintiff governments for creation and maintenance of a nuisance.

47. Potlatch incorporates by reference Counterclaim paragraphs 1 through 45, above, as though fully set forth herein.

///

///

///

48.   If plaintiffs' allegations are true, which Potlatch denies, then the releases of hazardous substances constitute a nuisance under California Civil Code § 3479, California Water Code § 13050(m), and under common law.

49.   Through its acts and/or omissions, the State, by and through its employees, caused and maintain this nuisance and any injury alleged in the First Amended Complaint.   Specifically, the State, acting through its various agencies including, but not limited to, DOHS, the State Board and the Regional Board:  (a) encouraged, allowed and/or failed to prevent, abate or remedy the release or threatened release of hazardous substances, if any, resulting from any disposal of wastes into the Southern California Bight Area;  (b) encouraged, allowed and/or failed to prevent, abate or remedy the release or threatened release of hazardous substances through the LACSD JWPCP and JOS;  (c) encouraged, allowed and/or failed to prevent, abate or remedy the release of hazardous substances, if any, through storm drain runoff into the Southern California Bight Area;  and  (d) designed, sited, controlled, managed and otherwise oversaw ocean dumping sites in the Southern California Bight Area, and continues to do so.

50.   If plaintiffs' allegations are true, which Potlatch denies, then the State, as the entity responsible for negligently creating and maintaining the nuisance, has had and now has a duty under California law to abate the conditions constituting the purported nuisance.

51.   If plaintiffs' allegations are true, which Potlatch denies, then the State, as the owner and/or operator of the several ocean dumping sites, including the lands under and around

the LACSD JOS, is liable under California Civil Code § 3483 and California Water Code § 13305(a) for creating and failing to abate the nuisance.

52. If there are damages to natural resources as alleged in the First Amended Complaint, which Potlatch denies, then such damages are wholly or substantially caused by the maintenance of a statutory and common law nuisance by the plaintiff governments, who are strictly liable therefore.

53. To the extent Potlatch is held responsible pursuant to the plaintiffs' claims as alleged in the First Amended Complaint, it will suffer special damage giving rise to its right to contribution, indemnification, set off and recoupment from the plaintiff governments. Potlatch has already incurred special damages for costs incurred to investigate the damages alleged in the First Amended Complaint and to defend against the First Amended Complaint.

## COUNT VIII -- BREACH OF TRUST

54. Potlatch incorporates by reference Counterclaim paragraphs 1 through 53, above, as though fully set forth herein.

55. The United States is the trustee for the Southern California Bight Area and for the natural resources therein.

56. The United States' trusteeship results, among other things, from the comprehensive protective scheme established by federal and state laws, regulations and other legal requirements applicable to the Southern California Bight Area and natural resources therein and from the comprehensive control the United States has possessed or possesses, or has asserted or asserts over

the Southern California Bight Area and the natural resources therein.

57.   The public, including Potlatch, is the beneficiary of the United States' trusteeship.

58.   If, as plaintiffs allege, hazardous substances have been discharged to or released in the Southern California Bight area, then, by discharging or releasing or allowing discharges or releases of such hazardous substances, or by failing to remedy or abate discharges or releases of such hazardous substances, the United States has breached its trust obligations.

59.   Potlatch has been injured by the United States' breach of its trust obligations.   Such injury cannot be compensated or remedied by payment of money damages, but rather only by issuance of declaratory and injunctive relief.

### COUNT IX -- DECLARATORY JUDGMENT

60.   Potlatch incorporates by reference Counterclaim paragraphs 1 through 59, above, as though fully set forth herein.

61.   If the allegations of the First Amended Complaint are true, which Potlatch denies, an actual controversy has arisen and exists between Potlatch and the United States in that Potlatch contends, and the United States denies, that if Potlatch is held liable to plaintiffs on any of their claims, then the United States is liable, for the reasons stated above, to assume such liability and the United States is liable to Potlatch for any and all damages, costs or other liabilities, as incurred by, or assessed against Potlatch.

///

62.   If the allegations of the First Amended Complaint are true, which Potlatch denies, an actual controversy has arisen and exists between Potlatch and the State of California in that Potlatch contends, and the State of California denies, that if Potlatch is held liable to plaintiffs on any of their claims, then the State of California is liable, for the reasons stated above, to assume such liability and the State of California is liable to Potlatch for any and all damages, costs or other liabilities, as incurred by, or assessed against Potlatch.

