IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

THOMAS P. CARROLL
Senior Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 514-4051

ANDRÉ BIROTTE JR.
United States Attorney
Central District of California
LEON W. WEIDMAN
Chief, Civil Division
JOANNE OSINOFF
Assistant United States Attorney
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-6880

Attorneys for Plaintiff United States of America
(see next page for names of additional counsel)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF CALIFORNIA,<br><br>Plaintiffs,<br>v.<br><br>MONTROSE CHEMICAL CORP. OF CALIFORNIA, et al.,<br><br>Defendants. | Civil No. CV 90 3122-R<br><br>PARTIAL CONSENT DECREE<br><br>(Construction of the Dual Site Groundwater Operable Unit Treatment System) |

KAMALA D. HARRIS
Attorney General of the State of California
MARK BRECKLER
Chief Assistant Attorney General
SALLY MAGNANI
Senior Assistant Attorney General

BRIAN HEMBACHER
Supervising Deputy Attorney General
CATHERINE M. WIEMAN
Deputy Attorney General
300 South Spring Street
Los Angeles, CA 90013
Telephone: (213) 897-2638
Brian.Hembacher@doj.ca.gov
Catherine.Wieman@doj.ca.gov

Attorneys for Plaintiff State of California

# **TABLE OF CONTENTS**

I.      BACKGROUND ................................................................................ 1
II.     JURISDICTION ............................................................................... 6
III.    PARTIES BOUND ............................................................................ 7
IV.     DEFINITIONS ................................................................................. 8
V.      GENERAL PROVISIONS ............................................................... 12
VI.     ESTABLISHMENT AND USE OF DUAL SITE TRUST FUND ...... 14
VII.    PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS .... 19
VIII.   QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS ....... 24
IX.     ACCESS AND INSTITUTIONAL CONTROLS .............................. 26
X.      REPORTING REQUIREMENTS ..................................................... 29
XI.     EPA APPROVAL OF PLANS, REPORTS, AND OTHER DELIVERABLES 31
XII.    PROJECT COORDINATORS ......................................................... 33
XIII.   CERTIFICATION OF COMPLETION OF THE WORK ................... 34
XIV.    EMERGENCY RESPONSE ............................................................ 36
XV.     PAYMENT OF WORK OVERSIGHT COSTS ............................... 37
XVI.    INDEMNIFICATION AND INSURANCE ...................................... 39
XVII.   FORCE MAJEURE .......................................................................... 41
XVIII.  DISPUTE RESOLUTION ............................................................... 43
XIX.    STIPULATED PENALTIES ........................................................... 48
XX.     COVENANTS BY PLAINTIFFS ..................................................... 53
XXI.    COVENANTS BY SETTLING DEFENDANTS ............................... 57
XXII.   EFFECT OF SETTLEMENT; CONTRIBUTION .............................. 58
XXIII.  ACCESS TO INFORMATION ......................................................... 60
XXIV.   RETENTION OF RECORDS ........................................................... 62
XXV.    NOTICES AND SUBMISSIONS ..................................................... 64
XXVI.   RETENTION OF JURISDICTION ................................................... 66
XXVII.  APPENDICES ................................................................................. 67
XXVIII. COMMUNITY RELATIONS ........................................................... 67
XXIX.   MODIFICATION ............................................................................. 68
XXX.    LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ......... 68
XXXI.   SIGNATORIES/SERVICE ............................................................. 69
XXXII.  FINAL JUDGMENT ....................................................................... 70

# I.   BACKGROUND

A.      In December 1999, the United States and the State of California ("State"), on behalf of the California Department of Toxic Substances Control ("DTSC"), filed a Third Amended Complaint ("Complaint") in this matter, pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§ 9607 - 9675, seeking, *inter alia*, recovery of response costs in connection with releases of the pesticide DDT and other hazardous substances into the environment at and from the former manufacturing facility located at 20201 Normandie Avenue in Los Angeles, California, which was operated by Montrose Chemical Corporation of California ("Montrose Plant Property").  This Partial Consent Decree constitutes a partial resolution of the claims asserted in the Complaint, as described further below.

B.      In the First Claim for Relief of the Complaint, the United States and DTSC asserted a claim under Section 107(a)(1-4)(C) of CERCLA, 42 U.S.C. § 9607(a)(1- 4)(C), for alleged natural resource damages relating to discharges of DDT through Los Angeles County's sanitation system and into the Pacific Ocean. The First Claim was settled in a Consent Decree entered by the Court on March 15, 2001.

C.       In the Second Claim for Relief of the Complaint, the United States and DTSC asserted a claim for recovery of costs incurred and declaratory judgment for costs to be incurred by EPA and DTSC in response to the release or threatened release of hazardous substances into the environment at and/or from the Montrose Plant Property pursuant to Section 107(a)(1-4)(A) of CERCLA, 42 U.S.C. § 9607(a)(1-4)(A).

D.      The Complaint specified that the Second Claim included costs related to contamination in ocean sediment at the Palos Verdes Shelf, as well as a number of specified water bodies.  This portion of the Second Claim was also settled in the Consent Decree entered on March 15, 2001.

E.      Pursuant to a Partial Consent Decree for Past Costs, entered by the Court on October 20, 2000, the United States and DTSC recovered $5.125 million as reimbursement and settlement of claims for specified past response costs.  In addition, Montrose Chemical Corporation of California ("Montrose") had previously paid $1,354,612.37 to EPA as reimbursement of past response costs incurred by the United States with respect to portions of the Montrose Superfund Site.

F.      Trial in this action commenced on October 17, 2000.  On October 18, 2000, the Court took under submission the issue of liability of the Settling Defendants for certain areas to which Plaintiffs contended that hazardous substances had been released from the Montrose Plant Property.  The Parties subsequently lodged and the Court entered two separate consent decrees for those areas.  Specifically, on June 26, 2002, the Court entered a "Partial Consent Decree (relating to the Neighborhood Areas)," which resolved Settling Defendants' liability to the United States and DTSC for response costs related to the Neighborhood Areas, as defined in that agreement.  On the same day, the Court entered a "Partial Consent Decree (relating to the Current Storm Water Pathway)," which resolved Settling Defendants' liability to the United States, DTSC, and the California Regional Water Quality Control Board, Los Angeles Region, for response costs relating to the Current Storm Water Pathway, as defined in that agreement.

G.     This Court has already considered certain liability issues related to the groundwater contamination emanating from the Montrose Superfund Site and issued an Order on Summary Judgment (Order Granting United States' Motion for Partial Summary Judgment, April 24, 2000, as amended by Joint Stipulation and Order, July 18, 2000).  In these Orders, the Court concluded that Montrose, Atkemix Thirty-Seven, Inc., and Aventis CropScience USA, Inc. are jointly and severally liable for all costs of removal or remedial action incurred by the United States or DTSC with respect to the Montrose Plant Property.

H.     Addressing the Montrose Superfund Site groundwater contamination is complicated by the fact that EPA believes that the Montrose-related groundwater plume is commingled with contamination from a nearby site, the Del Amo Superfund Site.  EPA therefore refers to the commingled contamination as the Dual Site Groundwater Operable Unit of the Montrose Chemical and Del Amo Superfund Sites, in Los Angeles County, California ("Dual Site"), and issued a joint Record of Decision ("ROD") for the Dual Site on March 31, 1999.

I.     In accordance with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP") and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified DTSC on February 4, 2010, of negotiations with potentially responsible parties ("PRPs") regarding the completion of the Remedial Design and implementation of the Remedial Action for the Dual Site.  EPA has provided DTSC with an opportunity to participate in such negotiations and be a party to this Partial Consent Decree.

J.     In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the U.S. Department of Commerce, National Oceanic and Atmospheric Administration, and the U.S. Department of the Interior, Fish and Wildlife Service and National Park Service on November 17, 2010, of these

negotiations and invited the trustee(s) to participate in the negotiation of this Partial Consent Decree.

K.     The defendants that have entered into this Partial Consent Decree ("Settling Defendants") do not admit any liability to Plaintiffs arising out of the transactions or occurrences alleged in the Complaint, nor do they acknowledge that the release or threatened release of hazardous substances at or from the Dual Site constitutes an imminent and substantial endangerment to the public health or welfare or the environment.  Settling Defendants do not admit, and reserve the right to controvert in subsequent proceedings, except as otherwise provided herein, the validity of any findings of fact or conclusions of law stated in this Partial Consent Decree.

L.     Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Montrose Chemical Superfund Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on October 4, 1989, 54 Fed. Reg. 41015.  By the same authority, EPA included the Del Amo Site on the NPL on September 7, 2002.  67 Fed. Reg. 56760.

M.     In response to a release or a substantial threat of a release of a hazardous substance(s) at or from the Dual Site, Montrose undertook Remedial Investigation ("RI") activities in 1986.  In 1998, EPA took over the Montrose investigation and completed a Remedial Investigation Report in May 1998, pursuant to 40 C.F.R. § 300.430; and Shell Oil Company ("Shell") issued a separate Remedial Investigation Report for the Del Amo Study Area the same month.  EPA had already assumed responsibility for the Feasibility Study ("FS") and issued a Feasibility Study Report for the Groundwater OU in May 1998.

N.     Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the FS and of the proposed plan for

69

Remedial Action for the Dual Site on June 1, 1998, in a major local newspaper of general circulation.  EPA provided an opportunity for written and oral comments from the public on the proposed plan.  A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Assistant Director of the Superfund Division, as the delegate of the Regional Administrator of EPA Region 9, based the selection of the response action.

O.     After issuance of the ROD, Remedial Design work began.  Initially, EPA undertook a groundwater modeling effort to assess the direction and flow of groundwater in and near the Dual Site.  In 2003, EPA issued separate Administrative Orders to Montrose and Shell for the Interim Remedial Design. *See* In The Matter of the Montrose Chemical Superfund Site and the Del Amo Superfund Site, Los Angeles, California, Groundwater Operable Unit, U.S. EPA Docket Number 2003-06, and In The Matter of the Del Amo Superfund Site and Montrose Chemical Superfund Site, Los Angeles, California, Groundwater Operable Unit, U.S. EPA Docket Number 2003-08.  Montrose and Shell complied with those orders.  EPA subsequently issued another order, EPA Administrative Order Number 2008-04A ("EPA Order 2008-04A"), requiring completion of certain elements of the Remedial Design.  Completion of the work required under EPA Order 2008-04A is currently anticipated by mid-2012.

P.     To facilitate the resolution of this matter and the prompt and early commencement of the Remedial Action for the Dual Site, EPA, after consultation with DTSC, has determined that, based on the information currently available, it is appropriate to enter into this Partial Consent Decree, which addresses only one element of the multi-step remedy selected in the ROD.  The ROD concludes that three plumes of groundwater contamination have become partially commingled or merged in the Harbor Gateway area of Los Angeles County.  This Partial Consent Decree addresses the construction of the treatment system for the chlorobenzene

plume, as defined in the ROD ("Chlorobenzene Plume"), and one element of the remedy as to that plume: the construction of the groundwater treatment system.

Q.      Solely for the purposes of Section 113(j) of CERCLA, 42 U.S.C. § 9613(j), the Work shall constitute a response action taken or ordered by the President for which judicial review shall be limited to the administrative record.

