LATHAM & WATKINS LLP
  Kelly E. Richardson (State Bar No. 210511)
  kelly.richardson@lw.com
  John T. Ryan (State Bar No. 211899)
  jake.ryan@lw.com
  Margaret A. Tough, (State Bar No. 218056)
  margaret.tough@lw.com
  Shawn T. Cobb (State Bar No. 259654)
  shawn.cobb@lw.com
  Benjamin D. Gibson (State Bar No. 287521)
  benjamin.gibson@lw.com
12670 High Bluff Drive
San Diego, California 92130
Telephone: (858) 523-5400
Fax: (858) 523-5450

Attorneys for Defendant
Montrose Chemical Corporation of California

GABRIEL M. ALLEN (GA Bar No. 740737)
E-mail: Gabriel.Allen@usdoj.gov
DEVON A. AHEARN (State Bar No. 307275)
E-mail: Devon.Ahearn@usdoj.gov
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7611
Washington, DC 20044
Telephone: (202) 514-4213
Facsimile: (202) 514-0097

Attorneys for Plaintiff United States of America

[Additional Counsel Listed on Following Page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MONTROSE CHEMICAL CORPORATION OF CALIFORNIA, et al., <br><br> Defendants. | CASE NO.   2:90-cv-03122 DOC (GJS) <br><br> **JOINT STATUS REPORT AS TO ROLE OF SPECIAL MASTER** <br><br> Judge:   Hon. David O. Carter <br><br> Date:   June 10, 2020 <br> Time:   8:30 a.m. |

1 | Xavier Becerra
      Attorney General of California
2 | Sarah E. Morrison
      Supervising Deputy Attorney General
3 | Catherine Wieman (State Bar No. 222384)
    catherine.wieman@doj.ca.gov
4 | Megan Hey (State Bar No. 232345)
    megan.hey@doj.ca.gov
5 |      Deputy Attorneys General
    300 South Spring Street, Suite 1702
6 | Los Angeles, CA  90013
    Telephone:  (213) 269-6344
7 | Fax: (213) 297-2802
    Attorneys for Plaintiff
8 | State of California, on behalf of California Department of Toxic Substances Control

10 | SKADDEN ARPS SLATE MEAGHER & FLOM LLP
       Winston P. Hsiao (State Bar No. 273638)
11 |    whsiao@skadden.com
     300 South Grand Avenue
12 | Suite 3400
     Los Angeles, CA  90071
13 | Tel:  (213) 687-5219
     Fax: (213) 621-5219
14 | Attorneys for Defendant
     21st Century Fox America, Inc.

16 | FOUNDATION LAW GROUP
       Gregg D. Zucker (State Bar No. 166692)
17 |    gregg@foundationlaw.com
     2049 Century Park East
18 | Suite 2460
     Los Angeles, CA 90067
19 | Tel: (310) 979-7561

20 | and

     McCARTER & ENGLISH LLP
21 |    J. Wylie Donald (*pro hac vice*)
         jdonald@mccarter.com
22 | 1301 K Street, NW, Suite 1000 West
     Washington, DC  20005
23 | Attorneys for Defendant
     Stauffer Management Company LLC for itself and as
24 | Attorney-in-Fact for Bayer CropScience Inc.

## I.  BACKGROUND

On February 24, 2020, the Court appointed the Hon. James L. Smith (Ret.) to serve as a Special Master in this matter.  (Docket Entry 2937.)  On March 13, 2020, the parties submitted a Joint Status Report in which they identified a disagreement as to the appropriate scope of the Special Master's role in this action.  (Docket Entry 2962, at 3-6.)  On May 21, 2020, the Court ordered the parties to meet and confer again to resolve any disagreement as to the Special Master's role and to inform the Court whether or not an agreement is reached on or before June 3, 2020.  (Docket Entry 2979.)  On May 29, 2020, counsel for the parties met and conferred on the scope of Special Master Smith's role and did not reach agreement.

## II.  THE PARTIES' RESPECTIVE POSITIONS ON THE ROLE OF SPECIAL MASTER SMITH

The parties agree that the Special Master should not hold trial pursuant to Fed. R. Civ. P. 53(a)(1)(B).  The parties' respective positions on the role of Special Master Smith are otherwise set out below.

