JEAN E. WILLIAMS
Acting Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

DEBORAH A. GITIN (California Bar No. 284947)
PATRICIA L. HURST (DC Bar No. 438882)
Senior Counsel
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
450 Golden Gate Ave., Suite 07-6714
San Francisco, CA 94102
Telephone: (415) 744-6488
Fax: (415) 744-6476
Email: deborah.gitin@usdoj.gov
Attorney for Plaintiff United States of America
[Additional counsel listed on following page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF CALIFORNIA, <br><br> Plaintiffs, <br><br> v. <br><br> MONTROSE CHEMICAL CORP. OF CALIFORNIA, et al., <br><br> Defendants. | Case No. 2:90-cv-03122 DOC (GJSx) <br><br> **MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION TO ENTER PROPOSED CONSENT DECREES** <br><br> Hearing Date:  May 17, 2021[1] <br> Time:  8:30 a.m. <br> Location:  Courtroom 9D or via Zoom <br> Judge:  Hon. David O. Carter |

[1] This motion is unopposed, and the parties do not request a hearing.  If the Court should hold a hearing, Plaintiffs request that it be held via Zoom, as described in the Notice of Motion and Motion to which this Memorandum is attached.

*United States and State of CA v Montrose Chemical
Corp. of California, et al.
Memorandum ISO Motion to Enter Consent Decrees*

MATTHEW RODRIQUEZ
    Acting Attorney General of California
SARAH E. MORRISON
    Supervising Deputy Attorney General
CATHERINE WIEMAN (State Bar No. 222384)
catherine.wieman@doj.ca.gov
MEGAN HEY (State Bar No. 232345)
megan.hey@doj.ca.gov
    Deputy Attorneys General
300 South Spring Street, Suite 1702
Los Angeles, CA  90013
Telephone:  (213) 269-6344
Fax: (213) 297-2802
Attorneys for Plaintiff State of California, on behalf of California Department
of Toxic Substances Control

*United States and State of CA v Montrose Chemical*
*Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decrees*

# **TABLE OF CONTENTS**

I.     SUMMARY ................................................................................2

II.    BACKGROUND ........................................................................3

    A.     Relevant Procedural Background ......................................3

    B.     The Montrose Site...............................................................4

    C.     The Settling Defendants......................................................5

    D.     The Dual Site OU and the 2012 "Construction CD"...........6

    E.     The DNAPL OU ..................................................................8

III.   TERMS OF THE TWO PROPOSED CONSENT DECREES....................8

    A.     Key Terms of the O&M CD ................................................9

    B.     Key Terms of the DNAPL CD............................................9

    C.     Terms Common to Both Consent Decrees ........................10

IV.    LEGAL STANDARD FOR ENTRY .........................................................11

V.     ARGUMENT ................................................................................13

    A.     The Consent Decrees Are Substantively Fair ....................13

    B.     The Consent Decrees Are Procedurally Fair ....................14

    C.     The Consent Decrees Are Reasonable...............................15

    D.     The Consent Decrees Are Consistent with CERCLA .......16

    E.     Having Considered Public Comments on the O&M CD, the Plaintiffs Continue to Find It Fair, Reasonable, And Consistent with CERCLA. ......17

VI.    CONCLUSION ................................................................................25

*United States and State of CA v Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decrees*

i

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

3

*Alabama v. U.S. Envt'l Prot. Agency*,

4

    871 F.2d 1548 (11th Cir. 1989) ...................................................................17

5

*Calif. Dept. of Toxic Substances Control v. Mid Valley Dev., Inc.,*

6

    *2011 WL 13366014 (E.D. Cal. 2011)* ........................................................15

7

*Chubb Custom Ins. Co. v. Space Systems/Loral, Inc.*

8

    710 F.3d 946 (9th Cir. 2013)........................................................................11

9

*Citizens for a Better Env't v. Gorsuch,* 718 F.2d 1117 (D.C. Cir. 1983)..............12

10

*Officers for Justice v. Civil Service Comm'n,* 688 F.2d 615 (9th Cir. 1982) ..........12

11

*Schalk v. Reilly, 900 F.2d 1091, 1092 (7th Cir. 1990)* .........................................17

12

*S.E.C. v. Randolph*, 736 F.2d 525 (9th Cir. 1984)...........................................11, 22

13

*United States v. Aerojet General Corp.*, 606 F.3d 3d 1142 (9th Cir. 2010) ...........12

14

*United States v. Akzo Coatings of Amer., Inc.,*

15

    949 F.2d 1409 (6th Cir. 1991)........................................................12, 13, 16

16

*United States v. Albert Inv. Co.*, 585 F.3d 1386 (10th Cir. 2009)...........................12

17

*United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826 (5th Cir. 1975)......12

18

*United States v. Bechtel Corp.*, 648 F.2d 660 (9th Cir. 1981) ...............................11

19

*United States v. Cannons Eng'g Corp. ("Cannons I"),*

20

    720 F. Supp. 1027 (D. Mass. 1989) ........................................................11, 22

21

*United States v. Cannons Eng'g Corp. ("Cannons II"),*

22

    899 F.2d 79 (1st Cir. 1990) ...............................................11, 12, 13, 15, 16

23

*United States v. Charles George Trucking, Inc.,*

24

    *34 F.3d 1081 (1st Cir. 1994)*................................................................12, 13

25

*United States v. Montrose Chem. Corp. of Calif.*,

26

    50 F.3d 741 (9th Cir. 1995)......................................................................11, 12

27

*United States v. Oregon*, 913 F.2d 576 (9th Cir. 1990)....................................12, 13

28

*United States v. Pac. Gas & Elec.*, 776 F. Supp. 2d 1007 (N.D. Cal. 2011) .........12

*United States and State of CA v Montrose Chemical*
*Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decrees*

ii

**Statutes**

42 U.S.C. §§ 9601 – 9675 ...................................................................................2

42 U.S.C. § 9604...............................................................................................3

42 U.S.C. § 9605...............................................................................................5

42 U.S.C. § 9607...............................................................................................4

42 U.S.C. § 9613................................................................................9, 10, 16, 17

42 U.S.C. § 9617...............................................................................................6

42 U.S.C. § 9621.............................................................................................23

42 U.S.C. § 9622.....................................................................................2, 11, 16, 17

**Regulations**

28 C.F.R. § 50.7...............................................................................................2

40 C.F.R. § 300.430 .......................................................................................17

85 Fed. Reg. 48726-27 (Aug. 12, 2020)..........................................................2

86 Fed. Reg. 6920 (Jan. 25, 2021)..................................................................2

**Other Authorities**

115 Cong. Rec. 29842-45 (Oct. 14, 1969) ......................................................5

Plaintiffs, the United States of America, by authority of the Attorney General of the United States, acting at the request of the United States Environmental Protection Agency ("United States"), and the State of California, on behalf of the Department of Toxic Substances Control ("DTSC"), request that the Court enter two proposed partial Consent Decrees recently lodged with the Court:

    (1) Partial Consent Decree (Dual Site Groundwater Operable Unit – Chlorobenzene Plume Remedy Operation and Maintenance) (ECF No. 2987-1) (the "O&M CD"), which concerns an operable unit[2] that spans portions of the Montrose Chemical Corp. Superfund Site ("Montrose Site" or "Site"), subject of this litigation, as well as portions of the adjacent Del Amo Superfund Site; and

    (2) Partial Consent Decree (Montrose Superfund Site - Dense Non-Aqueous Phase Liquid (DNAPL) Operable Unit) (ECF No. 3050-1) (the "DNAPL CD").