**PRAYER FOR RELIEF**

WHEREFORE, counterclaimant Potlatch prays for judgment as follows:

1.   On each counterclaim:   actual damages as may be proven at trial, interest at the legal rate, reasonable attorney's fees, and costs of suit;

2.   On each counterclaim:   such other and further relief as the Court may deem just and proper; and

3.   If this Court enters judgment in any respect against Potlatch, that this Court also enter judgment against the plaintiff governments as follows:

(a)   order plaintiffs to pay the full and total costs of response and damages alleged in the First Amended Complaint pursuant to CERCLA, 42 U.S.C. § 9607(c)(2)(A)(i);

///

///

///

(b)   order plaintiffs to indemnify Potlatch in the amount equivalent to the sum of the judgment entered against it, its costs and its expenses, including reasonable attorney's and expert's fees;

(c)   order plaintiffs to pay their lawful share in contribution;

(d)   order setoff of the amount of the liability of the plaintiffs against the amount of any liability found against Potlatch;

(e)   declare and adjudge that if Potlatch is held liable to plaintiffs for any damages or costs, or any other monetary relief, then Potlatch is entitled to full indemnity from the United States against such liability;

(f)   declare and adjudge that if Potlatch is held liable to plaintiffs for any damages or costs, or any other monetary relief, then Potlatch is entitled to full indemnity from the State of California against such liability;

(g)   for judgment in favor of Potlatch and against the United States for all costs and attorney's fees expended by Potlatch in defending this action and in prosecuting these counterclaims against the United States;

(h)   for judgment in favor of Potlatch and against the State of California for all costs and attorney's fees expended by Potlatch in defending this action and in prosecuting these counterclaims against the State of California; and

1           (i) any such other and further relief as this

2    Court deems just and proper.

3

4

5                            **III.**

6    **CROSS-CLAIM OF CROSS-CLAIMANT POTLATCH CORPORATION AGAINST**

7    **DEFENDANT COUNTY SANITATION DISTRICT NO. 2 OF LOS ANGELES**

8

9           COMES NOW cross-claimant Potlatch and as its Cross-Claim

10   against co-defendant and cross-defendant County Sanitation

11   District No. 2 of Los Angeles County ("District No. 2"), hereby

12   alleges as follows:

13

14                     **GENERAL ALLEGATIONS**

15          1.   Potlatch and District No. 2 are each defendants on

16   the First Amended Complaint brought by plaintiffs in the within

17   civil action.   Potlatch is a corporation incorporated under the

18   laws of the State of Delaware, and during the period from 1952 to

19   January 1979, it owned a paper products manufacturing plant in

20   Pomona, California, and operated that plant from 1952 to mid-1978.

21          2.   Potlatch is informed and believes, and on that

22   basis alleges, that District No. 2 is a publicly-owned treatment

23   works established pursuant to the laws of the State of California.

24   District No. 2, acting on its own behalf and on behalf of 14 other

25   County Sanitation Districts in Los Angeles County (collectively

26   "LACSD"), pursuant to an agreement titled the Joint Outfall

27   Agreement, operates the Joint Outfall System.   The Joint Outfall

28   System ("JOS") consists of a collection and treatment system for

wastewater from areas within Los Angeles County, including Potlatch's former plant in Pomona, California, and includes the Joint Water Pollution Control Plant ("JWPCP") which discharges treated effluent through a system of outfall pipes located at White's Point ("White's Point Outfall"). The claims of Potlatch against District No. 2, as more fully set forth below, relate to and arise out of the occurrences alleged by plaintiffs in the First Amended Complaint, and thereby constitute appropriate cross-claims pursuant to Federal Rule of Civil Procedure 13(g).

3. During the entire period in which Potlatch operated its paper manufacturing plant in Pomona, California, Potlatch held formal permits from appropriate governmental agencies, including District No. 2, to utilize the JOS, including the JWPCP facility, for the treatment of liquid effluent resulting from Potlatch's manufacturing operations. At all times, Potlatch's use of the JOS, including the JWPCP facility, was non-negligent and conformed fully with all applicable local, state and federal statutes, rules and regulations governing the disposal of industrial wastewater. At all times, Potlatch relied upon District No. 2's operation of the JOS, including the JWPCP, to likewise be non-negligent and to conform fully with all applicable local, state and federal statutes, rules and regulations governing the disposal of industrial wastewater effluent.

4. Notwithstanding that Potlatch's use of the JOS, including the JWPCP, was non-negligent, lawful and entirely within the terms of use expressly invited and permitted by the appropriate governmental agencies, including District No. 2, plaintiffs allege by the First Amended Complaint herein that

1   hazardous substances, including DDT and PCBs, were not removed by

2   the JWPCP, and therefore were discharged by District No. 2 at the

3   White's Point Outfall, and consequently have been and continue to

4   be released into the environment within the meaning of Section

5   101(22) of the Comprehensive Environmental Response, Compensation

6   and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601(22).