R.      The Plaintiffs are continuing to negotiate with the Settling Defendants and other parties to resolve the remaining issues as to the groundwater remedy, which include, but are not limited to, operation and maintenance of the Chlorobenzene Plume groundwater treatment system, payment of response costs (other than EPA Work Oversight Costs and DTSC Work Oversight Costs), and implementation of all remaining elements of the remedy.  These negotiations involve numerous additional parties and issues.  Plaintiffs and Settling Defendants to this Partial Consent Decree believe it is both feasible and appropriate to begin the construction of the Chlorobenzene Plume treatment system prior to reaching agreement on a broader, all-party consent decree.

S.      The Parties recognize, and the Court by entering this Partial Consent Decree finds, that this Partial Consent Decree has been negotiated by the Parties in good faith and implementation of this Partial Consent Decree will expedite the cleanup of the Dual Site and will avoid further prolonged and complicated litigation between the Parties, and that this Partial Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.      JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b).  This Court also has personal jurisdiction over Settling Defendants.

Solely for the purposes of this Partial Consent Decree and the underlying complaints, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District.  Settling Defendants shall not challenge the terms of this Partial Consent Decree or this Court's jurisdiction to enter and enforce this Partial Consent Decree.

## III.   PARTIES BOUND

2.     This Partial Consent Decree applies to and is binding upon the United States, DTSC, and upon Settling Defendants and their successors and assigns.  Any change in ownership or corporate status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter Settling Defendants' responsibilities under this Partial Consent Decree.

3.     Settling Defendants shall provide a copy of this Partial Consent Decree to each contractor hired by the Settling Defendants to perform the Work required by this Partial Consent Decree and to each person representing any Settling Defendant with respect to the Dual Site or the Work, and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Partial Consent Decree.  Settling Defendants or their contractors shall provide written notice of the Partial Consent Decree to all subcontractors hired to perform any portion of the Work required by this Partial Consent Decree.  Settling Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work in accordance with the terms of this Partial Consent Decree.  With regard to the activities undertaken pursuant to this Partial Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with Settling Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

# IV.    DEFINITIONS

4.      Unless otherwise expressly provided in this Partial Consent Decree, terms used in this Partial Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Partial Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply solely for purposes of this Partial Consent Decree:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601 – 9675.

"Chlorobenzene Plume" shall mean the entire distribution of chlorobenzene in groundwater at the Dual Site and all other contaminants that are commingled with the chlorobenzene, in accordance with the definition set forth in the ROD. *See* ROD at 7-10.

"Day" shall mean a calendar day unless expressly stated to be a working day.  The term "working day" shall mean a day other than a Saturday, Sunday, or federal holiday.  In computing any period of time under this Partial Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or State holiday, the period shall run until the close of business of the next working day.

"DTSC" shall mean the California Department of Toxic Substances Control, its officers, employees, and representatives, all of its divisions and branches, any predecessor agency in interest, and the Hazardous Substances Account, as defined in California Health and Safety Code § 25330.

"DTSC Work Oversight Costs" shall mean costs that DTSC incurs in monitoring and supervising Settling Defendants' performance of the Work to determine whether such performance is consistent with the requirements of this

69

Partial Consent Decree, including costs incurred in reviewing plans, reports, and other deliverables submitted pursuant to this Partial Consent Decree, as well as costs incurred in overseeing implementation of the Work, including, *inter alia*:  the costs incurred by DTSC pursuant to Sections IX (Access and Institutional Controls) and XIV (Emergency Response), and the costs incurred by DTSC in enforcing the terms of this Partial Consent Decree, including all costs incurred in connection with Dispute Resolution pursuant to Section XVIII (Dispute Resolution) and all litigation costs.

"Dual Site" shall mean the Dual Site Groundwater Operable Unit of the Montrose Chemical and Del Amo Superfund Sites, in Los Angeles County, California, and depicted generally on the map attached as Appendix C.

"Effective Date" shall be the date upon which this Partial Consent Decree is entered by the Court as recorded on the Court docket, or, if the Court instead issues an order approving the Partial Consent Decree, the date such order is recorded on the Court docket.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"EPA Work Oversight Costs" shall mean costs that EPA incurs in monitoring and supervising Settling Defendants' performance of the Work to determine whether such performance is consistent with the requirements of this Partial Consent Decree, including costs incurred in reviewing plans, reports, and other deliverables submitted pursuant to this Partial Consent Decree, as well as costs incurred in overseeing implementation of the Work, including, *inter alia*: the costs incurred by the United States pursuant to Sections IX  (Access and Institutional Controls) and XIV(Emergency Response), and the costs incurred by the United States in enforcing the terms of this Partial Consent Decree, including

all costs incurred in connection with Dispute Resolution pursuant to Section XVIII (Dispute Resolution) and all litigation costs.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).  The applicable rate of interest shall be the rate in effect at the time the interest accrues.  The rate of interest is subject to change on October 1 of each year.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Paragraph" shall mean a portion of this Partial Consent Decree identified by an Arabic numeral or an upper or lower case letter.

"Partial Consent Decree" or "Decree" shall mean this Partial Consent Decree and all appendices attached hereto (listed in Section XXVII).  In the event of conflict between this Partial Consent Decree and any appendix, this Partial Consent Decree shall control.

"Parties" shall mean the United States, the State, on behalf of DTSC, and Settling Defendants.

"Plaintiffs" shall mean the United States and the State, on behalf of DTSC.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 – 6992 (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the Dual Site Groundwater Operable Unit signed on March 30, 1999, by

the Regional Administrator, EPA Region IX, or his/her delegate, and all attachments thereto.  The ROD is attached as Appendix A.

"Remedial Design" shall mean those activities related to the remedy selected in the ROD that are being completed under EPA Order 2008-04A.

"Remaining Work" shall mean, collectively, all activities, excluding the Work, that will be necessary to implement the remedy selected in the ROD.

"Section" shall mean a portion of this Partial Consent Decree identified by a Roman numeral.

"Settling Defendants" shall mean Montrose, Bayer CropScience Inc., News Publishing Australia Limited, and Stauffer Management Company LLC, and includes all predecessors in interest that have entered into Consent Decrees in this matter, as described in Section I (Background).  Those predecessors include Aventis CropScience USA Inc. and Rhone Poulenc Ag Company Inc. (for Bayer CropScience Inc.), Chris-Craft Industries, Inc. (for News Publishing Australia Limited), and Atkemix Thirty-Seven Inc. (for Stauffer Management Company LLC).

"State" shall mean the State of California and each department, agency, and instrumentality of the State of California, including DTSC.

"Statement of Work" or "SOW" shall mean the statement of work for implementation of the Work at the Dual Site, as set forth in Appendix B to this Partial Consent Decree and any modifications made in accordance with this Partial Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by Settling Defendants to supervise and direct the implementation of the Work under this Consent Decree.

69

"Trust Payment" shall mean the $14,599,048 to be paid by Settling Defendants to the Dual Site Trust Fund pursuant to Section VI of this Consent Decree.

"United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, including EPA and any federal natural resource trustee.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (4) any hazardous substance under California Health and Safety Code § 25316.

"Work" shall mean all activities and obligations that Settling Defendants are required to perform under this Partial Consent Decree, except the activities required under Section XXIV (Retention of Records).

"Work Plan" shall mean the document developed pursuant to Paragraph 3.1(a) through (f) of the SOW and approved by EPA, and any modifications thereto.

## V.    GENERAL PROVISIONS

5.    <u>Objectives of the Parties</u>.  The objectives of the Parties in entering into this Partial Consent Decree are to protect public health, welfare, and the environment by providing for the performance of the Work by Settling Defendants, the payment by Settling Defendants of EPA Work Oversight Costs and DTSC Work Oversight Costs, and the resolution of certain claims of Plaintiffs against Settling Defendants and certain claims of Settling Defendants against Plaintiffs with regard to this Dual Site, as set forth in Sections XX and XXI ("Covenants by Plaintiffs" and "Covenants by Settling Defendants").

6.     Commitments by Settling Defendants.

a.  Settling Defendants shall finance and perform the Work in accordance with this Partial Consent Decree, the Remedial Design, the applicable portions of the ROD, the SOW, and the Work Plan and other plans, standards, specifications, and schedules set forth in this Partial Consent Decree or approved by EPA.

b.  The obligations of Settling Defendants to finance and perform the Work are joint and several.  In the event of the insolvency of any Settling Defendant or the failure by any Settling Defendant to implement any requirement of this Partial Consent Decree, the remaining Settling Defendants shall complete all such requirements.

c.  The Work shall include, and Settling Defendants shall finance and perform, any further response actions related to construction of the groundwater treatment system for the Chlorobenzene Plume that are required under Section VII of this Partial Consent Decree and any additional activities required pursuant to Paragraph 46 (Completion of the Work) in accordance with this Partial Consent Decree, the applicable portions of the ROD, the SOW, and the Work Plan and other plans, standards, specifications, and schedules set forth in, or developed pursuant to, this Partial Consent Decree.

7.     Compliance With Applicable Law.  All activities undertaken by Settling Defendants pursuant to this Partial Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations.  Settling Defendants must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the ROD and the SOW.  The activities conducted pursuant to this Partial Consent Decree, if approved by EPA, shall be deemed to be consistent with the NCP.

69

8.   <u>Permits</u>.

a.  As provided in Section 121(e) of CERCLA, 42 U.S.C. § 9621(e), and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work).  Settling Defendants may seek the assistance of the United States and DTSC with respect to permits proposed by any State, county, municipal, or other governmental bodies.  Where any portion of the Work that is not on-site requires a federal or state permit or approval, Settling Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b.  Settling Defendants may seek relief under the provisions of Section XVII (Force Majeure) for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit or approval referenced in Paragraph 8.a and required for the Work, provided that they have submitted timely and complete applications and taken all other actions necessary to obtain all such permits or approvals.

c.  This Partial Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

## VI.   ESTABLISHMENT AND USE OF DUAL SITE TRUST FUND

9.   <u>Generally</u>.  As provided by this Section and Appendix E (the Dual Site Trust Fund Agreement), a Dual Site Trust Fund, to be known as the "Trust," shall be established by Settling Defendants for the benefit of EPA to provide sources of funds for payment and reimbursement of Work under this Partial Consent Decree, pursuant to the procedures specified in Appendix E.

10.   <u>Establishment of the Trust</u>.  Within 15 days of the Effective Date, Settling Defendants shall transfer the Trust Payment to be deposited into the Trust. The Parties agree that the Trust is established pursuant to the order of the Court for the sole purpose of resolving or satisfying one or more claims asserting liability under CERCLA.

11.   <u>Performance Guarantee</u>.  In the event that EPA determines at any time that the Trust will not have sufficient funding to complete the Work, whether due to an increase in the estimated cost of completing the Work or for any other reason, Settling Defendants, within 30 days after receipt of notice of EPA's determination, shall obtain and present to EPA for approval a proposal for a performance guarantee in one or more of the forms set forth at Paragraph 12 that will be sufficient to ensure the full and final completion of the Work.  If, however, Settling Defendants cannot obtain such form of performance guarantee within the 30-day period, and if further Settling Defendants shall have commenced to obtain such performance guarantee within the 30-day period, and thereafter diligently proceed to obtain the same, EPA shall extend such period for such time as is reasonably necessary for Settling Defendants in the exercise of due diligence to obtain such revised or alternative form of performance guarantee, such additional period not to exceed 60 days.  On day 30, Settling Defendants shall provide to EPA a status report on its efforts to obtain the revised or alternative form of guarantee.  In seeking approval for a performance guarantee, Settling Defendants shall follow the procedures set forth in Paragraph 13.  Settling Defendants' inability to post a performance guarantee for completion of the Work shall in no way excuse performance of any other requirements of this Consent Decree, including, without limitation, the obligation of Settling Defendants to complete the Work in strict accordance with the terms of this Consent Decree.