### A.  Plaintiffs' Position

As an initial matter, Plaintiffs report that the parties have reached an agreement in principle regarding Defendants' performance of remedial action at the groundwater operable unit and payment of related response costs, and a proposed consent decree memorializing those terms is circulating for signature among Defendants and for review and approval by management at the government agencies.  The proposed consent decree also resolves the two disputes concerning pCBSA that are currently in dispute resolution under the Partial Construction Consent Decree, entered in this case on August 22, 2012 (ECF No. 2735).

As to the issue of the Special Master, given the posture of this case and recent settlement developments, Plaintiffs respectfully submit that a Special Master is not necessary in this case.  There are only two issues before the Court, one of which (the status of Chris-Craft Industries, Inc. as an operator of the Montrose

DDT Plant under CERCLA) has already been tried, briefed, and submitted; the other is a straightforward CERCLA claim for costs incurred or to be incurred at the Historic Stormwater Pathway.  This case is now at a markedly different point in the litigation than it was when Judge Real appointed a Special Master.  Should the Court disagree with Plaintiffs and believe a Special Master necessary, Plaintiffs, in the alternative, submit that Special Master Smith act as settlement master to resolve the outstanding issue in this case over the Defendants' liability for costs incurred or to be incurred at the Historic Stormwater Pathway in responding to the release or threatened release of hazardous substances from the Montrose DDT Plant.  Plaintiffs note, however, that recent settlement developments demonstrate that the Parties can achieve settlement on their own without incurring the substantial expense of a Special Master.  Finally, if the Court decides a Special Master is necessary, Plaintiffs request issuance of an order pursuant to Rule 53.

**1.** The issues before the Court are narrow and do not require Special Master involvement.

Although a Special Master may have been appropriate at earlier stages in this decades-long case, the current status does not require a Special Master because the issues are narrow and discovery is nearly concluded.  This thirty year-old case previously involved the liability of not just several companies, but approximately 150 local governments, *see* Local Governments Consent Decree, Aug. 19, 1999 (ECF No. 1671); complex issues involving natural resources damages due to ocean dumping and the release of DDT on land that made its way to the ocean, *see* Off-Shore Consent Decree, Mar. 15, 2001 (ECF No. 2645); and a discovery period lasting nearly ten years. A Special Master has served in this case since 1993,[1] and

---

[1] The first reference to a Special Master on the docket is on December 3, 1993. S*ee* Minute Order re Oral Argument, Dec. 3, 1993 (ECF No. 846).

the parties have paid Special Masters and their staff more than $986,797.[2]  Judge Real appointed Special Master John Francis Carroll discovery referee and settlement referee on February 14, 2000, and as Special Master on March 6, 2000.  ECF Nos. 1762, 1766.  Those appointments were made in the thick of litigation, at the end of the ten-year discovery period, and during the run-up to trial over Defendants' liability for response costs incurred and to be incurred at the Montrose Plant Property, Stauffer Property, the neighborhood area, the current stormwater pathway, parts of the historic stormwater pathway, and the Palos Verdes Shelf, and for natural resources damages to various species of fish and birds harmed off the coast of California.  That appointment was also made before amendment of Rule 53 in 2003, which "revised extensively" the existing rule and made clear that appointment of a Special Master "must be the exception and not the rule."  Fed. R. Civ. P. 53 advisory committee's note – 2003 Amendment.

Now, however, each of those issues have settled or have been adjudicated, and only two issues remain, one of which has been briefed and submitted.  *See* Joint Status Report, Feb. 20, 2020, at 3:14-17 (ECF No. 2932); Joint Status Report, Mar. 13, 2020, Section IV (ECF No. 2962).  As to the remaining issue—the four remaining Defendants' liability for response costs incurred or to be incurred at a portion of the Historic Stormwater Pathway—all but one element of CERCLA liability has been established.  Joint Status Report, Aug. 30, 2019, at 2:14-16 (ECF No. 2841); Joint Status Report, Mar. 13, 2020, at 7:1-9 (ECF No. 2962).