The O&M CD and DNAPL CD are attached as Exhibits A and B respectively.[3]

Entry of the O&M CD and the DNAPL CD would partially resolve the Plaintiffs' claims in this civil action under the Comprehensive Environmental

---

[2] As is typical at Superfund sites, EPA has divided the Montrose Site into discrete Operable Units ("OUs") to facilitate organization of investigation and cleanup of the Site.  *See* Declaration of Cynthia Wetmore ("Wetmore Decl."), attached to this Memorandum as Exhibit C, ¶ 7.  Both the proposed consent decrees pertain to OU3.  *Id*.  The groundwater and the Dense Non-Aqueous Phase Liquids portions of OU3 are sometimes referred to as distinct OUs themselves; the former is called the "Dual Site OU" and the latter the "DNAPL OU."  *Id.*

[3] The Plaintiffs also recently lodged a third proposed consent decree regarding the Historic Stormwater Pathway – South Operable Unit (OU6), subject of the trial set for June, 2021.  ECF No. 3054-1 (Mar. 12, 2021).  The public comment period for this third proposed decree is currently running, and accordingly this third proposed consent decree is not yet ripe for the Court's consideration.

*United States and State of CA v Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decrees*

1

Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§ 9601 – 9675, against the "Settling Defendants," which include all remaining defendants to this case.[4]  The Plaintiffs lodged the O&M CD with the Court on August 6, 2020.  Pursuant to 28 C.F.R. § 50.7 and 42 U.S.C. § 9622(d)(2), the Plaintiffs published notice of the O&M CD in the Federal Register, and accepted public comments for 30 days.  85 Fed. Reg. 48726-27 (Aug. 12, 2020).  Two comments were received on the O&M CD, which are attached as Exhibits D and E and are discussed below at pages 17 through 25.

The Plaintiffs lodged the DNAPL CD on January 15, 2021.  Pursuant to 28 C.F.R. § 50.7 and 42 U.S.C. § 9622(d)(2), the Plaintiffs published notice of the DNAPL CD in the Federal Register, and accepted comments for 30 days.  86 Fed. Reg. 6920 (Jan. 25, 2021).  No comments were received on the DNAPL CD.

The proposed consent decrees are fair, reasonable, and consistent with CERCLA, as described below.  For the reasons stated below, the Plaintiffs request that the Court enter the proposed consent decrees by signing page 85 of the O&M CD and page 81 of the DNAPL CD.  No hearing is required by statute, and the parties do not request oral argument.

## I.    SUMMARY

The two proposed consent decrees provide for cleanup work valued at an estimated $77.6 million at the Montrose Site, which contains the property where

---

[4] The four remaining defendants to this litigation are Montrose Chemical Corporation of California ("Montrose"), Bayer CropScience, Inc. (successor to Aventis CropScience USA, Inc.) ("Bayer"), Stauffer Management Company LLC (successor to Atkemix Thirty-Seven, Inc.) ("Stauffer"), and TFCF America, Inc. (successor to Chris-Craft Industries, Inc.) ("TFCF").  They are Settling Defendants in both proposed consent decrees.  JCI Jones Chemicals, Inc. ("Jones"), who is not a party to this litigation, has also joined the O&M CD as a Settling Defendant, based on its status as a potentially responsible party for the Dual Site OU, subject of the O&M CD.  Ex. A (O&M CD) ¶¶ Q, 5.

*United States and State of CA v Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decrees*

2

1  one of the largest DDT manufacturing plants in the United States operated (the

2  "Montrose Plant Property" or "Stauffer Property").[5]  These proposed consent

3  decrees also recover over $4 million for EPA and over $200,000 for DTSC[6] toward

4  the public agencies' past response costs incurred at those portions of the Site.[7]  The

5  Settling Defendants will perform these cleanups until they are completed,

6  regardless of cost and duration, at Settling Defendants' own expense, and will also

7  pay the United States' and DTSC's costs of overseeing the cleanups.  Under the

8  deferential standard for judicial approval of CERCLA consent decrees, the O&M

9  CD and DNAPL CD are substantively and procedurally fair, reasonable, and

10  consistent with CERCLA's purposes of having the potentially responsible parties

11  ("PRPs") perform and fund cleanup, preferably through settlement.  Plaintiffs'

12  conclusion that the O&M CD is fair, reasonable, and consistent with CERCLA

13  includes consideration of the two comments received, which are discussed below

14  in Section V.E.  No comments were received on the DNAPL CD.

## II.   BACKGROUND

### A.   Relevant Procedural Background

[5] The terms "Montrose Plant Property" and "Stauffer Property" are generally used interchangeably in various pleadings and documents concerning the Site.

[6] DTSC is the state agency responsible for supporting EPA in the development and oversight of remedial actions pursuant to Section 104 of CERCLA, 42 U.S.C. § 9604, at the Site (the "state CERCLA lead agency"), and participated in that capacity in the DNAPL OU and Dual Site OU cleanups.  *See* Declaration of Willard Garrett ("Garrett Decl."), attached to this Memorandum as Exhibit F, ¶¶ 3, 6.

[7] The O&M CD and DNAPL CD do not concern the area of the Site (the Historic Stormwater Pathway South Operable Unit, OU6) where issues are set for trial. Rather, the Court has already found Settling Defendants Montrose, Stauffer, and Bayer liable at the areas that are relevant to the O&M CD and DNAPL CD, as reflected in two 2000 summary judgment rulings.  *See* Ex. A (O&M CD) ¶ U, Ex. B (DNAPL CD) ¶ S; ECF Nos. 1922 and 2100 (summary judgment rulings).

*United States and State of CA v Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decrees*

3

In December 1999, the Plaintiffs filed a Third Amended Complaint ("Complaint") pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607, seeking, among other things, recovery of response costs in connection with releases of the pesticide dichloro-diphenyl-trichloroethane, commonly known as DDT, and of monochlorobenzene (also referred to as chlorobenzene), one of the primary ingredients in the DDT manufacturing process. ECF No. 1747. Certain of these claims were resolved in a series of consent decrees entered in the 2000-2002 time period. *See* Ex. A (O&M CD) ¶¶ B-F; Ex. B (DNAPL CD) ¶¶ B-F (summarizing previous consent decrees).

In 2012, Plaintiffs and Settling Defendants Montrose, Bayer, Stauffer, and TFCF entered an additional consent decree, the "Construction CD" (ECF No. 2731-2), which is the precursor to the presently proposed O&M CD. In the Construction CD, those Settling Defendants agreed to construct the primary treatment system for cleanup of the "Chlorobenzene Plume" groundwater contamination at the Dual Site OU, the same remedial component for which they now commit, in the proposed O&M CD, to perform long-term operation and maintenance. Ex. A (O&M CD) ¶ P; Ex. B (DNAPL CD) ¶ G.

As acknowledged in the O&M CD and DNAPL CD, this Court has already considered certain liability issues related to groundwater contamination and DNAPL contamination emanating from the Montrose Site and issued Orders on summary judgment (ECF Nos. 1922 and 2100). In these Orders, the Court concluded that Settling Defendant Montrose and the predecessor corporations of Settling Defendants Bayer and Stauffer are jointly and severally liable for all costs of removal or remedial action incurred by the United States or DTSC with respect to the Stauffer Property. Ex. A (O&M CD) ¶ U; Ex. B (DNAPL CD) ¶ S.