7   Plaintiffs further allege that said releases have caused and will

8   continue to cause incurrence of response costs and damages

9   resulting from injury to and destruction and loss of natural

10  resources, including fish, birds and marine mammals, subject to

11  the alleged trusteeship of the United States and the State of

12  California.    Plaintiffs seek to hold Potlatch, among others,

13  responsible for such response costs and damages, which are alleged

14  to have resulted from the discharges by District No. 2 at the

15  White's Point Outfall.

16          5.   Potlatch is informed and believes, and on that

17  basis alleges, that District No. 2 is a local public entity within

18  the meaning of Cal. Govt. Code Sections 900.4 and 940.4.   On or

19  about August 24, 1990, District No. 2 was served with a claim

20  pursuant to the California Tort Claims Act, Cal. Govt. Code

21  Section 900, et seq. for recovery of response costs, damages,

22  indemnity and contribution.    District No. 2 has rejected the

23  claim.

24

25                    **FIRST CLAIM FOR RELIEF**

26                          **(Negligence)**

27          6.   Potlatch repeats the allegations of paragraphs 1

28  through 5 of this Cross-Claim as though fully set forth herein.

7.  District No. 2, as operator of the JOS, including the JWPCP, had a duty to operate the system in a manner so as not to endanger the environment and the welfare of those entities, including Potlatch, that were invited and permitted to use the JOS, including the JWPCP.  By reason of the acts and omissions alleged by plaintiffs in the First Amended Complaint, District No. 2 breached this duty.  As a direct and proximate result of said breach, Potlatch has suffered damages, the exact amount of which is presently unknown.

## SECOND CLAIM FOR RELIEF

### (Negligence Per Se)

8.  Potlatch repeats the allegations of paragraphs 1 through 7 of this Cross-Claim as though fully set forth herein.

9.  Potlatch is informed and believes, and on that basis alleges, that the conduct of District No. 2 as alleged by plaintiffs in the First Amended Complaint, which caused the release of hazardous substances into the environment, is the type of occurrence designed to be prevented by federal and state laws and regulations regulating the handling and disposal of industrial wastewater, hazardous substances and hazardous wastes and violated such laws and regulations.

10. At all times relevant herein, Potlatch was among the class of persons sought to be protected by federal and state laws and regulations governing the handling and disposal of industrial wastewater, hazardous substances and hazardous wastes. As a proximate result of District No. 2's violations of federal and state laws and regulations governing the handling and disposal

of industrial wastewater, hazardous substances and hazardous wastes, Potlatch has suffered damage, the exact amount of which is yet to be ascertained.

## THIRD CLAIM FOR RELIEF

### (Public Nuisance)

11.    Potlatch repeats the allegations of paragraphs 1 through 5 of this Cross-Claim as though fully set forth herein.

12.    The conduct of District No. 2, as alleged by plaintiffs in the First Amended Complaint, constitutes a public nuisance causing special injury to Potlatch in the form of costs incurred to investigate the conditions created by the District's conduct, costs incurred in defending Potlatch against the consequences of that conduct, and any costs which Potlatch may be compelled to expend in the future to compensate for or remediate the consequences of the District's actions.

## FOURTH CLAIM FOR RELIEF

### (Breach Of Obligations Arising From Permit)

13.    Potlatch repeats the allegations of paragraphs 1 through 5 of this Cross-Claim as though fully set forth herein.

14.    In the entire period of its use of the JOS, including the JWPCP, Potlatch paid to the appropriate governmental agencies, including District No. 2, good and valuable consideration in the form of permit fees for the right to said usage.  In consideration of the payment of said fees, District No.

///

///

1   2 agreed to permanently and safely treat, handle and dispose of

2   all wastewater effluent which Potlatch was invited and permitted

3   to discharge to the JOS, including the JWPCP.

4       15.   By reason of the conduct alleged by plaintiffs in

5   the First Amended Complaint, District No. 2 breached its above

6   obligations to Potlatch arising from receipt of the fees paid by

7   Potlatch and as a consequence thereof, has damaged Potlatch in an

8   amount as yet unascertained.

9

10  **FIFTH CLAIM FOR RELIEF**

11  **(Breach Of Implied Warranty)**

12      16.   Potlatch repeats the allegations of paragraphs 1

13  through 5 of this Cross-Claim as though fully set forth herein.

14      17.   Implied   in   District   No.   2's   invitation   and

15  permission to Potlatch for its use of the JOS, including the

16  JWPCP, was a warranty that District No. 2 would operate the JOS,

17  including the JWPCP, in such a manner so as to handle, treat and

18  dispose of any effluent discharged to the JOS by Potlatch without

19  injury to persons, property or the environment.   In acting as

20  alleged by plaintiffs in the First Amended Complaint, District No.

21  2 breached said warranty, causing damage to Potlatch in an amount

22  as yet unascertained.