12.    The performance guarantee, which must be satisfactory in form and substance to EPA, shall be in the form of one or more of the following mechanisms (provided that, if Settling Defendants intend to use multiple mechanisms, such multiple mechanisms shall be limited to surety bonds guaranteeing payment, letters of credit, trust funds, and insurance policies):

a.   A surety bond unconditionally guaranteeing payment and/or performance of the Work that is issued by a surety company among those listed as acceptable sureties on federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

b.   One or more irrevocable letters of credit, payable to or at the direction of EPA, that is issued by one or more financial institution(s) (i) that has the authority to issue letters of credit and (ii) whose letter-of-credit operations are regulated and examined by a federal or state agency;

c.   A trust fund established for the benefit of EPA that is administered by a trustee (i) that has the authority to act as a trustee and (ii) whose trust operations are regulated and examined by a federal or state agency;

d.   A policy of insurance that (i) provides EPA with acceptable rights as a beneficiary thereof; and (ii) is issued by an insurance carrier (a) that has the authority to issue insurance policies in the applicable jurisdiction(s) and (b) whose insurance operations are regulated and examined by a federal or state agency;

e.   A demonstration by one or more Settling Defendants that each such member meets the financial test criteria of 40 C.F.R. § 264.143(f) with respect to the estimated cost of the Work (plus the amount(s) of any other federal or any state environmental obligations financially assured through the use of a financial test or guarantee), provided that all other requirements of 40 C.F.R. § 264.143(f) are met to EPA's satisfaction;

f.   A written guarantee to fund or perform the Work executed in favor of EPA by one or more of the following: (i) a direct or indirect parent company of a Settling Defendant, or (ii) a company that has a "substantial business relationship" (as defined in 40 C.F.R. § 264.141(h)) with at least one Settling Defendant; provided, however, that any company providing such a guarantee must demonstrate to the satisfaction of EPA that it satisfies the financial test and reporting requirements for owners and operators set forth in subparagraphs (1) through (8) of 40 C.F.R. § 264.143(f) with respect to the estimated cost of the Work (plus the amount(s) of any other federal or any state environmental obligations financially assured through the use of a financial test or guarantee) that it proposes to guarantee hereunder; or

g.   Providing such additional funding to the Trust, established under Appendix E, as required to complete the Work.

13.   As provided in Paragraph 11, Settling Defendants shall submit a written proposal for a performance guarantee to EPA that shall specify, at a minimum, the estimated cost of completing the Work, the basis upon which such cost was calculated, and the proposed performance guarantee, including all proposed instruments or other documents required in order to make the proposed performance guarantee legally binding.  The proposed performance guarantee must satisfy all requirements set forth or incorporated by reference in this Section. Settling Defendants shall submit such proposed performance guarantee to the EPA Regional Financial Management Officer in accordance with Section XXV (Notices and Submissions), with a copy to Kate Taylor, Financial Analyst, 75 Hawthorne Lane, San Francisco, California 94105.  EPA will notify Settling Defendants in writing of its decision to accept or reject a revised or alternative performance guarantee submitted pursuant to this Paragraph.  Within ten days after receiving a written decision approving the proposed revised or alternative performance

guarantee, Settling Defendants shall execute and/or otherwise finalize all instruments or other documents required in order to make the selected performance guarantee(s) legally binding in a form substantially identical to the documents submitted to EPA as part of the proposal, and such performance guarantee(s) shall thereupon be fully effective.  Settling Defendants shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding to the EPA Regional Financial Management Officer within 30 days after receiving a written decision approving the proposed revised or alternative performance guarantee in accordance with Section XXV (Notices and Submissions), with a copy to Kate Taylor, Financial Analyst, 75 Hawthorne Lane, San Francisco, California 94105 and to the United States, EPA, and DTSC as specified in Section XXV.

     14.   <u>Continuing Jurisdiction</u>.  The Trust shall be subject to the continuing jurisdiction of the Court.

     15.   All disputes related to the Trust, including, but not limited to, disputes related to the exercise of EPA's power under the Dual Site Trust Fund Agreement to object to any payment requested from the Trust, shall be subject to an accelerated modification of the dispute resolution procedures set forth in Section XVIII (Dispute Resolution).  All terms and provisions contained in the Dispute Resolution Section shall be applicable except the references to numbers of days. For the purpose of all disputes related to the Trust, the number of days in Section XVIII shall be modified as follows:  (1) Paragraph 62 shall be modified so that the period for informal negotiations shall not exceed 10 days; (2) Paragraph 63.a shall be modified so that a Statement of Position must be served within 7 days after the conclusion of the informal negotiation period; (3) Paragraph 63.b shall be modified so that within 14 days of receipt of Settling Defendants' Statement of Position, EPA must serve its Statement of Position, and within 7 days after receipt of EPA's

Statement of Position, Settling Defendants may submit a reply; (4) Paragraph 64.c shall be modified so that a motion for judicial review must be served within 7 days of receipt of EPA's administrative decision; and (5) Paragraph 65.a shall be modified so that a decision by the Superfund Division Director shall be binding unless Settling Defendants file a motion for judicial review of the decision within 7 days of receipt of the decision.

**VII.   PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS**

16.   <u>Selection of Supervising Contractor</u>.

a.   All aspects of the Work to be performed by Settling Defendants pursuant to Sections VII (Performance of the Work by Settling Defendants), VIII (Quality Assurance, Sampling, and Data Analysis), IX (Access and Institutional Controls), and XIV (Emergency Response) shall be under the direction and supervision of the Supervising Contractor, the selection of which shall be subject to disapproval by EPA after a reasonable opportunity for review and comment by DTSC.  Within 30 days after the lodging of this Partial Consent Decree, Settling Defendants shall notify EPA and DTSC in writing of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor for the Work.  With respect to any contractor proposed to be Supervising Contractor, Settling Defendants shall demonstrate that the proposed contractor has a quality assurance system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan ("QMP").  The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001, reissued May 2006) or equivalent documentation as determined by EPA.  EPA will issue a notice of disapproval or an authorization to proceed

regarding hiring of the proposed contractor.  If at any time thereafter, Settling Defendants propose to change the Supervising Contractor, Settling Defendants shall give notice to EPA and DTSC and must obtain an authorization to proceed from EPA, after a reasonable opportunity for review and comment by DTSC, before the new Supervising Contractor performs, directs, or supervises any Work under this Partial Consent Decree.

b.  If EPA disapproves a proposed Supervising Contractor, EPA will notify Settling Defendants in writing.  Settling Defendants shall submit to EPA and DTSC a list of contractors, including the qualifications of each contractor, that would be acceptable to them within 30 days of receipt of EPA's disapproval of the contractor previously proposed.  EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors.  Settling Defendants may select any contractor from that list that is not disapproved and shall notify EPA and DTSC of the name of the contractor selected within 21 days of EPA's authorization to proceed.

c.  If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents Settling Defendants from meeting one or more deadlines in a plan approved by EPA pursuant to this Partial Consent Decree, Settling Defendants may seek relief under Section XVII (Force Majeure).

17.   Remedial Design.  The Parties acknowledge that Montrose and Shell are currently proceeding with certain elements of Remedial Design, pursuant to EPA Order 2008-04A.  The Parties estimate that those elements of the Remedial Design will be complete by mid-2012.

18.   Work.

a.  Within 90 days after EPA approval of the Final Remedial Design Package submitted pursuant to EPA Order 2008-04A, Settling Defendants shall

submit to EPA a work plan for performance of the Work ("Work Plan").  The Work Plan shall provide for construction of the treatment system described in the SOW, consistent with the applicable portions of the ROD.  The Work Plan shall include all the elements required in the SOW.  Upon its approval by EPA, the Work Plan shall be incorporated into and enforceable under this Partial Consent Decree.  Concurrent with submission of the Work Plan, Settling Defendants shall submit to EPA and DTSC a Health and Safety Plan for field activities required by the Work Plan which conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

b.  Upon approval of the Work Plan by EPA, after a reasonable opportunity for review and comment by DTSC, Settling Defendants shall implement the activities required under the Work Plan.  To the extent that the funds available in the Trust are not sufficient to fully implement those activities, Settling Defendants will finance the remaining activities directly.  Settling Defendants shall submit to EPA and DTSC all reports and other deliverables required under the approved Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans and Other Deliverables).

19.    The Parties acknowledge that all operation and maintenance activities, including but not limited to groundwater extraction, treatment, and injection; monitoring; quality assurance; and sampling activities are not included within the definition of Work, and are therefore not required under this Partial Consent Decree and the SOW.  These elements of the remedy will be addressed in a future consent decree or administrative order.

20.    The Parties understand and agree that nothing in this Partial Consent Decree is or shall be construed as constituting an assurance by the State, or any

agency thereof, that it will assure any or all future operation and maintenance of the Chlorobenzene Plume treatment system to be constructed in accordance with the terms of this Partial Consent Decree, or otherwise obligating the State, or any agency thereof, to provide assurance for any future operation and maintenance pursuant to Section 104(c)(3) of CERCLA, 42 USC § 9604(c)(3).

21. <u>Modification of the SOW or Work Plan</u>.

a. If EPA, in consultation with DTSC, determines that it is necessary to modify the work specified in the Statement of Work and the Work Plan to ensure that the treatment system for the Chlorobenzene Plume as constructed will effectively implement the relevant elements of the remedy set forth in the ROD, and such modification is consistent with the scope of the Work, then EPA may issue such modification in writing and shall notify Settling Defendants of such modification. If Settling Defendants object to any modification, they may seek dispute resolution under Paragraph 64 (Record Review). For the purposes of this Paragraph and Paragraph 46 (Completion of the Work) only, the "scope of the Work" means construction of a groundwater extraction, treatment, and reinjection system that will be capable, once operational, of accomplishing the following goals, as further specified in the SOW and the ROD:

(1) Contain the chlorobenzene in groundwater surrounding the Non Aqueous Phase Liquid in a containment zone (defined in the ROD at §10.4), thereby isolating the Non Aqueous Phase Liquid principal threat and the chlorobenzene contaminated groundwater immediately surrounding it from the groundwater outside the containment zone; and

(2) Outside the containment zone, reduce the concentrations of chlorobenzene in groundwater to health-based standards specified in the ROD.

b.  The SOW and Work Plan shall be modified: (i) in accordance with the modification issued by EPA; or (ii) if Settling Defendants invoke dispute resolution, in accordance with the final resolution of the dispute.  The modification shall be incorporated into and enforceable under this Partial Consent Decree, and Settling Defendants shall implement all work required by such modification.  If such modifications should occur, Settling Defendants will finance the remaining activities directly to the extent that the funds available in the Trust are not sufficient to fully implement any such modifications.

c.  Except as provided in this Paragraph, nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Partial Consent Decree.

d.  Nothing in this Partial Consent Decree, the SOW, the Remedial Design, EPA Order 2008-04A, or the Work Plan constitutes a warranty or representation of any kind by Plaintiffs that compliance with the requirements set forth in the SOW and the Work Plan will ensure completion of the Work in compliance with the applicable substantive portions of the ROD.