This case has also progressed to a stage in which Special Master involvement would be naturally limited because discovery, and the disputes that can arise during it, has nearly concluded.  Fact discovery closed on February 28, 2020 expert reports and rebuttal reports have been exchanged, and the Parties have agreed that production of all documents relied on by experts has concluded and no

---

[2] The following orders disbursed money to the Special Master and his staff: ECF Nos. 855, 882, 929, 979, 1046, 1065, 1088, 1095, 1097, 1117, 1127, 1240, 1473, 1478, 1702, 2633, 2656, 2671, 2694, 2738, 2769, 2786, 2803, and 2814.

party will further supplement its expert reports.  *See* Joint Stipulation to Extend Deadlines, May 11, 2020, at 3:15-19; 4:11-13 (ECF No. 2977).  Based on the parties' experience taking a dozen fact depositions, Plaintiffs do not anticipate any issues requiring Special Master involvement to arise during expert depositions.

Given these circumstances, and the considerable expense to the parties (and taxpayers) of a Special Master, the Plaintiffs respectfully submit that a Special Master is not necessary at this juncture.  Delegation to a Special Master should be sparing in cases such as this one, which involves important public interests.  Fed. R. Civ. P. 53 advisory committee's note – 2003 Amendment ("Direct judicial performance of judicial functions may be particularly important in cases that involve important public issues or many parties. At the extreme, a broad delegation of pretrial responsibility as well as a delegation of trial responsibilities can run afoul of Article III.").

Should the Court disagree with Plaintiffs' position and conclude that a Special Master is necessary, Plaintiffs, in the alternative, submit that Special Master Smith act as settlement master over Defendants' liability for costs incurred or to be incurred at the Historic Stormwater Pathway in response to the release of hazardous substances from the Montrose DDT Plant.   Plaintiffs note, however, that the recent proposed settlement reached by the parties regarding the operation and maintenance of the groundwater remedy demonstrates that the parties are capable of negotiating resolution on their own.

       **2.**      Defendants' proposal to provide the Special Master broad authority, including all powers in the Federal Rules of Civil Procedure, is inappropriate.

As reported in the March 13, 2020 Joint Status Report, Defendants propose providing the Special Master "all powers set forth in the Federal Rules of Civil Procedure." ECF No. 1962; *see* Order Appointing Special Master, Mar. 18, 2000 (ECF No. 1766) (providing Special Master Carroll all powers set forth in the

US-DOCS\116355353
4
CASE NUMBER 2:90-cv-03122 DOC (GJS)
JOINT STATUS REPORT

1  Federal Rules of Civil Procedure). Such an extraordinary grant of authority is not
2  necessary or appropriate here, and Plaintiffs do not consent to such an order. The
3  straightforward and narrow issues described above do not present any exceptional
4  condition or complex accounting to be performed that justifies a Special Master
5  pursuant to Rule 53(a)(1)(B). *See La Buy v. Howes Leather Co.*, 352 U.S. 249,
6  259 (1957); *Burlington Northern R. Co. v. Dep't of Revenue of State of Wash.*, 934
7  F.2d 1064, 1072 (9th Cir. 1991) (citing the Supreme Court's decision in *La Buy* that
8  "calendar congestion, case complexity, and anticipation of a lengthy trial" did not
9  constitute an exceptional condition justifying wholesale reference of a case to the
10 Special Master).
11    Defendants suggest that a Special Master is necessary due to the COVID-19
12 pandemic, but Plaintiffs are not aware that a district judge or magistrate judge is
13 unavailable to effectively and timely address pretrial and post-trial matters. *See*
14 Fed. R. Civ. P. 53(a)(1)(C). Plaintiffs appreciate that the Central District of
15 California implemented its Continuity of Operations Plan and took other measures
16 to slow the spread of the virus while nevertheless continuing its critical operations.
17 The Parties have demonstrated that they are able to resolve discovery issues
18 themselves, and have also been respectful of the Court's time, bringing only two
19 discovery disputes to Magistrate Judge Standish, who quickly and efficiently
20 resolved the issues without causing the Parties (and taxpayers) to incur the expense
21 of a Special Master. Minutes of Pre-Discovery Motion, Feb. 3, 2020 (ECF No.
22 2914); Amended Minutes regarding Plaintiff's Motion to Compel, Mar. 13, 2020
23 (ECF No. 2961).[3]

---

[3] Plaintiffs also note that because there are public entities, they are subject to restrictions or legal prohibitions on paying retainers for services not yet received, such as the deposit required by JAMS for Special Master Smith. *See, e.g.,* California Constitution Article XVI, §§ 3 and 6; 48 C.F.R. § 32.402. Plaintiffs also require an order by the Court for every payment of public funds to be made for services actually rendered by a Special Master.