B.    The Montrose Site

Settling Defendant Montrose manufactured the pesticide DDT from 1947 until 1982 at the plant located at 20201 Normandie Avenue, Los Angeles, near the

*United States and State of CA v Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decrees*

4

City of Torrance (the "Montrose Plant").  ECF No. 1922 (Order on Partial
Summary Judgment) ¶¶ 1-2; Ex. G (excerpts from Final Remedial Investigation
Report for Montrose Superfund Site, May 18, 1998 ("1998 RI Report")), at 1-1, 1-
6.  Montrose was the biggest manufacturer of DDT in the United States.  115
Cong. Rec. 29842-45 (Oct. 14, 1969).  In 1962, production at the Montrose Plant
reached 5.5 to 6 million pounds of DDT a month.  Ex. G (1998 RI Report) at 1-9.
After DDT was banned in the United States in 1972, Montrose continued to
produce DDT for export until 1982.  *Id.* at 1-8.  After Montrose ceased operations,
the plant was disassembled and removed from the property and the majority of the
property paved with asphalt.  *Id.*  Pursuant to Section 105 of CERCLA, 42 U.S.C.
§ 9605, EPA placed the Montrose Site on the National Priorities List ("NPL") of
Superfund sites in 1989.  *See* Ex. A (O&M CD) ¶ K; Ex. B (DNAPL CD) ¶ K.

      C.     The Settling Defendants

      Settling Defendant **Montrose** was the operator of the Montrose Plant at the
time of disposal of DDT and chlorobenzene.  ECF No. 1922 (Order on Partial
Summary Judgment), ¶ 27.  Settling Defendant **Stauffer** is the successor to the
company held liable as the current owner of the "Stauffer Property" on which the
Montrose Plant was located.  *Id.* ¶ 26 (liability of Atkemix Thirty-Seven, Inc.);
Ex. A (O&M CD) ¶ U (successorship).  Settling Defendant **Bayer** is successor to
the former owner – the owner at the time of disposal – of the Stauffer Property.
ECF No. 1922 ¶¶ 6, 28 (liability of Aventis CropScience USA, Inc.); Ex. A (O&M
CD) ¶ U (successorship).  Settling Defendant **TFCF** is successor to a parent
company of Montrose, which Plaintiffs contend is directly liable as a former
operator at the Site; TFCF's liability has not been adjudicated.  ECF No. 2932
(Joint Status Report), at 8 (liability of Chris-Craft Industries, Inc.); *id.* at 3
(successorship). These four defendants are signatories to both the O&M CD and
the DNAPL CD.  Settling Defendant **Jones** owns and operates a property adjacent
to the Montrose Property, and is a signatory to the O&M CD.  *See supra* n.4.

*United States and State of CA v Montrose Chemical
Corp. of California, et al.
Memorandum ISO Motion to Enter Consent Decrees*

5

D.      The Dual Site OU and the 2012 "Construction CD"

One factor complicating cleanup of the Montrose Site groundwater has been what EPA has determined to be commingling of the Montrose-related groundwater contamination with groundwater contamination from an adjacent Superfund site, the Del Amo Superfund Site, as well as contamination from additional facilities in the immediately surrounding area.  *See* Ex. A (O&M CD), App. A (Dual Site Record of Decision), at I-2); ECF No. 2731-1 (United States' memo in support of motion to enter Construction CD, Aug. 20, 2012 ("Construction CD Memo")) at 3-4; ECF No. 2731-2 (Construction CD) ¶ H.  This commingled contamination is known as the Dual Site OU.  *See* ECF No. 2731-1 (Construction CD Memo) at 3; ECF No. 2731-2 (Construction CD) ¶ H.  EPA issued a joint Record of Decision for the Dual Site OU (the "Dual Site ROD") in March, 1999.[8]  *Id.*; *see also* Ex. A (O&M CD) ¶ N.  As required by Section 117(a) of CERCLA, 42 U.S.C. § 9617(a), the proposed plan for the Dual Site OU was put out for public comment, and responses to those comments were incorporated into the ROD.  *See* Ex. A (O&M CD) App. A (Dual Site ROD); https://semspub.epa.gov/work/HQ/188437.pdf (Dual Site ROD, including responsiveness summary).[9]

The Dual Site OU groundwater contamination consists of three principal plumes: the Chlorobenzene Plume, the Benzene Plume, and the TCE Plume.  Ex. A (O&M CD) ¶¶ R, 4.  The Chlorobenzene Plume contains groundwater

---

[8] A technical memorandum issued in 2019 (the "Flowrate Memo") made non-significant changes to the Dual Site ROD concerning flowrates for reinjection at different portions of the treatment system.  Ex. A (O&M CD) ¶ 4 (definitions of "Flowrate Memo" and of "Record of Decision" or "ROD").  The Flowrate Memo is discussed below at page 20 in addressing a comment received on the O&M CD.

[9] The Del Amo Action Committee ("DAAC"), one of the commenters on the proposed O&M CD, was among the entities whose comments were responded to in the ROD.  *See* https://semspub.epa.gov/work/HQ/188437.pdf, at R1-2 (responsiveness summary).

*United States and State of CA v Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decrees*

contamination that EPA has determined came from the Montrose Site.[10]  Ex. A
(O&M CD) App. A (Dual Site ROD) at I.2.  The Dual Site ROD outlines cleanup
standards for these three plumes, and provides that the most contaminated
groundwater, which cannot practicably be cleaned up to drinking water standards,
shall be permanently contained in a "Containment Zone,"[11] and that any hazardous
substances outside of the Containment Zone be cleaned up to drinking water
standards.  *Id.* at II.4-5 to 4-6.

The Court's approval of the Construction CD in 2012 affirms EPA's
decision to address these three plumes separately.  The Construction CD commits
Settling Defendants Montrose, Bayer, Stauffer, and TFCF (or their predecessors) to
construct the treatment system for the Chlorobenzene Plume, including the portion
commingled with other contamination, and does not address the non-commingled
Benzene Plume or TCE Plume.  ECF No. 2731-2 (Construction CD) ¶¶ P, 81.h;
Ex. A (O&M CD) ¶ 4.[12]  No entity opposed or commented on the Construction
CD.

---

[10] The Construction CD and O&M CD define the Chlorobenzene Plume as "the
entire distribution of chlorobenzene in groundwater at the Dual Site, and all other
contaminants that are commingled with the chlorobenzene [as defined in] the
ROD."  ECF No. 2731-2 (Construction CD) ¶ 4; Ex. A (O&M CD) ¶ 4.  The
Benzene Plume is defined in the O&M CD as the portion of the distribution of
benzene that is not commingled with chlorobenzene, and the TCE Plume as the
portion of the distribution of TCE that is not commingled with chlorobenzene.  *Id.*

[11] The Containment Zone is congruent with the area that cannot be practicably
cleaned up to drinking water standards, which is known as the "Technical
Impracticability Waiver Zone" or "TI Waiver Zone."

[12] Plaintiffs are separately pursuing potentially responsible parties from the Del
Amo Superfund Site and adjacent areas regarding cleanup of the Benzene Plume
and the TCE Plume; these entities are not parties to this action, which concerns the
Montrose Site.  Ex. C (Wetmore Decl.) ¶ 11.

*United States and State of CA v Montrose Chemical
Corp. of California, et al.
Memorandum ISO Motion to Enter Consent Decrees*

7

As described below in Section III.A, the proposed O&M CD commits the Settling Defendants to long-term operation and maintenance of that same Chlorobenzene Plume treatment system, at an estimated cost of $52.6 million.