23

24  **SIXTH CLAIM FOR RELIEF**

25  **(Failure To Discharge Mandatory Duties)**

26      18.   Potlatch repeats the allegations of paragraphs 1

27  through 5 of this Cross-Claim as though fully set forth herein.

28  ///

19.   Potlatch is informed and believes, and on that basis alleges, that as the operator of the JOS, including the JWPCP, LACSD had a mandatory duty to protect against the release of hazardous substances that might do harm to persons, property or the environment through the White's Point Outfall.  This mandatory duty is imposed pursuant to statute and common law.

20.   If the allegations in plaintiffs' First Amended Complaint are true, which Potlatch denies, then Potlatch is informed and believes, and on that basis alleges, that LACSD failed to discharge its duty to protect against harm to persons, property or the environment.

21.   Based on the allegations in paragraphs 18 through 20, if Potlatch is held liable to plaintiffs under any of the claims asserted in the First Amended Complaint, then LACSD is either fully or partially liable for any such liability.

## SEVENTH CLAIM FOR RELIEF

### (Dangerous Condition Of Property)

22.   Potlatch repeats the allegations set forth in paragraphs 1 through 5 of this Cross-Claim as though fully set forth herein.

23.   If the allegations in plaintiffs' First Amended Complaint are true, which Potlatch denies, then LACSD, as the operator of the JOS, including the JWPCP, maintained such property in a dangerous condition so as to cause the alleged releases of hazardous substances into the San Pedro Channel.

///

///

1     24.  As the proximate result of LACSD's actions and/or

2 omissions, Potlatch has been damaged in an amount according to

3 proof at trial.

4

5                **EIGHTH CLAIM FOR RELIEF**

6                   **(Indemnity)**

7     25.  Potlatch repeats the allegations of paragraphs 1

8 through 5 of this Cross-Claim as though fully set forth herein.

9     26.  Potlatch has incurred and continues to incur costs

10 to investigate the damage alleged by plaintiffs in the First

11 Amended Complaint and to defend itself against the allegations

12 made by plaintiffs in the First Amended Complaint. Potlatch is,

13 in fact, innocent of any wrongdoing and District No. 2, by reason

14 of the conduct alleged by plaintiffs in the First Amended

15 Complaint, is obligated to reimburse Potlatch for all such costs

16 it has incurred to date, and may incur in the future by reason of

17 matters alleged in the First Amended Complaint, under the

18 doctrines of comparative fault, implied indemnity and equitable

19 indemnity.

20

21                **NINTH CLAIM FOR RELIEF**

22                   **(CERCLA)**

23          **(42 U.S.C. § 9607(a))**

24     27.  Potlatch repeats the allegations of paragraphs 1

25 through 5 of this Cross-Claim as though fully set forth herein.

26     28.  The First Amended Complaint in this action alleges

27 that the JOS operated by District No. 2 and the Palos Verdes Shelf

28 area surrounding the White's Point Outfall operated by District

No. 2 as part of the JOS are both "facilities" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9), and that hazardous substances have been and continue to be "released" into the environment from such facilities within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).   Based on such allegations, Potlatch is informed and believes, and on that basis alleges, that District No. 2 is the owner or operator of a facility and a person who at the time of disposal of a hazardous substance owned or operated a facility at which such hazardous substances were disposed of within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).   Potlatch is informed and believes, and on that basis alleges, that District No. 2 is also a person who accepts or accepted a hazardous substance for transport to disposal or treatment facilities or sites selected by such person from which there is a release within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).   Potlatch is further informed and believes, and on that basis alleges, that District No. 2 is also a person who arranges or arranged for the disposal or treatment of hazardous substances at a facility from which there is a release within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

29.   Potlatch has already incurred substantial direct response costs including, but not limited to, the costs of investigating the releases alleged by plaintiffs in the First Amended Complaint and its costs of enforcing CERCLA.   It was necessary to incur such costs and their incurrence was and is consistent with the National Contingency Plan.   Potlatch is informed and believes that it will be necessary to incur

1  additional response costs in the future which will be consistent
2  with the National Contingency Plan.  District No. 2 is liable to
3  Potlatch for all such response costs pursuant to Section
4  107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B).

5

6  **TENTH CLAIM FOR RELIEF**

7  **(Contribution)**

8         30.   Potlatch repeats the allegations of paragraphs 1
9  through 5 and paragraphs 28 through 29 of this Cross-Claim as
10  though fully set forth herein.
11         31.   Pursuant to 42 U.S.C. § 9613(f)(1), District No. 2
12  is liable to Potlatch for contribution to all natural resource
13  damages and response costs Potlatch has incurred to date or will
14  incur in the future, including, but not limited to, attorney's
15  fees incurred by Potlatch in defending the First Amended Complaint
16  and in prosecuting the within Cross-Claim against District No. 2,
17  costs incurred by Potlatch in investigating the releases of
18  hazardous substances alleged by the First Amended Complaint, and
19  any amounts Potlatch may be compelled to expend in the future to
20  remediate any condition created by said releases or as damages for
21  injury to, destruction of, or loss of natural resources.