22.  <u>Off-Site Shipment of Waste Material</u>.

a.  Settling Defendants may ship Waste Material from the Dual Site to an off-site facility only if they verify, prior to any shipment, that the off-site facility is operating in compliance with the requirements of Section 121(d)(3) of CERCLA, 42 U.S.C. § 9621(d)(3), and 40 C.F.R. § 300.440, by obtaining a determination from EPA that the proposed receiving facility is operating in compliance with 42 U.S.C. § 9621(d)(3) and 40 C.F.R. § 300.440.

b.  Settling Defendants may ship Waste Material from the Dual Site to an out-of-state waste management facility only if, prior to any shipment, they provide written notice to the appropriate state environmental official in the

69

receiving facility's state and to the EPA Project Coordinator.  This notice requirement shall not apply to any off-site shipments when the total quantity of all such shipments will not exceed ten cubic yards.  The written notice shall include the following information, if available: (i) the name and location of the receiving facility; (ii) the type and quantity of Waste Material to be shipped; (iii) the schedule for the shipment; and (iv) the method of transportation.  Settling Defendants also shall notify the state environmental official referenced above and the EPA Project Coordinator of any major changes in the shipment plan, such as a decision to ship the Waste Material to a different out-of-state facility.  Settling Defendants shall provide the written notice after the award of the contract for the Work and before the Waste Material is shipped.

## VIII.  QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

23.  <u>Quality Assurance</u>.

a.  Settling Defendants shall use quality assurance, quality control, and chain of custody procedures for all samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003, March 2001, reissued May 2006), "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/240/R-02/009, December 2002), and subsequent amendments to such guidelines upon notification by EPA to Settling Defendants of such amendment.  Amended guidelines shall apply only to procedures conducted after such notification.

b.  Prior to the commencement of any monitoring project under this Partial Consent Decree, Settling Defendants shall submit to EPA for approval, after a reasonable opportunity for review and comment by DTSC, a Quality Assurance Project Plan ("QAPP") that is consistent with the SOW, the NCP, and applicable guidance documents.  If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and

approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Partial Consent Decree.  Settling Defendants shall ensure that EPA and DTSC personnel and their authorized representatives are allowed access at reasonable times to all laboratories utilized by Settling Defendants in implementing this Partial Consent Decree.  In addition, Settling Defendants shall ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the QAPP for quality assurance monitoring.  Settling Defendants shall ensure that the laboratories it utilizes for the analysis of samples taken pursuant to this Partial Consent Decree perform all analyses according to accepted EPA methods. Accepted EPA methods consist of those methods that are documented in the "USEPA Contract Laboratory Program Statement of Work for Inorganic Analysis, ILM05.4," and the "USEPA Contract Laboratory Program Statement of Work for Organic Analysis, SOM01.2," and any amendments made thereto during the course of the implementation of this Decree; however, upon approval by EPA, after opportunity for review and comment by DTSC, Settling Defendants may use other analytical methods which are as stringent as or more stringent than the CLP-approved methods.  Settling Defendants shall ensure that all laboratories it uses for analysis of samples taken pursuant to this Partial Consent Decree participate in an EPA or EPA-equivalent QA/QC program.  Settling Defendants shall use only laboratories that have a documented Quality System which complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001, reissued May 2006) or equivalent documentation as determined by EPA.  EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program ("NELAP") as meeting the Quality System requirements.

Settling Defendants shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Partial Consent Decree are conducted in accordance with the procedures set forth in the QAPP approved by EPA.

24.     Upon request, Settling Defendants shall allow split or duplicate samples to be taken by EPA and DTSC or their authorized representatives. Settling Defendants shall notify EPA and DTSC not less than 28 days in advance of any sample collection activity unless shorter notice is agreed to by EPA.  In addition, EPA and DTSC shall have the right to take any additional samples that EPA or the State deem necessary.  Upon request, EPA and DTSC shall allow Settling Defendants to take split or duplicate samples of any samples they take as part of Plaintiffs' oversight of the Settling Defendants' implementation of the Work.

25.     Settling Defendants shall submit to EPA and DTSC two copies each of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Defendants with respect to the Dual Site and/or the implementation of this Partial Consent Decree, unless EPA agrees otherwise.

26.     Notwithstanding any provision of this Partial Consent Decree, the United States and the State retain all of their information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

## IX.     ACCESS AND INSTITUTIONAL CONTROLS

27.     If any real property where access or land/water use restrictions are needed to implement the Work or the Remaining Work is owned or controlled by any of Settling Defendants:

a.  such Settling Defendant shall, commencing on the date of lodging of the Partial Consent Decree, provide the United States, the State, DTSC, and the

other Settling Defendants, and their representatives, contractors, and subcontractors, with access at all reasonable times to such real property, for the purpose of conducting any activity related to the Work or Remaining Work, but not limited to, the following activities:

        (1)     Monitoring the Work or Remaining Work;

        (2)     Verifying any data or information submitted to the United States or DTSC;

        (3)     Conducting investigations regarding contamination at or near the Dual Site;

        (4)     Obtaining samples;

        (5)     Assessing the need for, planning, or implementing additional response actions at or near the Dual Site;

        (6)     Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plans;

        (7)     Implementing the Work or Remaining Work pursuant to the conditions set forth in Paragraph 82 (Work Takeover);

        (8)     Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendants or their agents, consistent with Section XXIII (Access to Information);

        (9)     Assessing Settling Defendants' compliance with the Partial Consent Decree or other orders or consent decrees that implement the Work or Remaining Work; and

        (10)    Determining whether any real property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted under the Partial Consent Decree or other orders or consent decrees that implement the Work or Remaining Work.

28.     If any real property where access and/or use restrictions are needed to implement the Work or Remaining Work is owned or controlled by persons other than any Settling Defendant, Settling Defendants shall use best efforts to secure from such persons:

a.  an agreement to provide access thereto for the United States, the State, DTSC, and Settling Defendants, and their representatives, contractors and subcontractors, for the purpose of conducting any activity related to the Work or Remaining Work, including, but not limited to, the activities listed in Paragraph 27.a; and

b.  an agreement, enforceable by Settling Defendants and the United States, to refrain from using such real property in any manner that EPA, after a reasonable opportunity for review and comment by DTSC, determines will pose an unacceptable risk to human health or to the environment due to exposure to Waste Materials or interfere with or adversely affect the implementation, integrity, or protectiveness of the remedy.

29.     For purposes of Paragraph 28, "best efforts" includes the payment of reasonable sums of money to obtain access or an agreement to restrict land/water use, except that "best efforts" shall not include payment of money to any party that received from EPA a letter providing special notice of potential liability related to the Dual Site.  If, within 120 days of the Effective Date, Settling Defendants have not obtained agreements to provide reasonable access or restrict land/water use, as required by Paragraph 28.a. or 28.b, Settling Defendants shall promptly notify the United States and DTSC in writing, and shall include in that notification a summary of the steps that they have taken to attempt to comply with Paragraphs 27 or 28.  Settling Defendants may seek the assistance of the United States and DTSC with respect to obtaining access or agreements to restrict land/water use with any relevant landowners or governmental entities.

69

30.     To date, design of the Chlorobenzene Plume treatment system has presented a series of unusual challenges with respect to obtaining access for the placement of permanent intrusions (wells and pipelines) across large tracts of private and public property.   On the basis of these already-observed challenges, Plaintiffs are clarifying that Settling Defendants may seek relief under the provisions of Section XVII (Force Majeure) for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, access and/or use restrictions referenced in Paragraph 28 and required for the Work, provided that Settling Defendants have used best efforts to obtain such access and/or use restrictions and have complied with the requirements of Paragraph 29.

31.     If EPA, in consultation with DTSC, determines that Institutional Controls in the form of state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls are needed, Settling Defendants shall cooperate with EPA's and DTSC's efforts to secure and ensure compliance with such governmental controls.

32.     Notwithstanding any provision of the Partial Consent Decree, the United States and the State retain all of their access authorities and rights, as well as all of their rights to require Institutional Controls, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statute or regulations.

## X.     REPORTING REQUIREMENTS

33.     In addition to any other requirement of this Partial Consent Decree, Settling Defendants shall submit to EPA and DTSC an electronic copy (and two hard copies each) of written monthly progress reports that: (a) describe the actions which have been taken toward achieving compliance with this Partial Consent Decree during the previous month; (b) include a summary of all results of sampling and tests and all other data received or generated by Settling Defendants

or their contractors or agents in the previous month; (c) identify all portions of the Work Plan, reports, and other deliverables required by this Partial Consent Decree completed and submitted during the previous month; (d) describe all actions, including, but not limited to, data collection and implementation of the Work Plans that are scheduled for the next month and provide other information relating to the progress of construction, potentially including, but not limited to, critical path diagrams, Gantt charts and Pert charts; (e) include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays; (f) include any modifications to the Work Plan or other schedules that Settling Defendants have proposed to EPA or that have been approved by EPA; and (g) describe all activities undertaken in support of the Community Relations Plan during the previous month and those to be undertaken in the next six weeks.  Settling Defendants shall submit these progress reports to EPA and DTSC by the tenth day of every month following the lodging of this Partial Consent Decree until EPA issues notification pursuant to Paragraph 46 of Section XIII (Certification of Completion of the Work).  If requested by EPA or DTSC, Settling Defendants shall also provide briefings for EPA and DTSC to discuss the progress of the Work.

34.    Settling Defendants shall notify EPA and DTSC of any change in the schedule described in the monthly progress report for the performance of any activity, including, but not limited to, data collection and implementation of the Work Plan, no later than seven days prior to the performance of the activity.

35.    Upon the occurrence of any event during performance of the Work that Settling Defendants are required to report pursuant to Section 103 of CERCLA, 42 U.S.C. § 9603, or Section 304 of the Emergency Planning and Community Right-to-know Act ("EPCRA"), 42 U.S.C. § 11004, Settling

Defendants shall within 24 hours of the onset of such event orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator or Alternate EPA Project Coordinator is available, the Emergency Response Section, Region IX, United States Environmental Protection Agency.  These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

36.     Within 20 days of the onset of such an event, Settling Defendants shall furnish to EPA and DTSC a written report, signed by Settling Defendants' Project Coordinator, setting forth the events that occurred and the measures taken, and to be taken, in response thereto.  Within 30 days of the conclusion of such an event, Settling Defendants shall submit a report setting forth all actions taken in response thereto.

37.     Settling Defendants shall submit to EPA and DTSC an electronic copy (and two hard copies each) of all plans, reports, data, and other deliverables required by the SOW, the Work Plan, or any other approved plans in accordance with the schedules set forth in such plans.

38.     All deliverables submitted by Settling Defendants to EPA and DTSC which purport to document Settling Defendants' compliance with the terms of this Partial Consent Decree shall be signed by an authorized representative of Settling Defendants.

## XI.     EPA APPROVAL OF PLANS, REPORTS, AND OTHER DELIVERABLES

39.     <u>Initial Submissions</u>.

a.   After review of any plan, report, or other deliverable that is required to be submitted for approval pursuant to this Partial Consent Decree, EPA, after reasonable opportunity for review and comment by DTSC, shall: (i)

approve, in whole or in part, the submission; (ii) approve the submission upon specified conditions; (iii) disapprove, in whole or in part, the submission; or (iv) any combination of the foregoing.

b.  EPA also may modify the initial submission to cure deficiencies in the submission if: (i) EPA determines that disapproving the submission and awaiting a resubmission would cause substantial disruption to the Work; or (ii) previous submission(s) have been disapproved due to material defects and the deficiencies in the initial submission under consideration indicate a bad faith lack of effort to submit an acceptable plan, report, or deliverable.