    **3.**  Negotiations regarding Defendants' responsibility to remediate various portions of the Montrose Superfund Site are not before the Court.

  As set forth in Section V.A.2. of the March 13, 2020 Joint Status Report, Plaintiffs respectfully reiterate that the negotiations between the Parties regarding Defendants' responsibility to remediate the various parts of the Montrose Superfund Site for which they have already been found liable are not before the Court, and the Plaintiffs do not consent to appointment of a Special Master to oversee those negotiations. In earlier phases of this litigation, Plaintiffs secured liability determinations and declaratory judgment against Defendants, binding in all subsequent actions, for all further response costs regarding the Stauffer Property (where the Montrose DDT Plant is located). Orders Granting Plaintiffs' Summary Judgments, ECF Nos. 1922, 2445; *see* 42. U.S.C. § 9613(g)(2) (in a cost recovery case under section 107 of CERCLA, "the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages").

  Plaintiffs have not brought a subsequent action pursuant to the declaratory judgment to recover further response costs incurred in performing the groundwater, soils, or DNAPL remedies. Further, the agreement in principle recently reached by the Parties resolves Defendants' obligation to perform remedial action at the groundwater operable unit and pay response costs for groundwater. Should the Parties be unable to negotiate settlements for the Defendants to carry out the DNAPL or soil remedies, Plaintiffs may incur further response costs in performing those remedies themselves, and may bring a subsequent action pursuant to the declaratory judgment to recover those costs. Until that time, however, Plaintiffs respectfully submit that there are no claims regarding soil, groundwater, or DNAPL cost recovery or remedies before the Court for consideration or resolution, and no disputes to be decided.

1  Congress, in CERCLA, conferred the remedy selection and implementation
2  process to the President, who has delegated that authority to the Environmental
3  Protection Agency.  42 U.S.C. §§ 9604 (giving the President authority to select
4  remedial actions), 9613(h) ("No Federal court shall have jurisdiction under Federal
5  law . . . to review any challenges to removal or remedial action selected under
6  section 9604 of this title, or to review any order issued under section 9606(a) of
7  this title, except" for a claim under 42 U.S.C. §§ 9606, 9606(a), or 9607(a) or other
8  situations not applicable here.).  Defendants request that the Court and Special
9  Master intervene in EPA's selection of a DNAPL remedy, but cases routinely
10 reject this kind of involvement in EPA's remedy selection process.  *See Cooper*
11 *Indus., Inc. v. U.S. E.P.A.*, 775 F. Supp. 1027, 1037–38 (W.D. Mich. 1991) ("[T]he
12 ban on preimplementation review extends not only to parties' contentions that the
13 remedy selected does not meet the substantive requirements of CERCLA, but also
14 to procedural claims regarding the EPA's remedy selection process. ") (citing
15 *Schalk v. Reilly,* 900 F.2d 1091, 1097 (7th Cir.), *cert. denied,* 498 U.S. 981, 111
16 S.Ct. 509, 112 L.Ed.2d 521 (1990)).  Even efforts seeking a speedier response
17 action improperly impact the government's remedial action and are therefore
18 barred. *Hanford Downwinders Coal., Inc. v. Dowdle*, 841 F. Supp. 1050, 1061
19 (E.D. Wash. 1993), aff'd, 71 F.3d 1469 (9th Cir. 1995), and *aff'd sub nom.*
20 *Columbia River United v. Dowdle*, 76 F.3d 385 (9th Cir. 1996).  As such,
21 involvement of a Special Master in negotiations regarding remediation of the
22 DNAPL, soils, or groundwater at and near the Stauffer Property is not appropriate
23 and would be inconsistent with the jurisdiction conferred by CERCLA.
24    **B.    Defendants' Position**
25    Defendants disagree with the sharply circumscribed role that the government
26 plaintiffs envision for Special Master Smith.  The government plaintiffs' approach
27 would (i) prohibit Special Master Smith from communicating *ex parte* without
28 written consent of each Party; (ii) prevent Special Master Smith from