E.      The DNAPL OU

The DNAPL OU addresses DNAPL contamination that is present at the Site primarily in soils and shallow groundwater beneath the footprint of the former Montrose Plant.  If not cleaned up, DNAPL is a continuous source of contamination to groundwater.  *See* Ex. B (DNAPL CD), App. A (DNAPL ROD) at 5, 8.  In September 2020, EPA issued a Record of Decision selecting a remedy of *in situ* electrical resistance heating in a focused area of the Site where mobile DNAPL is present.  *Id.* at 5-6.  This technology will minimize the potential for future DNAPL migration, therefore further protecting groundwater.  *Id.*  The remedy also provides for heated soil vapors to be extracted from the subsurface and treated.  *Id.*  As with the Dual Site OU, the proposed plan for the DNAPL OU was put out for public comment, and responses to these comments incorporated into the ROD.  *Id.* at 99-116.  The Settling Defendants have already conducted a successful pilot test of the electrical resistance heating technology; as of November 2020, the pilot had removed 8,623 gallons of DNAPL, or over 80,000 pounds of contamination.  Ex. B (DNAPL CD), App. B (Statement of Work) at 4, 7; EPA update slides, "DNAPL, Vapor Intrusion, JCI Jones, and Dual Site Groundwater" (Dec. 10, 2020), available at https://semspub.epa.gov/work/09/100022266.pdf.

**III.    TERMS OF THE TWO PROPOSED CONSENT DECREES**

The two proposed decrees provide for cleanup and cost recovery of two different types of contamination.  The O&M CD addresses long-term operation and maintenance of the Chlorobenzene Plume groundwater treatment system at the Dual Site OU, and the DNAPL CD provides for removal of DNAPL contamination on and near the footprint of the Montrose Plant Property.  As noted above, liability for these areas of the Site was determined on summary judgment.  *See supra* n.7.

*United States and State of CA v Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decrees*

8

Now that EPA has determined the appropriate cleanup paths for these portions of the Site, the Settling Defendants have agreed to implement those cleanups.

### A.   Key Terms of the O&M CD

The O&M CD commits the Settling Defendants to perform operation and maintenance of the Chlorobenzene Plume remedy at the Dual Site OU ("the Work"), a groundwater pump-and-treat system to remove chlorobenzene (a primary ingredient in DDT manufacturing) and other contaminants of concern. Ex. A (O&M CD) ¶¶ 4, 5, 12, and App. B (Statement of Work).  This cleanup is consistent with the ROD (with the incorporation of the Flowrate Memo). *Id.* App. A (ROD and Flowrate Memo).  The net present value of the Work is estimated at $52,600,000, but the Settling Defendants have committed to perform the Work regardless of its cost, and will continue to implement the remedy until the ROD's performance standards are achieved. *Id.* ¶¶ 13, 32.  The O&M CD also recovers $4,000,000 in previously unreimbursed EPA past response costs and $177,265.36 in previously unreimbursed DTSC past response costs related to the Dual Site OU. *Id.*  ¶¶ 42.a, 42.c.  The Settling Defendants will also pay the costs of EPA and DTSC oversight of the Work. *Id.* ¶¶ 43-44.  The only "matters addressed" by this consent decree are the Work performed, the specified past response costs, and the future oversight costs. *Id.* ¶ 86.  The Settling Defendants receive covenants not to sue from the United States and DTSC only for these specified matters, and subject to various reservations of rights. *Id.* ¶¶ 74-76.  As CERCLA provides, the Settling Defendants also receive statutory contribution protection from claims by other parties regarding these "matters addressed." 42 U.S.C. § 9613(f)(3)(2); Ex. A (O&M CD) ¶ 86.  The Settling Defendants do not receive a covenant not to sue or contribution protection for any other OU at the Site. *Id.* ¶¶ R, 74-75, 76.i.

### B.   Key Terms of the DNAPL CD

The DNAPL CD commits the Settling Defendants to operate and maintain the electrical resistance heating and soil vapor extraction remedy selected by EPA

*United States and State of CA v Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decrees*

9

in the DNAPL ROD, as described above.  Ex. B (DNAPL CD) ¶¶ 6, 10, and App.
B (Statement of Work); *see supra* at 8.  The net present value of the Work is
estimated at $25,000,000, but the Settling Defendants have committed to perform
the Work regardless of its cost, and will continue to implement the remedy until
the ROD's performance standards are achieved.  *Id.* ¶¶ 6, 10.c, 31.  Settling
Defendant Stauffer, which owns the property where the Work is being performed,
will also place a land use covenant on its property to limit certain uses of the
property and to ensure certain access.  *Id.* ¶¶ 16.b, 19, 21, and App. E (model land
use covenant).  The DNAPL CD also recovers $340,000 in previously
unreimbursed EPA past response costs and $61,798.11 in unreimbursed DTSC past
response costs related to the DNAPL OU.  *Id.* ¶¶ 41.a, 41.c.  The Settling
Defendants will also pay the United States' and DTSC's costs of overseeing
Settling Defendants' performance of the Work.  *Id.* ¶¶ 42-43.  The only "matters
addressed" by this consent decree are the Work performed, the specified past
response costs, and the future oversight costs.  *Id.* ¶ 85.  The Settling Defendants
receive covenants not to sue from the Plaintiffs only for these specified matters,
and subject to various reservations of rights.  *Id.* ¶¶ 73-75.  As CERCLA provides,
the Settling Defendants also receive statutory contribution protection from claims
by other parties regarding these "matters addressed." 42 U.S.C. § 9613(f)(3)(2);
Ex. B (DNAPL CD) ¶ 85.  The Settling Defendants do not receive a covenant not
to sue or contribution protection for any other OU at the Site.  *Id.* ¶¶ 73-74, 75.i.

    C.    <u>Terms Common to Both Consent Decrees</u>

    Other provisions of both consent decrees generally track standard language
from EPA's published model consent decree for Remedial Design / Remedial
Action, https://cfpub.epa.gov/compliance/models/view.cfm?model_ID=81, or prior
versions of that model.  These include, for instance: financial assurance to
guarantee performance of the remedy (Section XI of each consent decree);
stipulated penalties for violations of the consent decree (Section XVIII);

*United States and State of CA v Montrose Chemical
Corp. of California, et al.
Memorandum ISO Motion to Enter Consent Decrees*

10

requirements for records retention (Section XXIII); and Site-wide waivers of *res judicata*, claim-splitting, and other related defenses (Section XXI).

## IV.   LEGAL STANDARD FOR ENTRY

The standard for approval of a CERCLA federal settlement is whether it is "reasonable, fair, and consistent with the purposes that CERCLA is intended to serve," as the Ninth Circuit has held in this very case. *United States v. Montrose Chem. Corp. of Calif.*, 50 F.3d 741, 743 (9th Cir. 1995) (quoting *United States v. Cannons Eng'g Corp.*, 899 F.2d 79 (1st Cir. 1990) (*"Cannons II"*), and legislative history) (internal quotations omitted).  Approval of a settlement is committed to the informed discretion of the district court.  *S.E.C. v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984).  Such discretion should be "exercised in light of the strong policy in favor of voluntary settlement of litigation."  *United States v. Cannons Eng'g Corp. ("Cannons I")*, 720 F. Supp. 1027, 1035 (D. Mass. 1989), *aff'd, Cannons II*; *see also Randolph*, 736 F.2d at 529.  CERCLA has explicit provisions favoring settlement, especially settlements in which PRPs agree to perform work.  42 U.S.C. §§ 9622(a), 9622(d)(1); *see also Chubb Custom Ins. Co. v. Space Systems/Loral, Inc.* 710 F.3d 946, 971 (9th Cir. 2013).

Courts defer to agency expertise when reviewing a proposed settlement. *Cannons I*, 720 F. Supp. at 1035; *Randolph*, 736 F.2d at 529.  That deference is "strengthened when a government agency charged with protecting the public interest 'has pulled the laboring oar in constructing the proposed settlement,'" as the Department of Justice, EPA, and DTSC have done here.  *Montrose*, 50 F.3d at 746 (quoting *Cannons II*, 899 F.2d at 84).  A "district court reviewing a proposed consent decree 'must refrain from second guessing the Executive Branch.'"  *Id*. The balancing of competing interests reflected in a proposed settlement "must be left, in the first instance, to the discretion of the Attorney General."  *United States v. Bechtel Corp.*, 648 F.2d 660, 666 (9th Cir. 1981).