22

23  **ELEVENTH CLAIM FOR RELIEF**

24  **(Declaratory Relief)**

25         32.   Potlatch repeats the allegations of paragraphs 1
26  through 31 of this Cross-Claim as though fully set forth herein.
27         33.   An actual, legal controversy now exists between
28  Potlatch and District No. 2, and Potlatch seeks a judicial

declaration of its rights and legal relations with District No. 2 pursuant to 28 U.S.C. Section 2201.   Potlatch contends that District No. 2 by reason of its breaches of duties as alleged above is liable to Potlatch for any and all damages caused by these breaches and for any further liability which Potlatch may incur towards the plaintiffs herein as a result of these breaches. Potlatch is informed and believes, and on that basis alleges, that District No. 2 denies that it is liable to Potlatch for any and all damages caused by the alleged breaches.

34.   A declaratory judgment is appropriate in that a declaratory judgment will obviate the need for multiple lawsuits as Potlatch incurs costs or damages and/or if Potlatch is found to be liable to plaintiffs, thereby providing a complete resolution of the disputes between Potlatch and District No. 2.

### **PRAYER FOR RELIEF ON CROSS-CLAIM**

WHEREFORE, Potlatch prays for judgment as follows:

1.   On each Claim for Relief:  actual damages as may be proven at trial, interest at the legal rate, reasonable attorney's fees, and costs of suit;

2.   On the Eighth Claim for Relief:   any and all damages that Potlatch is found to owe to plaintiffs herein on the First Amended Complaint;

3.   On the Eleventh Claim for Relief:   a declaration that District No. 2 is liable to Potlatch for damages caused by District No. 2's breaches and that District No. 2 is required to indemnify Potlatch for any damages which Potlatch is required to pay to plaintiffs herein; and

1    4.  On each Claim for Relief:  such other and further

2 relief as the Court may deem just and proper.

3

4

5                              **IV.**

6        **CROSS-CLAIM OF POTLATCH CORPORATION AGAINST COUNTY**

7    **SANITATION DISTRICT NO. 2 OF LOS ANGELES AND A DEFENDANT**

8       **CLASS OF PERSONS AND ENTITIES SIMILARLY SITUATED**

9                    **(F.R.C.P. Rule 13(g); 23)**

10

11        COMES NOW defendant Potlatch Corporation ("Potlatch")

12 and as a Cross-Claim against co-defendant County Sanitation

13 District No. 2 of Los Angeles County ("District No. 2"), together

14 with Does 1 through 40,000, hereby alleges as follows:

15

16                     **GENERAL ALLEGATIONS**

17        1.  Potlatch and District No. 2 are each defendants on

18 the First Amended Complaint brought by plaintiffs in the within

19 civil action.  Potlatch is a corporation incorporated under the

20 laws of the State of Delaware, and during the period from 1952 to

21 January 1979, owned a paper products manufacturing plant in

22 Pomona, California, and operated that plant from 1952 to mid-1978.

23        2.  Potlatch is informed and believes that County

24 Sanitation District No. 2 of Los Angeles is a publicly-owned

25 treatment works established pursuant to the laws of the State of

26 California.  District No. 2, acting on its own behalf and on

27 behalf of 14 other County Sanitation Districts in Los Angeles

28 County (collectively "LACSD"), pursuant to an agreement titled the

1   Joint Outfall Agreement, operates the Joint Outfall System.  The

2   Joint Outfall System consists of a collection and treatment system

3   for wastewater from areas within Los Angeles County, including

4   Potlatch's former plant in Pomona, California, and includes the

5   Joint Water Pollution Control Plant ("JWPCP") which discharges

6   treated effluent into the San Pedro Channel through a system of

7   outfall pipes located at White's Point ("White's Point Outfall").

8          3.   Notwithstanding that cross-claimant's use of the

9   JOS, including the JWPCP, was non-negligent, lawful and entirely

10  within the terms of use expressly invited and permitted by the

11  appropriate governmental agencies, plaintiffs allege by the First

12  Amended Complaint herein that hazardous substances, including DDT

13  and PCBs, were not removed by the JWPCP, and therefore were

14  discharged by District No. 2 at the White's Point Outfall, and

15  consequently have been and continue to be released into the

16  environment within the meaning of Section 101(22) of the

17  Comprehensive Environmental Response, Compensation and Liability

18  Act of 1980 ("CERCLA"), 42 U.S.C. § 9601(22).  Plaintiffs further

19  allege that said releases have caused and will continue to cause

20  the incurrence of response costs and damages resulting from injury

21  to and destruction and loss of natural resources, including fish,

22  birds and marine mammals, subject to the alleged trusteeship of

23  the United States and the State of California.  Plaintiffs seek to

24  hold Potlatch, among others, responsible for such response costs

25  and damages, which are alleged to have resulted from the

26  discharges by District No. 2 at the White's Point Outfall.