40.   <u>Resubmissions</u>.  Upon receipt of a notice of disapproval under Paragraph 39.a(iii) or (iv), or if required by a notice of approval upon specified conditions under Paragraph 39.a(ii), Settling Defendants shall, within 21 days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other deliverable for approval.  After review of the resubmitted plan, report, or other deliverable, EPA may, after reasonable opportunity for review and comment by DTSC: (a) approve, in whole or in part, the resubmission; (b) approve the resubmission upon specified conditions; (c) modify the resubmission; (d) disapprove, in whole or in part, the resubmission, requiring Settling Defendants to correct the deficiencies; or (e) any combination of the foregoing.

41.   <u>Material Defects</u>.  If an initially submitted or resubmitted plan, report, or other deliverable contains a material defect, and the plan, report, or other deliverable is disapproved or modified by EPA under Paragraph 39.b(ii) or 40 due to such material defect, then the material defect shall constitute a lack of compliance for purposes of Paragraph 69.  The provisions of Section XVIII (Dispute Resolution) and Section XIX (Stipulated Penalties) shall govern the

accrual and payment of any stipulated penalties regarding the Settling Defendants' submissions under this Section.

42.     Implementation.  Upon approval, approval upon conditions, or modification by EPA under Paragraph 39 or 40, of any plan, report, or other deliverable, or any portion thereof: (a) such plan, report, or other deliverable, or portion thereof, shall be incorporated into and enforceable under this Partial Consent Decree; and (b) Settling Defendants shall take any action required by such plan, report, or other deliverable, or portion thereof, subject only to its right to invoke the Dispute Resolution procedures set forth in Section XVIII (Dispute Resolution) with respect to the modifications or conditions made by EPA.  The implementation of any non-deficient portion of a plan, report, or other deliverable submitted or resubmitted under Paragraph 39 or 40 shall not relieve Settling Defendants of any liability for stipulated penalties under Section XIX (Stipulated Penalties).

## XII.     PROJECT COORDINATORS

43.     Within 20 days of lodging this Partial Consent Decree, EPA, DTSC, and Settling Defendants will notify all other Parties, in writing, of the name, address, and telephone number of their respective designated Project Coordinator and Alternate Project Coordinator.  If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least five working days before the change occurs, unless impracticable, but in no event later than the actual day the change is made. Settling Defendants' Project Coordinator shall be subject to disapproval by EPA, after reasonable opportunity for review and comment by DTSC, and shall have the technical expertise sufficient to adequately oversee all aspects of the Work. Settling Defendants' Project Coordinator shall not be an attorney for any Settling Defendant in this matter.  He or she may assign other representatives, including

other contractors, to serve as a Dual Site representative for oversight of performance of daily operations during remedial activities.

44.     Plaintiffs may designate other representatives, including, but not limited to, EPA and State employees, and federal and State contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Partial Consent Decree.  EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager (RPM) and an On-Scene Coordinator (OSC) by the NCP, 40 C.F.R. Part 300.  EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the NCP, to halt any Work required by this Partial Consent Decree and to take any necessary response action when he or she determines that conditions at the Dual Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

45.     Settling Defendants' Project Coordinator will meet with EPA's and DTSC's Project Coordinators by teleconference on a monthly basis, or as agreed to by EPA's Project Coordinator.

## XIII.   CERTIFICATION OF COMPLETION OF THE WORK

46.     Within 90 days after Settling Defendants conclude that the Work has been fully performed, Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling Defendants, EPA, and DTSC.  If, after the pre-certification inspection, Settling Defendants still believe that the Work has been fully performed, they shall submit a written report requesting certification to EPA for approval, with a copy to DTSC, pursuant to Section XI (EPA Approval of Plans and Other Deliverables) within 30 days of the inspection.  In the report, a registered professional engineer and Settling Defendants' Project Coordinator shall state that the Work has been completed in full satisfaction of the requirements of

this Partial Consent Decree.  The written report shall include as-built drawings, signed and stamped by a professional engineer.  The report shall contain the following statement, signed by a responsible corporate official of Settling Defendants or by the Settling Defendants' Project Coordinators:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after completion of the pre-certification inspection and receipt and review of the written report, EPA, after reasonable opportunity for review and comment by DTSC, determines that the Work or any portion thereof has not been completed in accordance with this Partial Consent Decree, EPA will notify Settling Defendants in writing of the activities that must be undertaken by Settling Defendants pursuant to this Partial Consent Decree to complete the Work, provided, however, that EPA may only require Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the scope of the Work, as defined in Paragraph 21.  EPA will set forth in the notice a schedule for performance of such activities consistent with the Partial Consent Decree and the SOW or require Settling Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other Deliverables).  Settling Defendants shall perform all activities described in the notice in accordance with

the specifications and schedules established pursuant to this Paragraph, subject to their right to invoke the dispute resolution procedures set forth in Section XVIII (Dispute Resolution).

47.     If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion of the Work and after a reasonable opportunity for review and comment by DTSC, that the Work has been performed in accordance with this Partial Consent Decree, EPA will so certify in writing to Settling Defendants.  This certification shall constitute the Certification of Completion of the Work for purposes of this Partial Consent Decree, including, but not limited to, Section XX (Covenants by Plaintiffs).

## XIV.    EMERGENCY RESPONSE

48.     If any action or occurrence during the performance of the Work causes or threatens a release of Waste Material from the Dual Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Settling Defendants shall, subject to Paragraph 49, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the EPA's Project Coordinator, or, if the Project Coordinator is unavailable, EPA's Alternate Project Coordinator. If neither of these persons is available, Settling Defendants shall notify the EPA Emergency Response Unit, Region IX.  Settling Defendants shall take such actions in consultation with EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the SOW.  In the event that Settling Defendants fail to take appropriate response actions as required by this Section, and EPA or DTSC takes

such action instead, Settling Defendants shall reimburse EPA and DTSC all costs of the response action under Section XV (Payment of Work Oversight Costs).

49.    Subject to Section XX (Covenants by Plaintiffs), nothing in the preceding Paragraph or in this Partial Consent Decree shall be deemed to limit any authority of the United States or the State (a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Dual Site, or (b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Dual Site.

## XV.    PAYMENT OF WORK OVERSIGHT COSTS

50.    <u>Payments for EPA Work Oversight Costs</u>.  Settling Defendants shall pay to EPA all EPA Work Oversight Costs not inconsistent with the NCP.

a.  On a periodic basis, generally once per year, EPA will send Settling Defendants a bill for EPA Work Oversight Costs, requiring payment and enclosing a standard Regionally-prepared cost summary, which provides a statement of direct and indirect costs incurred by EPA and its contractors, and a DOJ case cost summary.  Settling Defendants shall make all payments within 30 days of Settling Defendants' receipt of each bill requiring payment, in accordance with Paragraph 52 (Payment Instructions).

b.  The total amount to be paid by Settling Defendants pursuant to Paragraph 50.a shall be deposited by EPA in the Montrose Onshore Special Account to be retained and used to conduct or finance response actions at or in connection with the Montrose and/or Del Amo Superfund Sites, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

51.    <u>Payments for DTSC Work Oversight Costs</u>.  Settling Defendants shall pay to DTSC all DTSC Work Oversight Costs not inconsistent with the NCP.  On a periodic basis, DTSC will send Settling Defendants a bill for DTSC Work Oversight Costs, requiring payment that includes an invoice, daily logs, and a summary (by activity) on a quarterly basis.  Settling Defendants shall make all payments within 30 days of Settling Defendants' receipt of each bill requiring payment.  Settling Defendants shall send the bank check(s) to Accounting, Department of Toxic Substances Control, 1001 I Street, 21st Floor, P.O. Box 806, Sacramento, CA 95812-0806.

52.    <u>Payment Instructions for EPA Work Oversight Costs and Stipulated Penalties</u>.

a.  All payments required, elsewhere in this Partial Consent Decree, to be made in accordance with this Paragraph shall be made by Fedwire EFT to:

Federal Reserve Bank of New York
ABA  =  021030004
Account = 68010727
SWIFT address = FRNYUS33
33 Liberty Street
New York NY 10045
Field Tag 4200 of the Fedwire message should read as follows:
"D 68010727 Environmental Protection Agency"

When making payments under this Paragraph 52.a, Settling Defendants shall also comply with Paragraph 52.b.

**For online payment:**

Payment shall be made at https://www.pay.gov to the U.S. EPA account in accordance with instructions to be provided to Settling Defendants by EPA following lodging of the Partial Consent Decree.

b.  All payments shall reference the CDCS Number, EPA Site/Spill ID Number 0926/0936 and DOJ Case Number 90-11-3-511.  At the time of any payment required to be made in accordance with Paragraphs 50 or 52.a, Settling

69

Defendants shall send notice of payment to the United States and to EPA, in accordance with Section XXV (Notices and Submissions), and to the EPA Cincinnati Finance Office by email at acctsreceivable.cinwd@epa.gov, or by mail at 26 Martin Luther King Drive, Cincinnati, Ohio 45268.  Such notice shall also reference the CDCS Number, Site/Spill ID Number, and DOJ Case Number.

53. EPA Work Oversight Costs, DTSC Work Oversight Costs, and stipulated penalties shall not be paid from the Trust.

## XVI.    INDEMNIFICATION AND INSURANCE

54.    <u>Settling Defendants' Indemnification of the United States and the State</u>.

a.  The United States and the State do not assume any liability by entering into this Partial Consent Decree or by virtue of any designation of Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA, 42 U.S.C. § 9604(e).  Settling Defendants shall indemnify, save and hold harmless the United States, the State, and their officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Partial Consent Decree, including, but not limited to, any claims arising from any designation of Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA.  Further, Settling Defendants agree to pay the United States and the State all costs they incur including, but not limited to, attorneys' fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States or the State based on negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors,

69

subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Partial Consent Decree.  Neither the United States nor the State shall be held out as a party to any contract entered into by or on behalf of Settling Defendants in carrying out activities pursuant to this Partial Consent Decree.  Neither Settling Defendants nor any such contractor shall be considered an agent of the United States or the State.

           b.  The United States and the State shall give Settling Defendants notice of any claim for which the United States or the State plans to seek indemnification pursuant to this Paragraph, and shall consult with Settling Defendants prior to settling such claim.

       55.    Settling Defendants covenant not to sue and agree not to assert any claims or causes of action against the United States and the State for damages or reimbursement or for set-off of any payments made or to be made to the United States or the State, arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of Work on or relating to the Dual Site, including, but not limited to, claims on account of construction delays.  In addition, Settling Defendants shall indemnify and hold harmless the United States and the State with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of Work on or relating to the Dual Site, including, but not limited to, claims on account of construction delays.

       56.    No later than 15 days before commencing any on-site Work, Settling Defendants shall secure, and shall maintain until the first anniversary of EPA's Certification of Completion of the Work pursuant to Paragraph 46 (Completion of the Work) commercial general liability insurance with limits of $2 million, for any one occurrence, and automobile liability insurance with limits of $1 million,

combined single limit, naming the United States and DTSC as additional insureds with respect to all insured liability arising out of the activities performed by or on behalf of Settling Defendants pursuant to this Partial Consent Decree.  In addition, for the duration of this Partial Consent Decree, Settling Defendants shall satisfy, or shall ensure that its contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of the Settling Defendants in furtherance of this Partial Consent Decree.  Prior to commencement of the Work under this Partial Consent Decree, Settling Defendants shall provide to EPA and DTSC certificates of such insurance and a copy of each insurance policy.  Settling Defendants shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date.  If Settling Defendants demonstrate by evidence satisfactory to EPA and DTSC that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Defendants need provide only that portion of the insurance described above that is not maintained by the contractor or subcontractor.