communicating to the Court the specifics of any party's settlement position without the consent of the other party; and (iii) limit the Special Master solely to conducting settlement conferences regarding Defendants' liability for Plaintiffs' response costs to the historic stormwater pathway south of Torrance Boulevard. Plaintiffs would thus seek to prevent Special Master Smith from being involved in settlement discussions for other disputes between the parties. For example, Defendants would like to proceed with full-scale remediation of DNAPL at the site, but EPA has yet to issue the Record of Decision, despite issuing a Proposed Plan for the remedy six years ago. Special Master Smith could assist the parties in resolving that dispute, leading to a Consent Decree to implement the DNAPL remedy.

The government's position also conflicts with the directions the Court provided at the February 21, 2020 status conference when it first appointed Special Master Smith. At that hearing, the Court indicated that Special Master Smith would be involved in discovery, ensuring compliance with consent decrees, and that he would be present at status conferences, which suggests a much broader role than that which the government envisions. Feb. 20, 2020 Status Conference Transcript, Vol. 3, 7:25-8:2; 35:6-36:1; Vol. 1, 35:2-18.

The Defendants agree with the Court and respectfully suggest that the Court enter an order along the lines of the order Judge Real issued when he appointed Special Master Smith's predecessor, Special Master John Francis Carroll, which provides broader authority than the government is suggesting in its proposed order. *See* Ex. 1, 3/6/2000 Order Appointing Special Master. With Special Master Carroll's involvement, the parties were able to successfully resolve liability with respect to the vast majority of the site through the entry of numerous separate Consent Decrees and resolve a major litigation. The Defendants found Special Master Carroll's assistance to be very useful and believe that Judge Smith could similarly assist the parties and the Court, as needed. Further, the Defendants

believe it is especially important now that the Special Master be afforded the latitude to participate in all issues between the parties since the Court will undoubtedly have a backlog of matters to resolve as a result of reduced Court operations for the last two-plus months due to COVID-19.

### III. CONCLUSION

The Parties appreciate the Court's time and attention to this matter.

Respectfully submitted,

Dated: June 3, 2020         LATHAM & WATKINS LLP

 / s /   John T. Ryan
John T. Ryan
Attorneys for Defendant
Montrose Chemical Corporation of California

Dated: June 3, 2020         SKADDEN ARPS SLATE MEAGHER & FLOM LLP

 / s /   Winston P. Hsiao
Winston P. Hsiao
Attorneys for Defendant
21st Century Fox America, Inc.

Dated: June 3, 2020         FOUNDATION LAW GROUP

 / s /   Gregg D. Zucker
Gregg D. Zucker
Attorney for Defendant
Stauffer Management Company LLC for itself
and as Attorney-in-Fact for Bayer
CropScience Inc.

| | | |
|---|---|---|
| 1 | Dated: June 3, 2020 | UNITED STATES OF AMERICA |
| 2 | | |
| 3 | | / s /   Gabriel M. Allen |
| 4 | | Gabriel M. Allen<br>gabriel.allen@usdoj.gov |
| 5 | | Environmental Enforcement Section<br>Environment & Natural Resources Division |
| 6 | | United States Department of Justice<br>Attorney for the United States |
| 7 | | |
| 8 | Dated: June 3, 2020 | CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL |
| 9 | | |
| 10 | | |
| 11 | | / s / Megan Hey |
| 12 | | Megan Hey<br>Catherine Wieman<br>Deputy Attorneys General |
| 13 | | California Attorney General's Office<br>Attorney for the State of California on behalf of |
| 14 | | the California Department of Toxic Substances Control |

**ATTESTATION**

I hereby attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized this filing.

Dated: June 3, 2020     / s /   John T. Ryan
                        John T. Ryan