*United States and State of CA v Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decrees*

11

1    "A consent decree is essentially a settlement agreement subject to continued

2    judicial policing.  It is not a decision on the merits . . . , but is the product of

3    negotiation and compromise." *United States v. Oregon*, 913 F.2d 576, 580 (9th

4    Cir. 1990) (citations and internal quotations omitted).  A reviewing court should

5    not substitute its own judgment as to optimal settlement terms for the judgment of

6    the litigants and their counsel.  *United States v. Akzo Coatings of Amer., Inc.*, 949

7    F.2d 1409, 1425 and n.12 (6th Cir. 1991).  Rather, the Court should approve the

8    settlement if it determines that the settlement is fair and reasonable, and resolves

9    the controversy in a manner consistent with the public interest.  *Citizens for a*

10   *Better Env't v. Gorsuch,* 718 F.2d 1117, 1126 (D.C. Cir. 1983); *Oregon*, 913 F.2d

11   at 580.  In conducting its review, the court may not modify the terms of the parties'

12   agreement – it may only approve or reject the settlement as a whole.  *Officers for*

13   *Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The Court

14   need not conduct discovery or an evidentiary hearing. *See United States v. Albert*

15   *Inv. Co.*, 585 F.3d 1386, 1396 (10th Cir. 2009) (cited approvingly in *United States*

16   *v. Aerojet General Corp.*, 606 F.3d 1142, 1150 (9th Cir. 2010)); *Cannons II* at 94;

17   *United States v. Charles George Trucking, Inc.*, 34 F.3d 1081,1085 (1st Cir. 1994).

18   Fairness entails both procedural and substantive fairness.  *Montrose*, 50 F.3d

19   at 746.  A consent decree is procedurally fair if it is the product of good faith,

20   arm's-length negotiations that were "full of adversarial vigor." *United States v.*

21   *Pac. Gas & Elec.*, 776 F. Supp. 2d 1007, 1025 (N.D. Cal. 2011) (citation omitted).

22   In evaluating substantive fairness, the Court should not inquire "whether the

23   settlement is one which the court itself might have fashioned, or considers as

24   ideal." *Cannons II,* 899 F.2d at 84; *see also Pac. Gas*, 776 F. Supp. 2d at 1025.

25   Nor should the Court seek to determine whether the proposed settlement provides

26   for "every benefit that might someday be obtained in contested litigation," *United*

27   *States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 850 (5th Cir. 1975).  Rather,

28   "[t]he court need only be satisfied that the decree represents a reasonable factual

*United States and State of CA v Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decrees*

12

1    and legal determination." *Oregon*, 913 F.2d at 581 (internal quotation and citation

2    omitted).  In evaluating the substantive fairness of a settlement involving a group

3    of settling defendants, the Court need not inquire into the individual shares of each

4    settling defendant, but may assess the fairness of the settlement as a whole.

5    *Charles George Trucking*, 34 F.3d at 1086.  In a CERCLA settlement that involves

6    the performance of work, the "reasonableness" prong is generally satisfied if the

7    Consent Decree is efficacious as a vehicle for cleaning the environment,

8    adequately compensates the public for the costs of response and remediation, and

9    is appropriate to the parties' relative positions in litigation.  *Cannons II* at 89-90.

10                          **V.    ARGUMENT**

11        A.    The Consent Decrees Are Substantively Fair

12        The paramount aspect of fairness is fairness to the public.  *Akzo Coatings*,

13   949 F.2d at 1435.  Here, where the cleanup work is performed and guaranteed at

14   the Settling Defendants' expense, the decrees are fair to the public.  In both

15   proposed decrees, the Settling Defendants must perform all relevant work

16   (operation and maintenance of the Chlorobenzene Plume remedy in the O&M CD,

17   and performance of the DNAPL remedy in the DNAPL CD).  The estimated cost

18   of this work is $77.6 million, but the Settling Defendants are making an open-

19   ended commitment to complete the work regardless of its cost.  *See supra* at 9, 10.

20   The Settling Defendants do not receive covenants for the Site as a whole, or indeed

21   for any OU at the Site other than those at which they are performing work.  Rather

22   they receive a covenant only for the work performed.  *See id*.  The Settling

23   Defendants comprise all remaining defendants to this litigation.

24        The Settling Defendants are also paying past response costs to EPA and

25   DTSC, as well as all future response costs EPA and DTSC incur in overseeing the

26   work performed.  The past response costs payments are substantively fair.  Settling

27   Defendants will pay EPA $4 million under the O&M CD, representing about 2/3 of

28   the unreimbursed past costs that EPA had attributed to these Settling Defendants.

*United States and State of CA v Montrose Chemical
Corp. of California, et al.
Memorandum ISO Motion to Enter Consent Decrees*

13

*See* Ex. C (Wetmore Decl.) ¶ 23 (stating that approximately $6.15 million in unreimbursed response costs at the Dual Site could be attributed to the Chlorobenzene Plume, or to Dual Site-wide costs not easily divisible among the three plumes). In determining that $4 million was an acceptable compromise, EPA took into account factors such as Settling Defendants' willingness to perform $52.6 million in open-ended cleanup work, CERCLA's policy of encouraging settlement, and litigation risk on recovering all costs, as permitted and directed by CERCLA. *Id.*; *see also supra* at 11. Accordingly, the value of the total recovery under the O&M CD ($52.6 million in work value + $4 million past costs payment, or $56.6 million) represents over 96% of the value of the liability for which the United States covenants not to sue the Settling Defendants and which could fairly be assigned to the Montrose Site ($52.6 million + $6.15 million = $58.75 million). For the DNAPL CD, the Settling Defendants will pay $340,000 of roughly $389,000 in unreimbursed past response costs at the DNAPL OU. EPA considered similar factors for the DNAPL CD. Ex. C (Wetmore Decl.) ¶ 24. For the DNAPL CD, the value of total recovery ($25 million in work + $340,000 in cash = $25.34 million) represents 99.8% of the value of the liability for which the United States covenants not to sue Settling Defendants. DTSC's compromises are equally appropriate. Taking into account the same factors that EPA considered, described above, DTSC decided that recovery of 79% of its past costs incurred at these OUs was appropriate and acceptable. Ex. F (Garrett Decl.) ¶¶ 9-10.

      B.    <u>The Consent Decrees Are Procedurally Fair</u>

As described above at page 12, a CERCLA consent decree is procedurally fair when negotiations were arm's-length and "full of adversarial vigor." It would be difficult to argue, in the context of a litigation that has spanned three decades and over 3000 docket entries, that the parties have not been sufficiently adverse. Negotiations of the O&M CD and DNAPL CD were lengthy, and the parties were

*United States and State of CA v Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decrees*

14

1  represented by experienced counsel and technical staff.  Ex. C (Wetmore Decl.)

2  ¶ 6; *see also* Ex. A (O&M CD) ¶ 100, Ex. B (DNAPL CD) ¶ 98.

3       Beyond the procedural fairness of the consent decrees themselves, EPA also

4  responded to public comment in both the Dual Site and DNAPL Records of

5  Decision, and also incorporated community comment at various points in its

6  management of the Site.  *See* discussion *supra* at 6, 8 and *infra* at 18, 24.

7       C.    The Consent Decrees Are Reasonable

8       As described above at page 13, a court addressing the reasonableness of a

9  CERCLA consent decree must first consider "the decree's likely efficaciousness as

10  a vehicle for cleansing the environment."  *Cannons II* at 89; *see also Calif. Dept. of*

11  *Toxic Substances Control v. Mid Valley Dev., Inc.*, 2011 WL 13366014, *1 (E.D.