27          4.   Does 1 through 40,000 are persons and entities,

28  other than the named defendants on the First Amended Complaint,

the identities of whom are presently unknown to Potlatch, who have, at any time, used the JOS, including the JWPCP, for the disposal of any hazardous substance alleged by plaintiffs to have caused any damage, or otherwise give rise to any relief, sought by plaintiffs' First Amended Complaint (hereinafter "defendant class").

5.   Potlatch is informed and believes, and on that basis alleges, that District No. 2 is a local public entity within the meaning of Cal. Govt. Code Sections 900.4 and 940.4.   On or about August 24, 1990, District No. 2 was served with a claim pursuant to the California Tort Claims Act, Cal. Govt. Code Section 900, et seq. for recovery of response costs, damages, indemnity and contribution.   District No. 2 has rejected the claim.

## FIRST CLAIM FOR RELIEF

### (Declaration That Potlatch Is Entitled To
### Relief From The Defendant Class For Any
### Liability Arising To Plaintiffs)

6.   Potlatch repeats the allegations of paragraphs 1 through 5 of this class Cross-Claim as though fully set forth herein.

7.   Potlatch is informed and believes, and on that basis alleges, that the damages for which plaintiffs seek to hold cross-claimant liable relate to conditions caused by the discharges of the defendant class from the JOS, since it began releasing effluent into the San Pedro Channel through the White's Point Outfall.   Potlatch both denies any such damages and, for the

reasons set forth in its Answer and Counterclaims, denies that plaintiffs are entitled to any relief against others, including Potlatch, on account of the matters alleged by the First Amended Complaint.   However, if and to the extent that plaintiffs are entitled to any relief on account of the matters alleged by the First Amended Complaint, and if and to the extent that relief should not be the sole responsibility of District No. 2 as prayed for by Potlatch's Cross-Claim, then the entire defendant class should share the burden of such relief, not simply the eight entities sued by plaintiffs.

8.   If Potlatch is held liable to plaintiffs on any claim, or combination of claims asserted by said plaintiffs, Potlatch is entitled to full indemnity and recovery, including injunctive relief, if appropriate, against the defendant class because said class is responsible for the conditions alleged to exist in the San Pedro Channel.

9.   Potlatch is informed and believes, and on that basis alleges, that thousands of persons and entities constituting the defendant class have been invited and permitted by District No. 2 to use the JOS, including the JWPCP, for disposal of their wastes and have, pursuant to such permission, discharged their wastes to the JOS, including the JWPCP.   This has continuously occurred since the system became operational.

10.   Potlatch is informed and believes, and on that basis alleges, that the number of prior and current users of the JOS, including the JWPCP, amounts to many thousands of persons and

///

///

entities, the identities of which are reflected upon records maintained by District No. 2 and other County Sanitation Districts in Los Angeles County.

11. Potlatch's claim for full indemnity and recovery against the defendant class, including injunctive relief, if appropriate, is properly brought as a defendant's class action pursuant to Rule 23 of the Federal Rules of Civil Procedure because:

a. The defendant class is so numerous that joinder of all members is impracticable;

b. Potlatch alleges a joint obligation on behalf of all members arising out of their discharge of wastes to the JOS, including the JWPCP;

c. There are questions of law and fact common to the class;

d. District No. 2 is an adequate representative since its claims and defenses are typical of the class, and it should therefore fairly and adequately protect the interests of the class; and

e. The questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

12. The prosecution of separate actions against individual users of the JOS, including the JWPCP, creates the risk

///

///

1   of inconsistent or varying adjudications establishing, as to

2   Potlatch, incompatible rights, obligations and standards of

3   conduct.

4        13.   District No. 2 is particularly well suited to serve

5   as a representative of the defendant class, since:

6        a.   District No. 2 has itself used the JOS,

7        including the JWPCP, for disposal of hazardous

8        substances which plaintiffs allege to have caused

9        damages;

10       b.   District No. 2 operates the JOS, including the

11       JWPCP, and is thus directly responsible for all

12       discharges therefrom;

13       c.   District No. 2 has records available to it by

14       which it can identify each class member; and

15       d.   District No. 2, by virtue of the permits which

16       it has granted to each member of the defendant class,

17       has an existing affirmative duty to protect each class

18       member's interests in actions taken pursuant to said

19       permits.