## XVII.    FORCE MAJEURE

57.    "Force majeure," for purposes of this Partial Consent Decree, is defined as any event arising from causes beyond the control of any Settling Defendant, of any entity controlled by Settling Defendants, or of Settling Defendants' contractors, that delays or prevents the performance of any obligation under this Partial Consent Decree despite the Settling Defendants' best efforts to fulfill the obligation.  The requirement that Settling Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (1) as it is occurring and (2) following the potential force majeure such

that the delay and any adverse effects of the delay are minimized to the greatest extent possible.  "Force majeure" does not include financial inability to complete the Work.

58.     If any event occurs or has occurred that may delay the performance of any obligation under this Partial Consent Decree for which Settling Defendants intend or may intend to assert a claim of force majeure, Settling Defendants shall notify orally EPA's Project Coordinator or, in his or her absence, EPA's Alternate Project Coordinator or, in the event both of EPA's designated representatives are unavailable, the Assistant Director of the Superfund Division, EPA Region IX, within 72 hours of when Settling Defendants first knew that the event might reasonably cause a delay.  Within 14 days thereafter, Settling Defendants shall provide in writing to EPA and DTSC an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Settling Defendants' rationale for attributing such delay to a force majeure; and a statement as to whether, in the opinion of Settling Defendants, such event may cause or contribute to an endangerment to public health or welfare, or the environment. Settling Defendants shall include with any notice all available documentation supporting their claim that the delay was attributable to a force majeure.  Settling Defendants shall be deemed to know of any circumstance of which Settling Defendants, any entity controlled by Settling Defendants, or Settling Defendants' contractors thereof knew or should have known.  Failure to comply with the above requirements regarding an event shall preclude Settling Defendants from asserting any claim of force majeure regarding that event, provided, however, that if EPA, despite the late notice, is able to assess to its satisfaction whether the event is a force majeure under Paragraph 57 and whether Settling Defendants have exercised

69

best efforts under Paragraph 57, EPA may, in its unreviewable discretion, excuse in writing a failure to submit timely notices under this Paragraph.

59.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure, the time for performance of the obligations under this Partial Consent Decree that are affected by the force majeure will be extended by EPA for such time as is necessary to complete those obligations.  In that case, EPA will notify Settling Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure.  An extension of the time for performance of the obligations affected by the force majeure shall not, of itself, extend the time for performance of any other obligation.  If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure, EPA will notify Settling Defendants in writing of its decision.

60.     If Settling Defendants elect to invoke the dispute resolution procedures set forth in Section XVIII (Dispute Resolution), they shall do so no later than 15 days after receipt of EPA's notice.  In any such proceeding, Settling Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendants complied with the requirements of Paragraphs 57 and 58.  If Settling Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Settling Defendants of the affected obligation of this Partial Consent Decree identified to EPA and the Court.

## XVIII.   DISPUTE RESOLUTION

61.     Unless otherwise expressly provided for in this Partial Consent Decree, the dispute resolution procedures of this Section shall be the exclusive

mechanism to resolve all disputes arising under or with respect to this Partial Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of any Settling Defendants that have not been disputed in accordance with this Section.

62.     Any dispute that arises under or with respect to this Partial Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations shall not exceed 30 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute. The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

63.     <u>Statements of Position</u>.

a.  In the event that the parties to the dispute cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within 21 days after the conclusion of the informal negotiation period, Settling Defendants invoke the formal dispute resolution procedures of this Section by serving on the United States and DTSC a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by Settling Defendants. The Statement of Position shall specify Settling Defendants' position as to whether formal dispute resolution should proceed under Paragraph 64 or Paragraph 65.

b.  Within 30 days after receipt of Settling Defendants' Statement of Position, EPA will serve on Settling Defendants its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal dispute resolution should

proceed under Paragraph 64 or 65.  Within 14 days after receipt of EPA's Statement of Position, Settling Defendants may submit a Reply.

c.  If there is disagreement between EPA and Settling Defendants as to whether dispute resolution should proceed under Paragraph 64 or 65, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable.  However, if Settling Defendants ultimately appeal to the Court to resolve the dispute, the Court shall determine which Paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 64 and 65.

64.    Record Review.  Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph.  For purposes of this Paragraph, the adequacy of any response action includes, without limitation, the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Partial Consent Decree, and the adequacy of the performance of response actions taken pursuant to this Partial Consent Decree.  Nothing in this Partial Consent Decree shall be construed to allow any dispute by Settling Defendants regarding the validity of the ROD's provisions.

a.  An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section.  Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b.  The Director of the Superfund Division, EPA Region IX, will issue a final administrative decision resolving the dispute based on the administrative

record described in Paragraph 64.a.  This decision shall be binding upon Settling Defendants, subject only to the right to seek judicial review pursuant to Paragraphs 64.**Error! Reference source not found.** and 64.d.

c.   Any administrative decision made by EPA pursuant to Paragraph 64.b shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by Settling Defendants with the Court and served on all Parties within ten days of receipt of EPA's decision.  The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Partial Consent Decree. The United States may file a response to Settling Defendants' motion.

d.   In proceedings on any dispute governed by this Paragraph, Settling Defendants shall have the burden of demonstrating that the decision of the Superfund Division Director is arbitrary and capricious or otherwise not in accordance with law.  Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 64.a.

65.   Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law shall be governed by this Paragraph.

a.   Following receipt of Settling Defendants' Statement of Position submitted pursuant to Paragraph 63, the Director of the Superfund Division, EPA Region IX, will issue a final decision resolving the dispute.  The Superfund Division Director's decision shall be binding on Settling Defendants unless, within ten days of receipt of the decision, Settling Defendants file with the Court and serve on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested,

and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Partial Consent Decree.  The United States may file a response to Settling Defendants' motion.

b.  If Settling Defendants contest payment of any DTSC Work Oversight Costs, Settling Defendants shall comply with the procedures set forth in this Subparagraph.  Prior to requesting formal dispute resolution pursuant to this Subparagraph, Settling Defendants shall notify DTSC's assigned Project Manager and attempt to informally resolve the dispute with DTSC's Project Manager and branch chief.

(1)  If the dispute cannot be resolved informally within twenty (20) days, then Settling Defendants shall provide a written request for formal dispute resolution which shall describe all issues in dispute and shall set forth the reasons for the dispute, both factual and legal.  The written request for formal dispute resolution and any supporting documentation shall be sent to:

> Special Assistant for Cost Recovery and Reimbursement Policy
> Department of Toxic Substances Control
> P.O. Box 806
> Sacramento, California 95812-0806

Copies of the written request for formal dispute resolution and any supporting documentation shall also be sent to those persons designated by DTSC to receive notices and submissions in Section XX of this Consent Decree.  A decision on the billing dispute will be rendered by the Special Assistant for Cost Recovery and Reimbursement Policy or other DTSC designee.

(2)  The decision by the Special Assistant for Cost Recovery and Reimbursement Policy or designee shall be binding on Settling

Defendants unless, within fifteen (15) days of the receipt of the decision, Settling Defendants file with the Court and serve on DTSC a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the Parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree.

       c.  Judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

      66.    The invocation of formal dispute resolution procedures under this Section shall not extend, postpone, or affect in any way any obligation of Settling Defendants under this Partial Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise.  Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 74.  Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Partial Consent Decree.  In the event that Settling Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XIX (Stipulated Penalties).

## XIX.    STIPULATED PENALTIES

      67.    Settling Defendants shall be liable for stipulated penalties in the amounts set forth in Paragraphs 68 and 69 to the United States and DTSC, to be split 90% and 10%, respectively, for failure to comply with the requirements of this Partial Consent Decree specified below, unless excused under Section XVII (Force Majeure).  "Compliance" by Settling Defendants shall include completion of all payments and activities required under this Partial Consent Decree, or any plan, report, or other deliverable approved under this Partial Consent Decree, in

accordance with all applicable requirements of law, this Partial Consent Decree, the SOW, and any plans, reports, or other deliverables approved under this Partial Consent Decree and within the specified time schedules established by and approved under this Partial Consent Decree.

68.   <u>Stipulated Penalty Amounts – Work (Including Payments and Excluding Plans, Reports, and Other Deliverables)</u>.

a.  The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Paragraph 68.b:

//

//

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1000 | 1st through 14th day |
| $1500 | 15th through 30th day |
| $3000 | 31st day and beyond |

b.  <u>Compliance Milestones</u>.  Failure of Settling Defendants to perform any of the following within the specified time schedule provided for in this Partial Consent Decree, the Work, the SOW, or the Work Plan shall result in stipulated penalties in the amounts set forth in Paragraph 68.a:

(1)   Initiation of construction of Work;

(2)   Completion of construction of Work;

(3)   Provision (by Settling Defendants) of access pursuant to Paragraph 27; and

(4)   Establishment and maintenance of Trust in accordance with Section VI (Establishment and Use of the Dual Site Trust Fund).

69.   <u>Stipulated Penalty Amounts – Plans, Reports, and other Deliverables</u>.

a.  The following stipulated penalties shall accrue per violation per day for failure to submit timely or adequate reports or other plans or deliverables pursuant to Paragraphs 17 and 18:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $100 | 1st through 14th day |
| $500 | 15th through 30th day |
| $1000 | 31st day and beyond |

b.  Failure of Settling Defendants to submit the following reports in a timely or adequate manner as set forth in Section XI (EPA Approval of Plans and Other Submissions) shall result in stipulated penalties in the amounts set forth in Paragraph 69.a:

 (1) Draft and Final Work Plan; and

 (2) Construction Completion Report.

70.    In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 82 (Work Takeover), Settling Defendants shall be liable for a stipulated penalty in the amount of $1,000,000.  Stipulated penalties under this Paragraph are in addition to the remedies available under Paragraph 82 (Work Takeover).

71.    All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity.  However, stipulated penalties shall not accrue:  (a) with respect to a deficient submission under Section XI (EPA Approval of Plans and Other Submissions), during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Defendants of any deficiency; (b) with respect to a decision by the Director of the Superfund

Division, EPA Region IX, under Paragraphs 64.b or 65.a of Section XVIII (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Defendants' reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (c) with respect to judicial review by this Court of any dispute under Section XVIII (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute.  Nothing in this Partial Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Partial Consent Decree.

72.    Following EPA's determination that Settling Defendants have failed to comply with a requirement of this Partial Consent Decree, or DTSC's determination that Settling Defendants have failed to comply with Paragraph 51 (Payment of DTSC Work Oversight Costs), EPA or DTSC, as appropriate, may give Settling Defendants written notification of the same and describe the noncompliance.  EPA or DTSC may send Settling Defendants a written demand for the payment of the penalties.  However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified Settling Defendants of a violation.

73.    Settling Defendants shall pay any stipulated penalties or stipulated damages accruing under this Section directly to Plaintiffs, and shall not be entitled to seek payment or reimbursement of such penalties or damages from the Trust under Paragraph 9 or Appendix E.  All penalties accruing under this Section shall be due and payable to the United States and DTSC within 30 days of Settling Defendants' receipt from EPA of a demand for payment of the penalties, unless Settling Defendants invoke the Dispute Resolution procedures under Section XVIII (Dispute Resolution) within the 30-day period.  All payments to the United States

under this Section shall indicate that the payment is for stipulated penalties, and shall be made in accordance with Paragraph 52 (Payment Instructions) for deposit to the EPA Hazardous Substance Superfund. All payments to DTSC under this Section shall be made in accordance with Paragraph 51.