12  Cal. 2011) ("In determining whether a settlement is reasonable, courts look to

13  whether the proposed settlement will be effective in ensuring a cleanup of the

14  property.") (citing *Cannons II* at 89-90).  The reviewing court should also consider

15  whether the consent decree "adequately compensates the public for the costs of

16  response and remediation" and the reasonableness of the decree in light of the

17  parties' relative positions in litigation.  *Cannons II* at 89; *Mid Valley Dev.* at *1.

18       Under the proposed decrees, Settling Defendants will fully perform and pay

19  for the cleanups that EPA has selected for the Chlorobenzene Plume and for the

20  DNAPL OU, and will pay all agency oversight costs associated with those

21  cleanups.  The Dual Site ROD and DNAPL ROD responded to all comments on

22  the adequacy of the relevant remedies.  For the O&M CD, many of the technical

23  issues regarding the remedy were already aired, addressed, and resolved by the

24  time of entry of the 2012 Construction CD and are reflected in that CD, which was

25  explicitly found by this Court to be fair, reasonable and consistent with CERCLA.

26  *See supra* at 4, 7.  EPA has also considered more recent information concerning

27  the performance of the Chlorobenzene Plume remedy, as discussed below at pages

28  17-20, and an independent five-year review completed in 2020 confirmed the

*United States and State of CA v Montrose Chemical
Corp. of California, et al.
Memorandum ISO Motion to Enter Consent Decrees*

15

continuing protectiveness of the selected remedy.  Ex. C (Wetmore Decl.) ¶¶ 20-21.  For the DNAPL CD, successful pilot testing has provided further support for EPA's selection in the DNAPL ROD of an electrical resistance heating and soil vapor extraction remedy, together with a protective land use covenant.  *See supra* at 8.  Because the proposed consent decrees provide for the Settling Defendants' performance of the entirety of the remedies for the Chlorobenzene Plume and for the DNAPL OU, the decrees are "efficacious vehicles" for implementing those cleanups.  *See Cannons II* at 89.  The Settling Defendants' commitment to fully perform and pay for these cleanups is appropriate given the litigation posture for these portions of the Site, as reflected in the Court's prior orders.  *See supra* at 4-5.

### D.   The Consent Decrees Are Consistent with CERCLA

CERCLA reflects Congress's conclusion that those who caused pollution, not the taxpayers, should shoulder the cost of cleaning up Superfund sites.  The statute explicitly favors settlement, especially where PRPs agree to perform work, and directs EPA to provide incentives for parties to settle.  *Cannons II*, 899 F.2d at 91-92 (citing 42 U.S.C. § 9613(f)(2)).  Both decrees are fully consistent with the three-fold purposes of CERCLA: (1) to remedy the effect of hazardous substances in the environment; (2) to ensure that the cost of those actions are borne to the extent possible by those who caused the releases and profited from them; and (3) to encourage settlement of CERCLA claims.  *Akzo Coatings*, 949 F.2d at 1418; *Cannons II*, 899 F.2d at 90-91; 42 U.S.C. §§ 9613(f), 9622(a).  Both decrees are also consistent with published EPA CERCLA model provisions.  *See supra* at 10.  The decrees preserve Plaintiffs' rights against Settling Defendants to sue under CERCLA for any matters other than the work and costs specifically addressed in the O&M CD and DNAPL CD, including other OUs at the Site.  *See supra* at 9, 10.  The decrees also provide for Settling Defendants to conduct studies, if requested, in support of EPA's five-year reviews to verify the remedies' continuing protectiveness.  Ex. A (O&M CD) ¶ 16; Ex. B (DNAPL CD) ¶ 13.

*United States and State of CA v Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decrees*

16

E.     Having Considered Public Comments on the O&M CD, the Plaintiffs Continue to Find It Fair, Reasonable, and Consistent with CERCLA.

Two comments were received on the O&M CD, submitted by the Del Amo Action Committee ("DAAC") and the Water Replenishment District of Southern California ("WRD").  Ex. D (DAAC comment); Ex. E (WRD comment).  These comments do not directly address the question of entry of the O&M CD.  Rather, they raise substantive issues concerning the cleanup decisions that EPA made regarding the Chlorobenzene Plume.[13]  This section of this Memorandum discusses the principal issues raised in these comments, grouped substantively, and is further supported by the Declaration of Cynthia Wetmore (Ex. C).

1.     Comments regarding adequacy or appropriateness of remedy.

a.     pCBSA and the Anti-Degradation Policy

Factual background relevant to comment:  One complexity presented in cleaning up Dual Site OU groundwater is the need to take into account a chemical known as para-chlorobenzene sulfonic acid ("pCBSA").  This substance occurs only in connection with DDT manufacturing, and is present in groundwater at the Dual Site.  *See* Ex. A (O&M CD), App. A (ROD) at II.2-2, 8-6. However, pCBSA

_____

[13] These comments largely address the merits of EPA's selected cleanup remedy (the 1999 Dual Site ROD), rather than the O&M CD itself.  The National Contingency Plan establishes a process for the public to comment on a proposed Superfund cleanup.  40 C.F.R. § 300.430(f)(3).  That process occurred here; the Dual Site ROD reviewed and responded to comments, including those by DAAC.  *See supra* n.9.  Judicial review of a remedial action itself pursuant to Section 113(h) of CERCLA, 42 U.S.C. § 9613(h), is available "only after [the] remedial action is actually completed."  *Alabama v. U.S. Envt'l Prot. Agency*, 871 F.2d 1548, 1557 (11th Cir. 1989); *Schalk v. Reilly*, 900 F.2d 1091, 1092 (7th Cir. 1990).  In contrast, the public comment period for consent decrees is intended for comments on "the proposed judgment."  42 U.S.C. § 9622(d)(2)(B).  Nevertheless, and without waiving these objections, the Plaintiffs have considered the comments in full, and here discuss the substance of those comments.

is not a CERCLA "hazardous substance," and there are no promulgated federal or California health-based standards for pCBSA. *Id*. Accordingly, EPA did not select a cleanup value for pCBSA as an "*in-situ* performance standard" for the Dual Site remedy. *Id*. at II.2-2, 8-6, 8-7, 12-23. That is, the 1999 Dual Site ROD does not require the cleanup of pCBSA in the aquifer. *Id*. However, the Dual Site ROD does set pCBSA limits related to reinjection of groundwater that has been removed from the aquifer: pCBSA may only be reinjected into the aquifer at a concentration of 25,000 parts per billion (ppb) or less. *Id*. EPA set this limit after considering a state agency request that EPA adopt a non-promulgated criterion of 25,000 ppb for reinjection, based on a toxicological study. *Id*.

No entity submitted comments on the 2012 Construction CD, which provided for the first stage of implementation of the Dual Site ROD, including the pCBSA provisions described above. ECF No. 2731-1 (Construction CD Memo) at 1. However, in 2014, following the Settling Defendants' commencement of construction of the groundwater treatment system, the Del Amo Action Committee ("DAAC") re-animated concerns about pCBSA and asked EPA and state agencies to re-examine the pCBSA aspects of the Chlorobenzene Plume groundwater remedy. The agencies agreed to do so. Ex. C (Wetmore Decl.) ¶ 15. EPA took DAAC's concerns seriously, even to the point of directing Montrose to postpone "functional testing" on the groundwater remedy, a decision that caused Montrose to raise a dispute with EPA under the Construction CD. *See* Letter from Cynthia Wetmore to Joseph Kelly, Jan. 30, 2015, attached as Ex. H; *see also* Ex. A (O&M CD) ¶ 91.