20       14.   District No. 2 is further appropriate as the

21  defendant class representative since it has available to it means

22  by which to administer, on a class-wide basis, the relief sought

23  herein.

24

25       **PRAYER FOR RELIEF ON CLASS CROSS-CLAIM**

26       WHEREFORE, Potlatch prays:

27       1.   For a judicial determination of the respective

28  rights and duties of Potlatch and the defendant class with respect

1  to the abatement and remedy of hazardous conditions which

2  plaintiffs allege exist in the San Pedro Channel, including a

3  declaration that if Potlatch is held liable to plaintiffs for any

4  costs, including response costs, damages, or other monetary

5  relief, Potlatch is entitled to full indemnity from the defendant

6  class against such liability;

7          2.   For a declaration that if Potlatch is held liable

8  to abate or remedy, or respond with any form of monetary relief,

9  as respects any conditions existing as a result of releases from

10 the JOS, including the JWPCP, Potlatch is entitled to injunctive

11 relief requiring the defendant class, through District No. 2, to

12 perform all abatement or other actions which Potlatch is ordered

13 or held liable to perform and to indemnity from the defendant

14 class from and against any injunctive and/or monetary relief that

15 might be imposed upon Potlatch; and

16         3.   For such other and further relief as the Court

17 deems just and proper, including Potlatch's attorney's fees.

18

19         DATED:  October 9, 1990.

20                         GREGORY R. McCLINTOCK, P.C.
                           WARD L. BENSHOOF, P.C.
21                         PATRICK W. DENNIS
                           ELAINE M. LEMKE
22                         **McCLINTOCK, WESTON, BENSHOOF,
                             ROCHEFORT, RUBALCAVA & MacCUISH**

23

24

25                         _Patrick W. Dennis_
                           Patrick W. Dennis
26

27                         **Attorneys for Defendant, Counterclaimant
                           and Cross-Claimant POTLATCH CORPORATION**

28

1

## DEMAND FOR JURY TRIAL

2

3          Potlatch hereby demands that the claims made in the

4  First Amended Complaint and by Potlatch's counterclaims and cross-

5  claims be tried by a jury.

6

7          DATED:  October 9, 1990.

8                          GREGORY R. McCLINTOCK, P.C.
                           WARD L. BENSHOOF, P.C.
9                          PATRICK W. DENNIS
                           ELAINE M. LEMKE
10                         McCLINTOCK, WESTON, BENSHOOF,
                             ROCHEFORT, RUBALCAVA & MacCUISH
11

12

13                         _____
                                    Patrick W. Dennis
14

15                         Attorneys for Defendant, Counterclaimant
                           and Cross-Claimant POTLATCH CORPORATION
16

17

18

19

20

21

22

23

24

25

26

27

28

1          **(PROOF OF SERVICE – 1013a, 2015.5 C.C.P.)**

2   **STATE OF CALIFORNIA**        ]
                                    ]ss.

3   **COUNTY OF LOS ANGELES**    ]

4       I am employed in the County of Los Angeles, State of

5 California.  I am over the age of 18 and not a party to the within action; my business address is 444 South Flower Street, Fifth Floor, Los Angeles, California 90071.

6

7       On October 9, 1990, I served the foregoing document(s) described as **ANSWER OF DEFENDANT POTLATCH CORPORTION TO FIRST**

8 **AMENDED COMPLAINT; COUNTERCLAIMS; CROSS-CLAIMS; DEMAND FOR JURY TRIAL** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

9

10                 SEE ATTACHED SERVICE LIST

11

12  **_x_**   I placed such envelope with postage thereon fully prepaid in the United States mail at Los Angeles, California.

13  **_x_**   I am "readily familiar" with the firm's practice of

14 collection and processing correspondence for mailing.  Under that practice, it would be deposited with U.S. postal service on

15 that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if

16 postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

17

 **___**   I delivered such envelope by hand to the offices of the

18 addressees.