74.     Penalties shall continue to accrue as provided in Paragraph 71 during any dispute resolution period, but need not be paid until the following:

a.   If the dispute is resolved by agreement of the Parties or by a decision of EPA or DTSC that is not appealed to this Court, accrued penalties determined to be owed shall be paid to EPA and DTSC within 15 days of the agreement or the receipt of EPA's decision or order;

b.   If the dispute is appealed to this Court and the United States and/or DTSC prevails in whole or in part, Settling Defendants shall pay all accrued penalties determined by the Court to be owed to EPA and DTSC within 60 days of receipt of the Court's decision or order, except as provided in Paragraph 74.c;

c.   If the District Court's decision is appealed by any Party, Settling Defendants shall pay all accrued penalties determined by the District Court to be owed to the United States and DTSC into an interest-bearing escrow account within 60 days of receipt of the Court's decision or order.  Penalties shall be paid into this account as they continue to accrue, at least every 60 days.  Within 15 days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA and DTSC or to Settling Defendants to the extent that it prevails.

75.     If Settling Defendants fail to pay stipulated penalties when due, Settling Defendants shall pay Interest on the unpaid stipulated penalties as follows: (a) if Settling Defendants timely invoked dispute resolution such that the obligation to pay stipulated penalties has been stayed pending the outcome of dispute resolution, Interest shall accrue from the date stipulated penalties are due pursuant

to Paragraph 74 until the date of payment; and (b) if Settling Defendants fail to timely invoke dispute resolution, Interest shall accrue from the date of demand under Paragraph 73 until the date of payment.  If Settling Defendants fail to pay stipulated penalties and Interest when due, the United States or DTSC may institute proceedings to collect the penalties and Interest.

76.     The payment of penalties and Interest, if any, shall not alter in any way Settling Defendants' obligation to complete the performance of the Work required under this Partial Consent Decree.

77.     Nothing in this Partial Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States or DTSC to seek any other remedies or sanctions available by virtue of Settling Defendants' violation of this Partial Consent Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(*l*) of CERCLA, 42 U.S.C. § 9622(*l*), provided, however, that the United States shall not seek civil penalties pursuant to Section 122(*l*) of CERCLA for any violation for which a stipulated penalty is provided in this Partial Consent Decree, except in the case of a willful violation of this Partial Consent Decree.

78.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Partial Consent Decree.

## XX.     COVENANTS BY PLAINTIFFS

79.     <u>Covenant for Settling Defendants by United States</u>.  In consideration of the actions that will be performed by Settling Defendants under this Partial Consent Decree, and except as specifically provided in Paragraph 81 (General Reservations of Rights), the United States covenants not to sue or to take administrative action against Settling Defendants pursuant to Sections 106 and 107(a) of CERCLA for the Work, EPA Work Oversight Costs, and the Trust

Payment.  Except with respect to future liability, these covenants shall take effect upon the Effective Date.  These covenants are conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Partial Consent Decree.  With respect to future liability, these covenants shall take effect upon Certification of Completion of the Work by EPA pursuant to Paragraph 46 (Completion of the Work).  These covenants extend only to Settling Defendants and their successors and assigns and do not extend to any other person.

80.    <u>Covenants for Settling Defendants by DTSC</u>.  Except as specifically provided in Paragraph 81 (General Reservations of Rights) of this Section, the State, on behalf of DTSC, covenants not to sue or to take administrative action against Settling Defendants pursuant to Section 107(a) of CERCLA, 42 U.S.C. §9607(a), and Cal. Health & Safety Code Sections 25323.5, 25355.5, 25358.3, and 25360 for the Work, DTSC Work Oversight Costs, and the Trust Payment.  Except with respect to future liability, these covenants shall take effect upon the Effective Date.  These covenants are conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Partial Consent Decree.  With respect to future liability, these covenants shall take effect upon Certification of Completion of the Work by EPA pursuant to Paragraph 46 (Completion of the Work).  These covenants extend only to Settling Defendants and their successors and assigns and do not extend to any other person.

81.    <u>General Reservations of Rights</u>.  The United States and DTSC reserve, and this Partial Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all matters not expressly included within Plaintiffs' covenants.  Notwithstanding any other provision of this Partial Consent Decree, the United States and DTSC reserve all rights against Settling Defendants with respect to:

69

a.  claims based on a failure by Settling Defendants to meet a requirement of this Partial Consent Decree;

b.  liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Dual Site;

c.  liability based on the ownership or operation of any portion of the Dual Site by Settling Defendants when such ownership or operation commences after signature of this Partial Consent Decree;

d.  liability based on Settling Defendants' transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Dual Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this Partial Consent Decree;

e.  liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

f.  criminal liability;

g.  liability for violations of federal or state law which occur during or after implementation of the Work;

h.  liability for the Remaining Work, expressly including operation and maintenance of the Chlorobenzene Plume treatment system, and for any other operable unit of the Montrose or Del Amo Superfund Sites; and

i.  liability for costs incurred or to be incurred by the Agency for Toxic Substances and Disease Registry regarding the Dual Site.

82.  <u>Work Takeover</u>.

a.  In the event EPA determines that Settling Defendants (1) have ceased implementation of any portion of the Work, (2) are seriously or repeatedly deficient or late in their performance of the Work, or (3) are implementing the Work in a manner that may cause an endangerment to human health or the

environment, EPA may issue a written notice ("Work Takeover Notice") to Settling Defendants.  Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was issued and will provide Settling Defendants a period of ten days within which to remedy the circumstances giving rise to EPA's issuance of such notice.

b.  If, after expiration of the ten-day notice period specified in Paragraph 82.a, Settling Defendants have not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the Work Takeover Notice, EPA may at any time thereafter assume the performance of all or any portion(s) of the Work as EPA deems necessary ("Work Takeover").  EPA will notify Settling Defendants in writing (which writing may be electronic) if EPA determines that implementation of a Work Takeover is warranted under this Paragraph.  The commencement of any Work Takeover pursuant to this Paragraph shall trigger EPA's right to receive the benefit of the Trust and any performance guarantee established pursuant to Paragraph 11.  Funding of such Work Takeover costs is addressed in Appendix E.

c.  Settling Defendants may invoke the procedures set forth in Paragraph 64 (Record Review), to dispute EPA's implementation of a Work Takeover under Paragraph 82.b.  However, notwithstanding Settling Defendants' invocation of such dispute resolution procedures, and during the pendency of any such dispute, EPA may in its sole discretion commence and continue a Work Takeover under Paragraph 82.b until the earlier of (1) the date that Settling Defendants' remedy, to EPA's satisfaction, the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, or (2) the date that a final decision is rendered in accordance with Paragraph 64 (Record Review) requiring EPA to terminate such Work Takeover.

83.    Notwithstanding any other provision of this Partial Consent Decree, the United States and the State retain all authority and reserve all rights to take any and all response actions authorized by law.

## XXI.    COVENANTS BY SETTLING DEFENDANTS

84.    <u>Covenant Not to Sue by Settling Defendants</u>.  Subject to the reservations in Paragraph 86, Settling Defendants hereby covenant not to sue and agree not to assert any claims or causes of action against the United States or the State with respect to the Work, EPA Work Oversight Costs, DTSC Work Oversight Costs, and this Partial Consent Decree, including, but not limited to:

a.   any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

b.   any claims against the United States, including any department, agency or instrumentality of the United States, or the State, including any department, agency, or instrumentality of the State, under CERCLA Sections 107 or 113, RCRA Section 7002(a), 42 U.S.C. § 6972(a), or state law regarding the Work, EPA Work Oversight Costs, DTSC Work Oversight Costs, and this Partial Consent Decree;

c.   any claims arising out of response actions in connection with the Work, EPA Work Oversight Costs, or DTSC Work Oversight Costs, including any claim under the United States Constitution, the State Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law; or

d.   any direct or indirect claim for disbursement from the Trust.

85.    Except as provided in Paragraph 92 (Res Judicata and Other Defenses), the covenants in this Section shall not apply if the United States or the

State bring a cause of action or issues an order pursuant to any of the reservations in Section XX (Covenants by Plaintiffs), other than in Paragraphs 81.a (claims for failure to meet a requirement of the Decree), 81.f (criminal liability), and 81.g (violations of federal/state law during or after implementation of the Work), but only to the extent that Settling Defendants' claims arise from the same response action, response costs, or damages that the United States or the State is seeking pursuant to the applicable reservation.

86.    Settling Defendants reserve, and this Partial Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, and brought pursuant to any statute other than CERCLA or RCRA and for which the waiver of sovereign immunity is found in a statute other than CERCLA or RCRA, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States, as that term is defined in 28 U.S.C. § 2671, while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  However, the foregoing shall not include any claim based on EPA's selection of response actions, or the oversight or approval of Settling Defendants' plans, reports, other deliverables or activities.

87.    Nothing in this Partial Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

## XXII.    EFFECT OF SETTLEMENT; CONTRIBUTION

88.    Nothing in this Partial Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Partial Consent Decree. The preceding sentence shall not be construed to waive or nullify

any rights that any person not a signatory to this decree may have under applicable law.  Plaintiffs and Settling Defendants expressly reserve any and all rights (including, but not limited to, any right pursuant to Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action which each of them may have with respect to any matter, transaction, or occurrence relating in any way to the Dual Site against any person other than Plaintiffs and/or Settling Defendants.  Nothing in this Partial Consent Decree diminishes the right of the United States or the State, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

89.    The Parties agree, and by entering this Partial Consent Decree this Court finds, that this Partial Consent Decree constitutes a judicially-approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that each Settling Defendant is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for Work, EPA Work Oversight Costs, or DTSC Work Oversight Costs addressed in this Partial Consent Decree.

90.    Each Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Partial Consent Decree, notify the United States and DTSC in writing no later than 60 days prior to the initiation of such suit or claim.

91.    Each Settling Defendant shall, with respect to any suit or claim brought against it for matters related to this Partial Consent Decree, notify in writing the United States and DTSC within ten days of service of the complaint on such Settling Defendant.  In addition, each Settling Defendant shall notify the United States and DTSC within ten days of service or receipt of any Motion for

Summary Judgment and within ten days of receipt of any order from a court setting a case for trial.

92.   <u>Res Judicata and Other Defenses</u>.  In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, recovery of response costs, or other appropriate relief relating to the Work, EPA Work Oversight Costs, or DTSC Work Oversight Costs addressed in this Partial Consent Decree, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XX (Covenants by Plaintiffs).