Over Montrose's objection, EPA conducted a formal analysis under California's Anti-Degradation Policy ("Policy") of the impacts of reinjecting

*United States and State of CA v Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decrees*

18

pCBSA.[14]  This analysis ("2017 analysis") was published on EPA's website, put
out for public comment (though there is no statutory requirement that EPA do so),
and issued in final form in 2017; it is attached to this Memorandum as Exhibit I.
The Policy seeks to maintain the high quality of certain water bodies in California
by preventing their degradation; nevertheless, discharge of some waste is
permissible when certain conditions are met.  Ex. I (2017 analysis), at i.  In the
performance of the Dual Site groundwater cleanup, pCBSA could potentially be
introduced into waters of California where it had not previously been present, such
that EPA concluded an analysis under the Policy was warranted.  After reviewing
updated information available at that time and conferring with the Los Angeles
Regional Water Quality Control Board, EPA concluded that reinjection of treated
water with up to 25,000 ppb pCBSA as specified in the ROD was consistent with
the Policy.  In this analysis, EPA determined that the 25,000 ppb limit for
reinjection remained protective of human health and the environment.  Ex. I (2017
analysis), at i and n.3 (describing 2015 Five-Year Review of protectiveness).
When it drafted the 2017 analysis, EPA used the working assumption that Settling
Defendants would be able to effectively operate the treatment system for the
Chlorobenzene Plume using only the westernmost of two wellfields, but also
stated: "This reinjection scheme will be monitored and evaluated to determine if
reliance on the western injection wellfield is effective, and if the system will
achieve the remedial action objectives set forth in the 1999 ROD."  *Id.* at iii.

  Following Montrose's resumption of functional testing and its submission of
modeling in 2018-2019, it became clear that the Settling Defendants might need to
use both the eastern and western wellfields to effectively perform the groundwater

---

[14] The Dual Site ROD had included the Policy as an "Applicable or Relevant and
Appropriate Requirement," but had not included an analysis under the Policy.  *See*
Ex. I (2017 analysis); Ex. A (O&M CD) App. A (ROD) at II.A-9.

*United States and State of CA v Montrose Chemical*
*Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decrees*

cleanup and comply with the Dual Site ROD.  Accordingly, again conferring with
the Regional Water Quality Control Board, EPA amended the 2017 Policy
analysis, publishing that amendment in October 2019.  *See* Ex. J (2019 amended
analysis), Executive Summary.  This amended analysis concludes that, under
appropriate conditions set forth in a publicly available 2019 Memorandum to File
("the Flowrate Memo") that clarifies the ROD, limited use of the eastern wellfield
(a) might be necessary to perform the cleanup, and thus in the public interest; and
(b) would be consistent with the Policy.  The Flowrate Memo sets a limit on the
extent to which the eastern wellfield may be used, thereby minimizing introduction
of pCBSA into waters where it would not otherwise be present.  Ex. A (O&M CD)
App. A (ROD), Flowrate Memo at 3-4.  A second independently conducted Five-
Year Review has since concluded that (1) the groundwater remedy is expected to
be protective of human health and the environment upon completion; (2) there is
no exposure to contaminated groundwater, and (3) there is no evidence of Dual
Site contamination intruding into indoor air.  Ex. C (Wetmore Decl.) ¶ 21 (citing
2020 Five-Year Review).[15]  The Settling Defendants have agreed in the proposed
O&M CD to withdraw the two disputes that they previously raised under the
Construction CD,[16] and commit in the O&M CD to perform the ROD consistent
with the Flowrate Memo.  Ex. A (O&M CD) ¶¶ 4 (definition of ROD), 6, 91.

---

[15] The ROD itself provides that during Five-Year Reviews, "EPA will re-evaluate
whether additional toxicological studies have been performed for pCBSA, assess
the extent of the pCBSA plume and make determinations as to whether the remedy
remains protective with respect to pCBSA."  Ex. A (O&M CD) App. A (ROD) at
II.12-24, 11-27.

[16] During the pendency of these disputes, then-Special Master John Francis Carroll
ordered Plaintiffs not to communicate directly with DAAC about the Site without
first inviting Montrose.  *See* ECF No. 2823-6, at 1; ECF No. 2823-7, at 8
(attachments to notice filed by Montrose).  Plaintiffs opposed this decision, which
Special Master Carroll later rescinded.  *Id.*

*United States and State of CA v Montrose Chemical
Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decrees*

20

Comments:  Both commenters raise concerns about pCBSA.  DAAC says: "**Re-injecting contaminated water from a Superfund Site into clean Groundwater is wrong.**  If we do not defend Antidegradation laws – We should throw in the towel and forget about Applicable or Relevant and Appropriate Requirements (ARARs) which would not be in the public interest."  DAAC also believes EPA should order Montrose to pay "costs associated with developing a standard for pCBSA in drinking water."  WRD expresses concern about reinjecting pCBSA at 25 mg/L [25,000 ppb, the standard requested by a state agency in the Dual Site ROD], when the state Office of Environmental Health Hazard Assessment proposed (in 2015) a 3 mg/L [3000 ppb] concentration in drinking water.  WRD also requests that the agency "hydraulically contain pCBSA."

Response:  EPA and DTSC agree that it is important to follow the Policy, which EPA selected as an Applicable or Relevant and Appropriate Requirement. Ex. A (O&M CD) App. A (ROD) at II.A-9.[17]  The agencies extensively evaluated the proposed remedy under the Policy; EPA published its analysis in 2017, then revised it in 2019 to reflect new information about the performance of the remedy. This process included several meetings with DAAC.  Ex. C (Wetmore Decl.) ¶¶ 15, 17.  The analysis reflects EPA's considered judgment, after consultation with state agencies and the public, that when the remedy requires extraction and treatment of pCBSA-containing groundwater from the aquifer, limited reinjection (at concentrations below 25,000 ppb) into wells where the treated groundwater can be re-captured to the greatest extent practicable (1) is appropriate, (2) is protective of human health and the environment, (3) limits migration of pCBSA to what is necessary to perform the groundwater cleanup, and (4) complies with the Policy.

---

[17] Montrose disputed EPA's decision to apply the Policy to pCBSA.  This dispute will be resolved by the entry of the O&M CD, in which Settling Defendants have agreed to implement the ROD as modified by the Flowrate Memo.  Ex. A (O&M CD), ¶¶ 4, 6, 91; *see also supra* at 20.

*United States and State of CA v Montrose Chemical Corp. of California, et al.
Memorandum ISO Motion to Enter Consent Decrees*

21

*See supra* at 19; see also Ex. I (2017 analysis) at 16, Ex. J (2019 amended analysis) at 2. This agency technical decisionmaking is entitled to judicial deference. *Cannons I*, 720 F. Supp. at 1035; *Randolph*, 736 F.2d at 529. The 3 mg/L (3000 ppb) concentration mentioned by WRD is not a promulgated standard; there is no federal or California promulgated standard for pCBSA, which is not a CERCLA hazardous substance. *See supra* at 18. Further, this non-promulgated concentration is a drinking water standard, not a reinjection standard. Pursuant to the Dual Site ROD, 25,000 ppb is the maximum concentration at which pCBSA may be *reinjected* into the groundwater aquifer. Modeling projects that reinjected water treated to 25,000 ppb will not reach drinking water wells for the duration of the remedy, and thus will not introduce *any* pCBSA into drinking water wells, let alone pCBSA above 3000 ppb. Ex. J (2019 amended analysis) at 16. EPA sampled seven nearby wells to test for pCBSA; all results were "nondetect." Ex. C (Wetmore Decl.) ¶ 21 (citing 2020 Five-Year Review). Developing drinking water standards is a governmental function, not one to be charged to a CERCLA party.