19  **___**   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

20

21  **_x_**   I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

22

23

24                                  Lorraine K. Lee

25

26

27

28

```
 1                              SERVICE LIST

 2
    Karl S. Lytz, Esq.
 3  Latham & Watkins
    701 "B" Street
 4  Suite 2100
    San Diego, California  92101-8197
 5  (Attorneys for MONTROSE CHEMICAL COMPANY)

 6


 7  Jose Allen, Esq.
    Peter Simshauser, Esq.
 8  Skadden, Arps, Slate, Meagher & Flom
    4 Embarcadero Center
 9  San Francisco, California  94111
    (Attorneys for CHRIS-CRAFT INDUSTRIES, INC.)
10


11
    Scott P. DeVries, Esq.
12  Charles B. Cohler, Esq.
    Lasky, Haas, Cohler & Munter
13  505 Sansome Street, Suite 1200
    San Francisco, California 94111
14  (Attorneys for WESTINGHOUSE ELECTRIC CORPORATION)

15
    Rene Tatro, Esq.
16  Roger L. Carrick, Esq.
    Heller, Ehrman, White & McAuliffe
17  515 S. Figueroa, Suite 1230
    Los Angeles, California 90071-3301
18  (Attorneys for SIMPSON PAPER COMPANY)

19
    Patrick L. Finley, Esq.
20  Michael J. Steel, Esq.
    Pillsbury, Madison & Sutro
21  P.O. Box 7880
    San Francisco, California  94104
22          -and-
    Christopher J. McNevin, Esq.
23  Marvin Bartel, Esq.
    Pillsbury, Madison & Sutro
24  Suite 3000
    515 South Flower Street
25  Los Angeles, California  90071-2235
    (Attorneys for ATKEMIX THIRTY-SEVEN, INC.,
26  STAUFFER MANAGEMENT CO., and ICI AMERICAN
    HOLDINGS, INC.)
27

28                               2
```

PROOF OF SERVICE BY FEDERAL EXPRESS

I, the undersigned, say:  I am and was at all times herein mentioned a resident of the County of Los Angeles, over the age of eighteen years and not a party to the within action or proceeding; that my business address is 444 South Flower Street, Fifth Floor, Los Angeles, California 90071; that I am employed in the office of McClintock, Weston, Benshoof, Rochefort, Rubalcava & MacCuish by a member of the Bar of this Court at whose direction the service mentioned herein below was made.

On October 9, 1990, I caused to be served upon each of the persons named below a copy of the following document(s): **ANSWER OF DEFENDANT POTLATCH CORPORATION TO FIRST AMENDED COMPLAINT; COUNTERCLAIMS; CROSS-CLAIMS; DEMAND FOR JURY TRIAL** by sending the same by Federal Express addressed as follows:

SEE ATTACHED SERVICE LIST

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 9, 1990, at Los Angeles, California.

Lorraine K. Lee

1                                     SERVICE LIST

2

3      Richard B. Stewart
       Assistant Attorney General
4      Gerald F. George
       Senior Counsel
5      Environmental Enforcement Section
       Environment and Natural Resources Division
6      U.S. Department of Justice
       301 Howard Street, Suite 870
7      San Francisco, California  94105
       **(Attorneys for UNITED STATES OF AMERICA,**
8      **THE SECRETARY OF COMMERCE, THE SECRETARY OF THE**
       **INTERIOR, THE UNDERSECRETARY FOR OCEANS AND**
9      **ATMOSPHERE, THE ADMINISTRATOR OF THE ENVIRONMENTAL**
       **PROTECTION AGENCY)**

10

11     John K. Van De Kamp
       Attorney General of the State of California
12     Robert H. Connett
       Assistant Attorney General
13     John Saurenman
       Sara J. Russell
14     J. Matthew Rodriquez
       Deputy Attorneys General
15     2101 Webster Street
       Oakland, California  94612
16     **(Attorneys for STATE OF CALIFORNIA**
       **EX REL. DEPARTMENT OF FISH AND GAME, STATE LANDS**
17     **COMMISSION AND DEPARTMENT OF PARKS AND**
       **RECREATION, DEPARTMENT OF HEALTH SERVICES,**
18     **CALIFORNIA STATE WATER RESOURCES BOARD, LOS**
       **ANGELES REGIONAL WATER QUALITY CONTROL BOARD)**

19

20

21

22

23

24

25

26

27

28                                         2

1               **(PROOF OF SERVICE - 1013a, 2015.5 C.C.P.)**

2 **STATE OF CALIFORNIA**       ]
                                       ]ss.

3 **COUNTY OF LOS ANGELES**     ]

4       I am employed in the County of Los Angeles, State of

5 California.  I am over the age of 18 and not a party to the within action; my business address is 1950 So. Santa Fe Avenue, Suite 101, Los Angeles, California 90021 and am employed by the

6 office of McClintock, Weston, Benshoof, Rochefort, Rubalcava & MacCuish.

7

8       On October 9, 1990, I served the foregoing document(s) described as **ANSWER OF DEFENDANT POTLATCH CORPORATION TO FIRST AMENDED COMPLAINT; COUNTERCLAIMS; CROSS-CLAIMS; DEMAND FOR JURY**

9 **TRIAL** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

10

11

                          SEE ATTACHED SERVICE LIST

12

13

14 ___  I placed such envelope with postage thereon fully prepaid in the United States mail at Los Angeles, California.

15 ___  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under

16 that practice, it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles,

17 California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if

18 postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

19

20 _X_  I delivered such envelope by hand to the offices of the addressees.

21 ___  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

22

23 _X_  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

24

25

26                         Sharon Wright

27

28