## XXIII.    ACCESS TO INFORMATION

93.   Settling Defendants shall provide to EPA and DTSC, upon request, copies of all records, reports, documents, and other information (including records, reports, documents, and other information in electronic form) (hereinafter referred to as "Records") within their possession or control or that of their contractors or agents relating to activities at the Dual Site or to the implementation of the Work or Remaining Work, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information regarding the Work or Remaining Work.  Settling Defendants shall also make available to EPA and DTSC, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

94.   Business Confidential and Privileged Documents.

a.   Settling Defendants may assert business confidentiality claims covering part or all of the Records submitted to Plaintiffs under this Partial Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b).  Records determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B; records determined to be confidential by DTSC will be afforded the protection specified in the California Public Records Act, California Government Code §§ 6250, *et seq.*  If no claim of confidentiality accompanies Records when they are submitted to EPA and DTSC, or if EPA has notified Settling Defendants that the Records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, or if DTSC has notified Settling Defendants that the Records are not confidential under the standards of the California Public Records Act, California Government Code §§ 6250, *et seq.*, the public may be given access to such Records without further notice to Settling Defendants.

b.   Settling Defendants may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Settling Defendants assert such a privilege in lieu of providing Records, they shall provide Plaintiffs with the following: (1) the title of the Record; (2) the date of the Record; (3) the name, title, affiliation (e.g., company or firm), and address of the author of the Record; (4) the name and title of each addressee and recipient; (5) a description of the contents of the Record; and (6) the privilege asserted by Settling Defendants.  If a claim of privilege applies only to a portion of a Record, the Record shall be provided to the United States and DTSC in redacted form to mask the privileged portion only.  Settling Defendants shall retain all Records that they claim to be privileged until the United States or DTSC has had a reasonable

opportunity to dispute the privilege claim and any such dispute has been resolved in Settling Defendants' favor.

c.  No Records created or generated pursuant to the requirements of this Partial Consent Decree shall be withheld from the United States or DTSC on the grounds that they are privileged or confidential.

95.  No claim of confidentiality or privilege shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Dual Site.

## XXIV.    RETENTION OF RECORDS

96.    Until ten years after EPA issues notification pursuant to Paragraph 46 of Section XIII (Certification of Completion of the Work), each Settling Defendant shall preserve and retain all non-identical copies of Records (including Records in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to its liability under CERCLA with respect to the Dual Site, provided, however, that Settling Defendants who are potentially liable as owners or operators of the Dual Site must retain, in addition, all Records that relate to the liability of any other person under CERCLA with respect to the Dual Site.  Each Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any Records (including Records in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to the performance of the Work, provided, however, that each Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned Records required to be retained.

Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

97.    At the conclusion of this record retention period, Settling Defendants shall notify the United States and DTSC at least 90 days prior to the destruction of any such Records, and, upon request by the United States or DTSC, Settling Defendants shall deliver any such Records to EPA or DTSC.  Settling Defendants may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Settling Defendants assert such a privilege, they shall provide Plaintiffs with the following: (a) the title of the Record; (b) the date of the Record; (c) the name, title, affiliation (e.g., company or firm), and address of the author of the Record; (d) the name and title of each addressee and recipient; (e) a description of the subject of the Record; and (f) the privilege asserted by Settling Defendants.  If a claim of privilege applies only to a portion of a Record, the Record shall be provided to the United States and DTSC in redacted form to mask the privileged portion only.  Settling Defendants shall retain all Records that they claim to be privileged until the United States or DTSC has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in Settling Defendants' favor.

98.    Each Settling Defendant certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any Records (other than identical copies) relating to its potential liability regarding the Dual Site since the earlier of notification of potential liability by the United States or DTSC or the filing of suit against it regarding the Dual Site and that it has fully complied with any and all EPA requests for information pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927.

## XXV.   NOTICES AND SUBMISSIONS

99.     Whenever, under the terms of this Partial Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  All notices and submissions shall be considered effective upon receipt, unless otherwise provided.  Written notice as specified in this Section shall constitute complete satisfaction of any written notice requirement of the Partial Consent Decree with respect to the United States, EPA, DTSC, and Settling Defendants, respectively.  Notices required to be sent to EPA, and not to the United States, under the terms of this Partial Consent Decree should not be sent to the U.S. Department of Justice.

As to the United States:          Chief, Environmental Enforcement Section

Environment and Natural Resources Division

U.S. Department of Justice

P.O. Box 7611

Washington, D.C.  20044-7611

Re: DJ # 90-11-2-933/3

and:                               Assistant Director, Superfund Division

U.S. Environmental Protection Agency

Region IX

75 Hawthorne St.

San Francisco, CA 94105

Re: Montrose/Del Amo Dual Site

69

As to EPA:                              Richard Hiett

                                        EPA Project Coordinator

                                        U.S. Environmental Protection Agency

                                        Region IX

                                        75 Hawthorne St. (SFD-8-2)

                                        San Francisco, CA 94105

As to the EPA Regional                  Dave Woods

Financial Management Officer:           U.S. Environmental Protection Agency

                                        Region IX

                                        75 Hawthorne St.

                                        San Francisco, CA 94105

As to DTSC:                             Safouh Sayed

                                        State Project Coordinator

                                        Department of Toxic Substances Control,

                                        5796 Corporate Avenue

                                        Cypress, CA 90630

As to Settling Defendants:              Joseph C. Kelly

                                        Montrose Chemical Corporation of California

                                        600 Eriksen Avenue, Suite 380

                                        Bainbridge Island, WA 98110

                                        Kelly E. Richardson

                                        Latham & Watkins LLP

                                        600 W. Broadway, St. 1800

                                        San Diego, CA 92101

As to Settling Defendants
(continued):

Charles N. Elmendorf

Senior Director, Environmental Remediation

Stauffer Management Company LLC

1800 Concord Pike

PO Box 15437

FOP 2-311

Wilmington, DE 19850-5437

A. Richard Winchester

McCarter & English, LLP

Renaissance Centre

405 N. King Street, 8th Floor

Wilmington, DE 19801

Eugenie C. Gavenchak

Sr. Vice President & Deputy General Counsel

News Publishing Australia Limited

1211 Avenue of the Americas

New York, N.Y. 10036

Peter Simshauser

Skadden, Arps, Slate, Meagher & Flom LLP

One Beacon Street

Boston, MA 02108

## XXVI.    RETENTION OF JURISDICTION

100.   This Court retains jurisdiction over both the subject matter of this
Partial Consent Decree and Settling Defendants for the duration of the performance
of the terms and provisions of this Partial Consent Decree for the purpose of
enabling any of the Parties to apply to the Court at any time for such further order,

direction, and relief as may be necessary or appropriate for the construction or modification of this Partial Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XVIII (Dispute Resolution).

## XXVII.   APPENDICES

101.   The following appendices are attached to and incorporated into this Partial Consent Decree:

"Appendix A" is Volume One of the ROD (excluding Volume Two, Response Summary)

"Appendix B" is the SOW

"Appendix C" is the description and/or map of the Dual Site

"Appendix D" is the complete list of Settling Defendants

"Appendix E" is the Dual Site Trust Fund Agreement

## XXVIII.   COMMUNITY RELATIONS

102.   If requested by EPA or DTSC, Settling Defendants shall participate in community relations activities pursuant to the Community Relations Plan to be developed by EPA.  EPA, in consultation with DTSC, will determine the appropriate role for Settling Defendants under the Community Relations Plan. Settling Defendants shall also cooperate with EPA and DTSC in providing information regarding the Work to the public.  As requested by EPA or DTSC, Settling Defendants shall participate in the preparation of such information for dissemination to the public and in public meetings which may be held or sponsored by EPA or DTSC to explain activities at or relating to the Dual Site or the Work.

# XXIX.   MODIFICATION

103.   Except as provided in Paragraph 21 (Modification of SOW or Work Plan), material modifications to this Partial Consent Decree, including the SOW, shall be in writing, signed by the United States, DTSC, and Settling Defendants, and shall be effective upon approval by the Court.  Except as provided in Paragraph 21 (Modification of SOW or Work Plan), non-material modifications to this Partial Consent Decree, including the SOW, shall be in writing and shall be effective when signed by duly authorized representatives of the United States, DTSC, and Settling Defendants.  A modification to the SOW shall be considered material if it fundamentally alters the basic features of the selected remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(ii).

104.  Schedules specified in this Partial Consent Decree for completion of the Work may be modified by written agreement of EPA and Montrose.

105.   Nothing in this Partial Consent Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Partial Consent Decree.

# XXX.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

106.   This Partial Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7.  The United States and DTSC reserve the right to withdraw or withhold consent if the comments regarding the Partial Consent Decree disclose facts or considerations which indicate that the Partial Consent Decree is inappropriate, improper, or inadequate.  Settling Defendants consent to the entry of this Partial Consent Decree without further notice.

107.   If for any reason the Court should decline to approve this Partial Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXXI.   SIGNATORIES/SERVICE

108.   Each undersigned representative of a Settling Defendant to this Partial Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice and the California Department of Toxic Substances Control certifies that he or she is fully authorized to enter into the terms and conditions of this Partial Consent Decree and to execute and legally bind such Party to this document.

109.   Each Settling Defendant agrees not to oppose entry of this Partial Consent Decree by this Court or to challenge any provision of this Partial Consent Decree unless the United States has notified Settling Defendants in writing that it no longer supports entry of the Partial Consent Decree.

110.   Each Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Partial Consent Decree.  Settling Defendants agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.  Settling Defendants need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Partial Consent Decree.

## XXXII.   FINAL JUDGMENT

111.   This Partial Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties regarding the settlement embodied in the Partial Consent Decree.  The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Partial Consent Decree.

112.   Upon entry of this Partial Consent Decree by the Court, this Partial Consent Decree shall constitute a final judgment between and among the United States, the State, and Settling Defendants.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS 22nd DAY OF August, 2012.

_____

United States District Judge

69

**FOR THE UNITED STATES OF**

**AMERICA**:

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C.  20530-0001

August 15, 2012
Date

/s/Thomas P. Carroll
THOMAS P. CARROLL
Senior Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611

69

June 27, 2012                          /s/Jane Diamond
Date                                   JANE DIAMOND
                                       Director, Superfund Division
                                       U.S. Environmental Protection Agency,
                                       Region IX
                                       75 Hawthorne Street
                                       San Francisco, CA 94105


June 18, 2012                          /s/Taly Jolish
Date                                   TALY JOLISH
                                       Assistant Regional Counsel
                                       U.S. Environmental Protection Agency,
                                       Region IX
                                       75 Hawthorne Street
                                       San Francisco, CA 94105

**FOR THE STATE OF CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL**


<u>/s/John Scandura</u>
Branch Chief
<u>June 22, 2012</u>    Brownfields and Environmental Restoration
Date                  Program
                      Department of Toxic Substances Control
                      5796 Corporate Avenue
                      Cypress, CA 90630

69

**FOR NEWS PUBLISHING AUSTRALIA
LIMITED**

June 25, 2012                    /s/Eugene C. Gavenchak
Date                             Name:  Eugene C. Gavenchak
                                 Title:
                                 Sr. Vice President & Deputy General Counsel
                                 Address:
                                 1211 Avenue of the America
                                 New York, N.Y. 10036

**FOR MONTROSE CHEMICAL CORPORATION OF CALIFORNIA**

June 22, 2012                    /s/Joseph C. Kelly
Date                             Name (print):  Joseph C. Kelly
                                 Title:  President
                                 Address:  600 Eriksen Avenue, Suite 380
                                 Bainbridge Island, WA 98110

69

**FOR STAUFFER MANAGEMENT
COMPANY LLC**

June 24, 2012                        /s/Charles Elmendorf
Date                                 Name (print):  Charles Elmendorf
                                     Title:  Senior Director, Environmental
                                     Remediation
                                     Address:  1800 Concord Pike
                                     PO Box 15437
                                     FOB 2-311
                                     Wilmington, DE  19850-5437

**FOR BAYER CROPSCIENCE INC.**


<u>June 24, 2012</u>                    <u>/s/Charles Elmendorf</u>
Date                                          Name (print): Charles Elmendorf
                                                   Title:  Senior Director, Environmental
                                                   Remediation
                                                   Address:  1800 Concord Pike
                                                   PO Box 15437
                                                   FOB 2-311
                                                   Wilmington, DE  19850-5437