### b. TBA (*tert*-butyl alcohol)

<u>Comment</u>: DAAC mentions an additional chemical, TBA, saying that it "will not be adequately treated before reinjection according to the [ROD]."

<u>Response</u>: This comment does not relate to the reasonableness of the O&M CD. There is no federal or California drinking water standard for TBA, and the 1999 Dual Site ROD did not provide a TBA treatment standard; even so, this Court deemed the Construction CD fair, reasonable, and consistent with CERCLA, and the Construction CD is not before the Court on this motion. Nonetheless, Settling Defendants, at EPA's request, are monitoring the concentration of TBA in the aquifer and in effluent from the Chlorobenzene Plume treatment plant. All effluent concentrations have been non-detect to date. *See* Ex. C (Wetmore Decl.) ¶ 19.

*United States and State of CA v Montrose Chemical
Corp. of California, et al.
Memorandum ISO Motion to Enter Consent Decrees*

22

c.      TI Waiver Zone (Containment Zone)

<u>Comment</u>:  DAAC objects to the use of the TI Waiver Zone, calling it "***a
sacrifice zone***, where no attempt to remove cancer-causing chemicals will be
made," and asks that the zone be re-evaluated based on current technologies.
DAAC also expresses concern about potential exposure in people's homes who
live above the TI Waiver Zone, and in drinking water.

<u>Response</u>:  This comment has no bearing on the reasonableness of the O&M
CD.  The TI Waiver Zone has been part of the Dual Site ROD since 1999, and was
incorporated into the 2012 Construction CD, deemed by the Court to be fair,
reasonable, and consistent with CERCLA.  Every five years, pursuant to Section
121(c) of CERCLA, 42 U.S.C. § 9621(c), EPA analyzes whether the ROD's
standards remain protective of human health and the environment.  The latest five-
year review, completed in 2020, concludes that the remedy remains protective.
Ex. C (Wetmore Decl.) ¶ 21.  It is also not accurate that "no attempt to remove"
chemicals will be made within the TI waiver zone.  The DNAPL CD, which had
not yet been lodged when DAAC commented on the O&M CD, will clean up
mobile DNAPL, protecting the groundwater remedy and reducing a major source
of contamination that would otherwise enter the groundwater.  The contaminated
groundwater that will be contained within the TI Waiver Zone does not impact
residents who live above it.  Groundwater in the TI Waiver Zone is not a source of
drinking water.  EPA also conducted a vapor intrusion study, finding no impact on
residents' indoor air from vapor intrusion from groundwater.  Thus, neither the
drinking water nor the indoor air of residents living above the TI Waiver Zone is
affected by groundwater contamination.  Ex. C (Wetmore Decl.) ¶ 21.[18]

---

[18] DAAC also comments that the O&M CD Statement of Work ("SOW") needs "a
better definition of 'anticipated wastes,'" and raises a concern that Settling
Defendants might "skirt stringent CA Waste laws."  EPA and DTSC have included
appropriate waste shipment restrictions in the SOW.  Ex. C (Wetmore Decl.) ¶ 22.

*United States and State of CA v Montrose Chemical
Corp. of California, et al.
Memorandum ISO Motion to Enter Consent Decrees*

23

2.      Comments regarding the TCE and Benzene Plumes

Comments:  DAAC asks that the "identification of additional responsible parties needs to be completed" and states that these parties "need to be held accountable for the pollution they have caused."  WRD also asks EPA to increase its efforts regarding the Benzene and TCE parties, and describes benzene and TCE as "the two main constituents mentioned in the [O&M] CD."

Response:  This comment does not address the fairness or reasonableness of the O&M CD.  The O&M CD reflects the decision, made before entry of the Construction CD, to enter into separate agreements with the parties responsible for the Chlorobenzene, TCE, and Benzene Plumes.  WRD is incorrect in stating that the main constituents at issue in the O&M CD are benzene and TCE.  Rather, the O&M CD, like the Construction CD, is specifically limited to the Chlorobenzene Plume (including commingled contamination) and does not address the TCE and Benzene Plumes or affect Plaintiffs' rights to pursue the responsible parties for those plumes.  *See supra* at 7.  Plaintiffs agree that the PRPs for the TCE and Benzene Plumes should be held responsible, however, those entities are not defendants in this civil action.  Plaintiffs are separately pursuing those parties to perform or fund the cleanup of those plumes.  Ex. C (Wetmore Decl.) ¶ 11.

3.      Comments regarding community involvement and benefit

a.      DAAC comments

Comments:  DAAC raises several issues about community involvement.

Response: Many of these issues, such as involvement in five-year reviews, the location of information repositories, or the provision of technical assistance grants, are not comments on the O&M CD itself.  However, EPA recognizes the importance of community involvement and values the input of DAAC and other members of the public.  DAAC has been involved as a stakeholder at the Site since 1993, *see* Ex. A (O&M CD) Att. A (ROD) at II.3-1, and EPA hosts periodic public meetings to inform the public of Site-related news, *see* Ex. C (Wetmore Decl.)

*United States and State of CA v Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decrees*

24

¶ 17.  DAAC also asks "[w]hat… was secured for the benefit of the people living forever on top of" the TI waiver zone.  The O&M CD work will (1) clean up contamination outside the Containment Zone to drinking water standards and (2) contain contamination within that zone, preventing migration that could cause potential human exposure (such as exposure through drinking water). *See* Ex. C (Wetmore Decl.) ¶ 10.  Last, Plaintiffs agree with DAAC's comment that a previous Special Master should not have inhibited direct communication between EPA/DTSC and DAAC; this order is no longer in effect.  *See supra* n.16.

    b.    WRD comment

Comment:  WRD asks to "be copied on all work products… outlined in the Statement of Work."

Response:  Settling Defendant Montrose has sent WRD a letter indicating Montrose's willingness to provide WRD access to the Montrose groundwater document portal to permit WRD to access and download groundwater data as well as O&M CD work products uploaded by Montrose and its consultants.  *See* Letter from Kelly Richardson to Robb Whitaker, March 30, 2021, attached as Ex. K.

## VI.    CONCLUSION

The proposed consent decrees secure nearly $80 million worth of groundwater and DNAPL cleanup work that will effectively remediate hazardous substances, protect the health of the community and the environment, and put the responsibility for paying for cleanup with the parties responsible for the contamination.  The decrees reflect significant coordination and technical evaluation within and among the agencies, as well as careful consideration of the public interest and of public comments.  For these reasons, as well as those stated above and in the supporting declarations, the Plaintiffs request that the Court enter the O&M CD and DNAPL CD as fair, reasonable, and consistent with CERCLA.

*United States and State of CA v Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decrees*

25

Respectfully submitted,

JEAN E. WILLIAMS
Acting Assistant Attorney General
Environment & Natural Resources Division

Dated: April 7, 2021          / s /Deborah A. Gitin
DEBORAH A. GITIN
Patricia L. Hurst
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
Attorney for the United States of America

Dated: April 7, 2021          / s /Megan Hey
MEGAN HEY
Catherine Wieman
Deputy Attorneys General
California Attorney General's Office
Attorney for the State of California on behalf of
the California Department of Toxic Substances
Control

OF COUNSEL FOR THE UNITED STATES OF AMERICA:
Dustin Minor
Xiao Zhang
Assistant Regional Counsel
U.S. Environmental Protection Agency,
Region IX
75 Hawthorne Street
San Francisco, CA 94105

## ATTESTATION

I hereby attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized this filing.

Dated: April 7, 2021          / s /Deborah A. Gitin
DEBORAH A. GITIN

*United States and State of CA v Montrose Chemical*
*Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decrees*