JEAN E. WILLIAMS
Acting Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

DEBORAH A. GITIN (California Bar No. 284947)
PATRICIA L. HURST (DC Bar No. 438882)
Senior Counsel
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
450 Golden Gate Ave., Suite 07-6714
San Francisco, CA 94102
Telephone: (415) 744-6488
Fax: (415) 744-6476
Email: deborah.gitin@usdoj.gov
Attorney for Plaintiff United States of America
[Additional counsel listed on following page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF CALIFORNIA, <br><br> Plaintiffs, <br><br> v. <br><br> MONTROSE CHEMICAL CORP. OF CALIFORNIA, et al., <br><br> Defendants. | Case No. 2:90-cv-03122 DOC (GJSx) <br><br> **MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION TO ENTER PROPOSED CONSENT DECREE** <br><br> Hearing Date:  July 12, 2021[1] <br> Time:  8:30 a.m. <br> Location:  Courtroom 9D or via Zoom <br> Judge:  Hon. David O. Carter |

---

[1] This motion is unopposed, and the parties do not request a hearing.  If the Court should hold a hearing, Plaintiffs request that it be held via Zoom, as described in the Notice of Motion and Motion to which this Memorandum is attached.

ROB BONTA
  Attorney General of California
SARAH E. MORRISON
  Supervising Deputy Attorney General
CATHERINE WIEMAN (State Bar No. 222384)
catherine.wieman@doj.ca.gov
MEGAN HEY (State Bar No. 232345)
megan.hey@doj.ca.gov
  Deputy Attorneys General
300 South Spring Street, Suite 1702
Los Angeles, CA  90013
Telephone:  (213) 269-6344
Fax: (213) 297-2802
Attorneys for Plaintiff State of California, on behalf of California Department of Toxic Substances Control

# **TABLE OF CONTENTS**

I.      SUMMARY ...................................................................... 2

II.     BACKGROUND ................................................................ 3

        A.      Relevant Procedural Background ...................................... 3

        B.      The Montrose Site ...................................................... 4

        C.      The Settling Defendants ................................................ 5

        D.      The Southern Pathway OU ............................................ 5

III.    TERMS OF THE PROPOSED CONSENT DECREE ............................... 8

        A.      Work to be Performed .................................................. 8

        B.      Payment of Past and Future Costs .................................... 11

        C.      Other Terms ............................................................ 12

IV.     LEGAL STANDARD FOR ENTRY ............................................. 12

V.      ARGUMENT ................................................................... 13

        A.      The Southern Pathway Consent Decree is Substantively Fair ........ 13

        B.      The Southern Pathway Consent Decree Is Procedurally Fair.......... 15

        C.      The Southern Pathway Consent Decree Is Reasonable ................. 15

        D.      The Southern Pathway Consent Decree Is Consistent

                with CERCLA ....................................................... 16

        E.      Having Considered Public Comment on the CD, the Plaintiffs

        Continue to Find It Fair, Reasonable, and Consistent with CERCLA....... 17

VI.     CONCLUSION ................................................................. 24

*United States and State of CA v. Montrose Chemical*
*Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decree*

i

# TABLE OF AUTHORITIES

## Cases

*Calif. Dept. of Toxic Substances Control v. Mid Valley Dev., Inc.*,
    2011 WL 13366014 (E.D. Cal. 2011) ....................................................... 15

*Chubb Custom Ins. Co. v. Space Systems/Loral, Inc.*
    710 F.3d 946 (9th Cir. 2013) .................................................................. 13

*S.E.C. v. Randolph*, 736 F.2d 525 (9th Cir. 1984)........................................... 13, 18

*United States v. Akzo Coatings of Amer., Inc.*,
    949 F.2d 1409 (6th Cir. 1991) ............................................................. 13, 16

*United States v. Cannons Eng'g Corp. ("Cannons I")*,
    720 F. Supp. 1027 (D. Mass. 1989) ...................................................... 13, 18

*United States v. Cannons Eng'g Corp., ("Cannons II")*,
    899 F.2d 79 (1st Cir. 1990) .......................................... 12, 13, 15, 16

*United States v. Montrose Chem. Corp. of Calif.*,
    50 F.3d 741 (9th Cir. 1995) ................................................................ 12, 13

*United States v. Pac. Gas & Elec.*, 776 F. Supp. 2d 1007 (N.D. Cal. 2011) ....... 15

## Federal Statutes

42 U.S.C. §§ 9601 – 9675 ....................................................................................... 1

42 U.S.C. § 9604 ...................................................................................................... 2

42 U.S.C. § 9605 ................................................................................................... 5, 7

42 U.S.C. § 9607 ...................................................................................................... 3

42 U.S.C. § 9613 ................................................................................................. 12, 16

42 U.S.C. § 9621 ...................................................................................................... 9

42 U.S.C. § 9622 ............................................................................................. 1, 13, 16

## Federal Regulations

28 C.F.R. § 50.7 ....................................................................................................... 1

40 C.F.R. § 300.430 .......................................................................................... 2, 7, 8, 9

*United States and State of CA v. Montrose Chemical*
*Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decree*

ii

85 Fed. Reg. 14768 (Mar. 18, 2021) ........................................................................ 1

1    Plaintiffs, the United States of America, by authority of the Attorney

2 General of the United States, acting at the request of the United States

3 Environmental Protection Agency ("United States"), and the State of California, on

4 behalf of the Department of Toxic Substances Control ("DTSC"), request that the

5 Court enter the Partial Consent Decree (Montrose Superfund Site[2] – Historic

6 Stormwater Pathway South Operable Unit) lodged with this Court on March 12,

7 2021 (ECF No. 3054-1) (the "Southern Pathway CD" or "CD") pursuant to the

8 Comprehensive Environmental Response, Compensation, and Liability Act of

9 1980, as amended ("CERCLA"), 42 U.S.C. §§ 9601 – 9675.  The Southern

10 Pathway CD is attached to this Memorandum as Exhibit A.

11    Pursuant to 28 C.F.R. § 50.7 and 42 U.S.C. § 9622(d)(2), the Plaintiffs

12 published notice of the CD in the Federal Register, and accepted public comments

13 for 30 days.  86 Fed. Reg. 14768 (Mar. 18, 2021).  One comment was received,

14 which is attached as Exhibit B and is discussed below at pages 17 through 24.  The

15 proposed CD is fair, reasonable, and consistent with CERCLA, as described below.

16 Plaintiffs accordingly request that the Court enter the proposed CD by signing page

17 81 of the CD.  No hearing is required by statute, and the parties do not request oral

18 argument.

19

20 _____

21 [2] The Montrose Chemical Corp. Superfund Site ("Montrose Site" or "Site"),

22 located in Los Angeles County, contains the property where one of the largest
DDT manufacturing plants in the United States operated (the "Montrose Plant

23 Property" or "Stauffer Property," terms generally used interchangeably in
documents filed regarding the Site).  As is typical at Superfund sites, EPA has

24 divided the Montrose Site into discrete Operable Units ("OUs") to facilitate

25 organization of investigation and cleanup of the Site.  *See* Declaration of Michael

26 Schulman ("Schulman Decl."), attached to this Memorandum as Exhibit C, ¶ 9.
The Southern Pathway CD pertains to OU6, the "Historic Stormwater Pathway –

27 South Operable Unit," which is referred to in this motion as the "Southern Pathway

28 OU." *Id*.

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decree*

1

# I.     SUMMARY

The proposed CD commits Settling Defendants[3] to perform the Southern Pathway Remedial Investigation and Feasibility Study ("RI/FS"): a full investigation of DDT and other contamination in the Southern Pathway OU, and a full feasibility study of alternatives for remediating such contamination, as prescribed by CERCLA.  Settling Defendants will do so at their own expense, under EPA's direction and to EPA's specifications, with review and participation by DTSC.[4]  If contamination is found in the initial site investigation area, Settling Defendants are bound by the CD to perform and pay for further investigation until EPA deems the investigation complete.

Settling Defendants' liability for costs and work in this area of the Site has been vigorously contested in litigation and is the sole remaining liability issue that had been set for trial.  Nonetheless, the Plaintiffs have now secured Settling Defendants' commitment to perform and pay for the RI/FS, regardless of its extent, duration, and expense, subject only to certain specified limitations.  Entry of the CD would partially resolve the Plaintiffs' claims[5] in this civil action against

---

[3] The Settling Defendants are the remaining defendants to this litigation: Montrose Chemical Corporation of California ("Montrose"), Bayer CropScience, Inc. (successor to Aventis CropScience USA, Inc.) ("Bayer"), Stauffer Management Company LLC (successor to Atkemix Thirty-Seven, Inc.) ("Stauffer"), and TFCF America, Inc. (successor to Chris-Craft Industries, Inc.) ("TFCF").

[4] DTSC is the state agency responsible for supporting EPA in the development and oversight of remedial actions at the Site pursuant to Section 104 of CERCLA, 42 U.S.C. § 9604 (the "state CERCLA lead agency"), and has participated in that capacity in the Southern Pathway OU.  *See* Declaration of Willard Garrett ("Garrett Decl."), attached to this Memorandum as Exhibit D, ¶¶ 3, 5.

[5] This investigation is a required step in the CERCLA process, and is necessary for EPA to determine the appropriate ultimate cleanup for this portion of the Site.  *See* 40 C.F.R. § 300.430(a)(2) (National Contingency Plan for CERCLA); *see also infra* at 7.  The CD does not commit Settling Defendants to perform or pay for that yet-to-be-determined final cleanup, but neither does it release Settling Defendants

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decree*

2

Settling Defendants, which include all remaining defendants to this litigation, and would obviate the need for trial.

As part of their commitment, Settling Defendants will also incorporate data from pre-existing sampling performed by EPA and others in the Southern Pathway OU, and will pay $3.75 million to EPA and $250,000 to DTSC for previously incurred response costs primarily related to the Southern Pathway OU.  Again, these are costs that would be strongly disputed at trial: Settling Defendants contest both whether they are liable for those costs at all, and the amount of the costs. Under the CD, the Settling Defendants will also pay the United States' and DTSC's future costs of overseeing the investigation.  This is a highly beneficial agreement to the public given the circumstances of the litigation.  Entry of the CD will also serve judicial economy and stewardship of public resources, ending active litigation in a case that spans over three decades and three thousand docket events.

Under the deferential standard for judicial approval of CERCLA consent decrees, the CD is substantively and procedurally fair, reasonable, and consistent with CERCLA's purposes of having the potentially responsible parties perform and fund cleanup work, preferably through settlement.  Plaintiffs' conclusion that the CD is fair, reasonable, and consistent with CERCLA includes consideration of the single comment received, which is discussed below in Section V.E.

## II.   BACKGROUND

A.   Relevant Procedural Background

In December 1999, the Plaintiffs filed a Third Amended Complaint ("Complaint") pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607, seeking,

from liability for that cleanup.  Ex. A (CD) ¶¶ P, 66-67, 68.i, 68.k, 78.  If the investigation reveals contamination for which Settling Defendants are responsible, Plaintiffs will seek to enter into another consent decree with Settling Defendants to perform the cleanup; however, that issue will not be determined until after the investigation is complete.

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decree*

3

among other things, recovery of response costs in connection with releases of the pesticide dichloro-diphenyl-trichloroethane, commonly known as DDT, and of monochlorobenzene, one of the primary ingredients in DDT manufacturing.  ECF No. 1747.  Certain of these claims were resolved in a series of consent decrees entered in the 2000-2002 time period and in 2012.  *See* Ex. A (CD) ¶¶ B-G (summarizing previous consent decrees).  More recently, Plaintiffs and Settling Defendants have lodged two additional consent decrees with this Court, which are pending for the Court's consideration and approval.  ECF Nos. 2987-1 ("O&M CD"), 3050-1 ("DNAPL CD").

As acknowledged in the CD, this Court has already considered certain liability issues related to contamination emanating from the Montrose Site and has issued Orders on summary judgment (ECF Nos. 1922 and 2100)  In these Orders, the Court concluded that Settling Defendant Montrose and the predecessor corporations of Settling Defendants Bayer and Stauffer are jointly and severally liable for all costs of removal or remedial action incurred by the United States or DTSC with respect to the Stauffer Property.  Ex. A (CD) ¶ S.  However, liability in the Southern Pathway OU is disputed.  *Id*. ¶ N.  In 2019, the Plaintiffs had argued to the Court (Judge Klausner) that there was no present need to try issues concerning the Southern Pathway OU, because the Plaintiffs had not pled that area in their complaint, and because that area had not yet been fully investigated and sampled, and therefore EPA had not yet selected a remedial cleanup action for that portion of the Site.  ECF No. 2821 (Joint Status Report, Aug. 8, 2019), at 8. However, the Court disagreed, and the case was set for a bench trial.

### B.    The Montrose Site

Settling Defendant Montrose manufactured DDT from 1947 until 1982 at its plant located at 20201 Normandie Avenue, Los Angeles, near the City of Torrance (the "Montrose Plant").  ECF No. 1922 (Order on Partial Summary Judgment) ¶¶ 1-2; ECF No. 3055-1 (Plaintiffs' Memorandum in Support of Unopposed

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decree*

4

Motion to Enter Proposed Consent Decrees), Ex. G, at 1-1, 1-6.  After DDT was banned in the United States in 1972, Montrose continued to produce DDT for export until 1982.  *Id.* at 1-8.  After Montrose ceased operations, the plant was disassembled and removed from the property and the majority of the property was paved with asphalt.  *Id.*  Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Montrose Site on the National Priorities List ("NPL") of Superfund sites in 1989.  *See* Ex. A (CD) ¶ L.

      C.     <u>The Settling Defendants</u>

      Settling Defendant **Montrose** was the operator of the Montrose Plant at the time of disposal of DDT and chlorobenzene.  ECF No. 1922 (Order on Partial Summary Judgment), ¶ 27.  Settling Defendant **Stauffer** is the successor to the company held liable as the current owner of the "Stauffer Property" on which the Montrose Plant was located.  *Id.* ¶ 26 (liability of Atkemix Thirty-Seven, Inc.); Ex. A (CD) ¶ S (successorship).  Settling Defendant **Bayer** is the successor to the former owner – the owner at the time of disposal – of the Stauffer Property.  ECF No. 1922 ¶¶ 6, 28 (liability of Aventis CropScience USA, Inc.); Ex. A (CD) ¶ S (successorship).  Settling Defendant **TFCF** is the successor to a parent company of Montrose, which Plaintiffs contend is directly liable as a former operator at the Site; TFCF's liability has not been adjudicated.  ECF No. 2932 (Joint Status Report, Feb. 20, 2020), at 8 (liability of Chris-Craft Industries, Inc.); *id.* at 3 (successorship).

      D.     <u>The Southern Pathway OU</u>

      The Southern Pathway OU is an area containing contaminated soils at the Site that begins south of Torrance Boulevard, less than one-half mile southeast of the Montrose Plant Property.  Ex. C (Schulman Decl.) ¶ 9.  The Southern Pathway OU includes portions of a property formerly occupied by Ecology Control Industries, Inc. (the "ECI Property" or "ECI"); seven adjacent residences (the "Residential Properties"); the former Royal Boulevard Landfill; a downgradient

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decree*

5

area (the "Site Investigation Area") beginning outside that landfill and extending to the intersection of Torrance Boulevard and South Vermont Avenue; and the segment between South Vermont Avenue and the Dominguez Channel.  Ex. A (CD) ¶¶ N, 4 (definition of "Southern Pathway OU"); *id.* App. A (general Site map); *id.* App. B (Statement of Work for CD) at 20 (descriptions of "Historic Stormwater Pathway South" and "Site Investigation Area"); *id.* at 21 (Fig. 1) (Southern Pathway OU map).

The Southern Pathway OU drained surface water from the Montrose Plant Property and surrounding areas south of Torrance Boulevard to the Dominguez Channel through natural sloughs, ponds, and drainages beginning in the 1940s. Ex. A (CD) ¶ N.  Over time, this historic stormwater pathway was replaced by modern stormwater infrastructure, including culverts and concrete channels.  This infrastructure work was completed in the early 1970s.  *Id.*  The parties agree that hazardous substances, including DDT, have been found at the ECI Property and the adjacent Residential Properties within the Southern Pathway OU, though they disagree as to whether the Montrose Plant Property is the source of that contamination.  *Id.*

EPA has already performed or overseen investigation work, with support from DTSC, in a portion of the Southern Pathway OU, including extensive soil sampling at the ECI Property and the adjacent Residential Properties as well as human health risk assessments and ecological risk assessments.  *Id.*; *see also id.* App. B (Statement of Work) at 2, 7, 8.  The Plaintiffs' claims at trial for $3,562,950.24 in United States response costs and $234,133.38 in DTSC response costs include the unreimbursed response costs that Plaintiffs have incurred in performing this work and related actions at the Southern Pathway OU.[6]  *See* ECF

---

[6] The past costs amounts recovered in the CD exceed the amounts claimed at trial; the CD also resolves certain costs not sought at trial.  *See infra* at 14 and n.9.

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decree*

No. 2991 (Memorandum in Support of U.S. Motion for Summary Judgment), at 11-12; ECF 2991-1 (Statement of Undisputed Facts in support of same) ¶¶ 124-126; ECF 2991-13 (Declaration of Wiley Wright in support of same) ¶ 4; Ex. C (Schulman Decl.) ¶ 21; Ex. D (Garrett Decl.) ¶ 7.

However, extensive investigation work has not yet occurred further downgradient in the Southern Pathway OU.  Ex. A (CD) ¶ N.  Accordingly, the next step in the CERCLA process is the completion of a Remedial Investigation and Feasibility Study ("RI/FS") for the Southern Pathway OU, which will incorporate data from previous investigations around the ECI Property and adjacent Residential Properties, as well as the previous human health risk assessments and ecological risk assessments, and will perform the necessary investigation and sampling further downstream in the Southern Pathway OU.

An RI/FS is a required step in EPA's CERCLA process for selecting a cleanup remedy for a portion of a Superfund site.  Either EPA or potentially responsible parties can perform an RI/FS, but as with all CERCLA work, there is a preference for responsible parties to perform and fund the RI/FS under EPA's supervision.  *See* EPA, OSWER Directive 9200.2-109, *Promoting Enforcement First for Remedial Investigation/Feasibility Studies at Superfund Sites* (Mar. 20, 2012), available at https://www.epa.gov/enforcement/guidance-promoting-enforcement-first-rifs-superfund-sites; *see also infra* at 13.  The National Contingency Plan ("NCP"), promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605 and codified at 40 C.F.R. Part 300, explains that the purpose of the RI/FS "is to assess site conditions and evaluate alternatives to the extent necessary to select a remedy." 40 C.F.R. § 300.430(a)(2).  The NCP goes on to discuss the two phases, the remedial investigation and the feasibility study:

> *Remedial investigation.* (1) The purpose of the remedial investigation (RI) is to collect data necessary to adequately characterize the site for the purpose of developing and evaluating effective remedial

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decree*

7

1          alternatives.

2          *Feasibility study*. (1) The primary objective of the feasibility study

3          (FS) is to ensure that appropriate remedial alternatives are developed

4          and evaluated such that relevant information concerning the remedial

5          action options can be presented to a decision-maker and an

6          appropriate remedy selected.

7 *Id.* 300.430(d), (e).

8         Following completion of an RI/FS, EPA develops a "Proposed Plan," puts

9 that plan out for public comment, and, after considering any comments, prepares a

10 Record of Decision selecting and describing the needed cleanup.  40 C.F.R.

11 § 300.430(f).  In the case of the Southern Pathway OU, the parties intend to pursue

12 a cooperative resolution of the cleanup once the RI/FS has been completed and

13 EPA selects any remedy necessary and documents it in a Record of Decision.

14 Ex. A (CD) ¶ P.

15            **III.    TERMS OF THE PROPOSED CONSENT DECREE**

16     The Southern Pathway CD commits Settling Defendants to perform the RI/FS

17 and pay the associated past and future costs incurred by EPA and DTSC.

18        A.     <u>Work to be Performed</u>

19        Settling Defendants will perform the RI/FS in order to determine the nature

20 and extent of DDT and other contamination in the unstudied portions of the

21 Southern Pathway OU, to assess risks to human health and the environment, and to

22 evaluate alternatives for remedying the contamination:

23          The RI shall consist of collecting data to characterize site conditions,

24          determining the nature and extent of the contamination at or from the

25          Southern Pathway OU, assessing risk to human health and the

26          environment in the Southern Pathway OU, and conducting treatability

27          testing as necessary to evaluate the potential performance and cost of

28          the treatment technologies that may be considered. The FS shall

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decree*

8

determine and evaluate (based on treatability testing, where appropriate) alternatives for Remedial Action, if any, to prevent, mitigate, or otherwise respond to or remedy the release or threatened release of hazardous substances, pollutants, or contaminants at or from the Southern Pathway OU. The alternatives evaluated must include, but shall not be limited to, the range of alternatives described in the NCP, 40 C.F.R. § 300.430(e) and shall include remedial actions that use permanent solutions and alternative treatment technologies or resource recovery technologies to the maximum extent practicable. In evaluating the alternatives, Settling Defendants shall address the factors required to be taken into account by Section 121 of CERCLA, 42 U.S.C. § 9621, and 40 C.F.R. § 300.430(e).

Ex. A ¶ (CD) 10.b.  The RI/FS includes the incorporation and analysis of data from pre-existing investigations, *see supra* at 7, and the performance of the remaining investigation needed.

The scope of this investigation will be determined by the criteria above, and is further described in the CD and its associated Statement of Work.  Ex. A (CD) ¶¶ 6, 10-11; *id.* App. B (Statement of Work).  Initially, Settling Defendants will perform a field site investigation in an area referred to as the Site Investigation Area.  This area consists of 34 residential properties between the former Royal Boulevard Landfill and the intersection of South Vermont Avenue and Torrance Boulevard.  *Id.* App. B at 21-22 and Fig. 2.  The area represents the estimated extent of the former slough area where contamination in stormwater would be most likely to have been deposited prior to the installation of modern infrastructure, as described in the declaration of Michael Schulman, EPA's Remedial Project Manager for the Southern Pathway OU, attached to this Memorandum as Exhibit C.  Ex. C (Schulman Decl.) ¶¶ 12-14; *see also* Ex. A (CD) ¶ N.  Settling Defendants commit to perform sampling in all 34 residential parcels in the Site

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decree*

9

Investigation Area.  Ex. A, App. B (Statement of Work) at 24-25.  In the event that one or more residents does not wish to provide access, EPA may require replacement borings nearby for sampling, so that the area within the footprint of the former slough area can be characterized.  *Id.*

In each parcel, Settling Defendants shall initially advance one soil boring from the ground surface down to various depths, taking soil samples to test for various contaminants at all relevant depths.  *Id.* at 23.  In all parcels, Settling Defendants shall take samples at depths of 0.5, 2.5, 5.0, 7.5, and 10 feet below ground surface; in 28 of the 34 parcels, they will further sample to the depth at which "native" Southern Pathway OU soil appears, whatever that depth may be, in order to confirm that the full depth range at which DDT may have been deposited in the Southern Pathway OU has been sampled.  *Id.*  In addition to analyzing soil samples taken at the specified depths, Settling Defendants must also analyze any "white material" observed within the boring that could be suspected to be DDT, regardless of the depth at which the white material occurs.  *Id.*  Settling Defendants must also analyze soil samples if other suspected contaminants are observed, at whatever depth they are encountered.  *Id.* at 24.  This initial sampling scope consists of 198 soil samples (34 borings with 5-6 samples per boring), analyzed for a broad range of contaminants: not only for DDT and its metabolites, which are associated with operations at the Montrose Site, but also for other pesticides and polychlorinated biphenyls and (at most depths) for volatile organic compounds and petroleum hydrocarbons.  *Id.* at 23-24.  The investigation includes contaminants not specifically linked with the Montrose Site, in order to assess the nature and extent of contamination and the risk to human health and the environment.[7]

---

[7] Though Settling Defendants bear the cost of all sampling and almost all analysis, EPA has agreed to pay for analysis of samples of certain contaminants that are not expected to have resulted from operations at the Montrose Plant.  Ex. A (CD) App. B (Statement of Work) at 23-24.  In addition, if EPA should in the future wish to

*United States and State of CA v. Montrose Chemical
Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decree*

10

If, and only if, *every* one of those soil samples tested, each of which is analyzed for many contaminants, shows *no* contamination above screening levels for *any* contaminant ("Endpoint Criteria"), then fieldwork shall be deemed complete after sampling and analysis of the estimated 198 soil samples is complete.  In that event, Settling Defendants shall proceed to complete a remedial investigation report, feasibility study report, and human health risk assessment based on that fieldwork and the extensive previous data collected elsewhere in the Southern Pathway OU.  *Id.* at 25-26; *see also* Ex. A (CD) ¶ 10.d.(2)(a).  If *any* contamination above Endpoint Criteria is found in even *one* soil sample for DDT, related contaminants, or other specified contaminants, then EPA can require Settling Defendants to continue the site investigation, completing additional fieldwork to EPA's satisfaction until the goals of the RI are met.  Ex. A (CD) ¶ 10.d.(2)(b).  Such additional fieldwork may be required either within or beyond the footprint of the Site Investigation Area.  *Id.; id.* App. B (Statement of Work) at 25.

The net present value of the initial investigation that will be performed in the Site Investigation Area is estimated at $518,000, but the Settling Defendants will perform the entirety of the CD's Work regardless of its cost and regardless of whether it ultimately extends beyond the Site Investigation Area.  Ex. A (CD) ¶¶ 6, 10-11, 25; *id.* App. B (Statement of Work) at 2-3, 20, 23-25.

B.     Payment of Past and Future Costs

The CD recovers $3,750,000 in previously unreimbursed EPA past response costs, and $250,000 in previously unreimbursed DTSC past response costs, related

---

conduct sampling in capped or excavated landfills within the Southern Pathway geographical area, Settling Defendants are not required to pay for such sampling, but must still incorporate any data from such sampling into the RI/FS.  Ex. A (CD) ¶ 10.d.(1); *id.* App. B (Statement of Work) at 26-27.

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decree*

11

primarily to the Southern Pathway OU.  Ex. A (CD) ¶¶ 34.a, 34.c.  The Settling Defendants will also pay the costs of EPA and DTSC oversight of the Work.  *Id.* ¶¶ 35, 36.

C.     Other Terms

Other provisions of the CD generally track standard language from EPA's published model consent decree for Remedial Design / Remedial Action, https://cfpub.epa.gov/compliance/models/view.cfm?model_ID=81, prior versions of that model, or EPA's published model Administrative Order on Consent for RI/FS work, https://cfpub.epa.gov/compliance/models/view.cfm?model_ID=792. The only "matters addressed" by the CD are the Work performed, the specified past response costs, and the future oversight costs.  Ex. A (CD) ¶ 78.  The Settling Defendants receive covenants not to sue from the United States and DTSC only for these specified matters, and subject to various reservations of rights.  *Id.* ¶¶ 66-68. As CERCLA provides, the Settling Defendants also receive statutory contribution protection from claims by other parties regarding these "matters addressed."  42 U.S.C. § 9613(f)(2); Ex. A (CD) ¶ 78.  They do not receive a covenant not to sue or contribution protection for any other OU at the Site.  *Id.* ¶¶ 68.i, 68.k, 78.

Other standard terms include financial assurance to guarantee performance of the remedy (Section X of the CD); stipulated penalties for CD violations (Section XVII); requirements for records retention (Section XXII); and Site-wide waivers of *res judicata*, claim-splitting, and other related defenses (Section XX).

## IV.   LEGAL STANDARD FOR ENTRY

The standard for approval of a CERCLA federal settlement is whether it is "reasonable, fair, and consistent with the purposes that CERCLA is intended to serve," as the Ninth Circuit has held in this very case.  *United States v. Montrose Chem. Corp. of Calif.*, 50 F.3d 741, 743 (9th Cir. 1995) (quoting *United States v. Cannons Eng'g Corp.*, 899 F.2d 79 (1st Cir. 1990) (*"Cannons II"*), and legislative history) (internal quotations omitted).  Approval of a settlement is committed to the

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decree*

12

informed discretion of the district court.  *S.E.C. v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984).  Such discretion should be "exercised in light of the strong policy in favor of voluntary settlement of litigation."  *United States v. Cannons Eng'g Corp. ("Cannons I")*, 720 F. Supp. 1027, 1035 (D. Mass. 1989), *aff'd, Cannons II*, 899 F.2d 79; *see also Randolph*, 736 F.2d at 529.  CERCLA has explicit provisions favoring settlement, especially settlements in which potentially responsible parties agree to perform work.  42 U.S.C. §§ 9622(a), 9622(d)(1); *see also Chubb Custom Ins. Co. v. Space Systems/Loral, Inc.* 710 F.3d 946, 971 (9th Cir. 2013).

Courts defer to agency expertise when reviewing a proposed settlement.  *Cannons I*, 720 F. Supp. at 1035; *Randolph*, 736 F.2d at 529.  That deference is "strengthened when a government agency charged with protecting the public interest 'has pulled the laboring oar in constructing the proposed settlement,'" as the Department of Justice, EPA, and DTSC have done here.  *Montrose*, 50 F.3d at 746 (quoting *Cannons II*, 899 F.2d at 84).

For a more detailed discussion of the legal standard for entry, see Plaintiffs' Memorandum in Support of Unopposed Motion to Enter Proposed Consent Decrees (the "DNAPL CD" and "O&M CD"), ECF No. 3055-1 (Apr. 7, 2021).

## V.    ARGUMENT

### A.    The Southern Pathway Consent Decree is Substantively Fair

The paramount aspect of substantive fairness is fairness to the public. *United States v. Akzo Coatings of Amer., Inc.*, 949 F.2d 1409, 1435 (6th Cir. 1991).  Here, where the RI/FS work is performed and guaranteed at the Settling Defendants' expense, the decree is fair to the public.  Settling Defendants are making an open-ended commitment to complete the RI/FS work regardless of its cost.  *See supra* at 11.  The Settling Defendants do not receive covenants for the Site as a whole, or for any OU at the Site other than those at which they are performing work.  Rather, they receive a covenant only for the work performed.  *See supra* at 12.  The Settling Defendants comprise all remaining defendants to this litigation.

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decree*

13

The Settling Defendants are also paying $4 million in past response costs to EPA and DTSC ($3.75 million to EPA and $250,000 to DTSC), as well as all future response costs EPA and DTSC incur in overseeing the work performed. The past response costs payments are substantively fair.  The $3.75 million paid to EPA exceeds the past response costs the United States sought in litigation (approximately $3.56 million in non-litigation response costs, plus $113,000 for two months of Department of Justice litigation costs)[8], though it also resolves an additional category of "OU-00" Site-wide costs not associated with any specific OU[9], and resolves Southern Pathway OU litigation costs (which have not been formally calculated) through December 15, 2020.  *See* Ex. C (Schulman Decl.) ¶ 21; Ex. A (CD) ¶ 4 (definitions of EPA and DTSC Past Response Costs).  In determining that $3.75 million was an acceptable compromise, EPA took into account factors such as Settling Defendants' performance of open-ended RI/FS work, CERCLA's policy of encouraging settlement, and litigation risk on recovering all costs, as permitted and directed by CERCLA.  Ex. C (Schulman Decl.) ¶ 21; *see also supra* at 13.  This recovery is particularly robust given the unusual procedural posture of the previously set trial, where Plaintiffs had been required by the Court (then Judge Klausner) to proceed to trial on Southern Pathway OU liability and costs before completing the Southern Pathway OU investigation.  *See supra* at 4.  DTSC's compromise of costs is equally appropriate.  Taking into account the same factors that EPA considered, DTSC decided that recovery of $250,000 in past costs incurred at this OU was appropriate and

---

[8] At trial, the United States sought only two months (September and October 2019) of litigation costs, because the discovery cutoff in effect at the time Judge Klausner initially set for a bench trial did not permit development and presentation of later-incurred costs.

[9] EPA had initially calculated the "OU-00" category of costs as $402,180.  Ex. C (Schulman Decl.) ¶ 21.

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decree*

14

acceptable, especially given the recovery of future oversight costs under the CD and the Settling Defendants' funding of the RI/FS.  Ex. D (Garrett Decl.) ¶ 7.

B.    The Southern Pathway Consent Decree Is Procedurally Fair

A CERCLA consent decree is procedurally fair when negotiations were arm's-length and "full of adversarial vigor."  *United States v. Pac. Gas & Elec.*, 776 F. Supp. 2d 1007, 1025 (N.D. Cal. 2011) (citation omitted).  It would be difficult to argue, in the context of a litigation that has spanned three decades and over 3000 docket entries and has been on the brink of trial regarding the portion of the Site at issue in the CD, that the parties have not been adverse.  Negotiations were lengthy, and the parties were represented by experienced counsel and technical staff.  Ex. C (Schulman Decl.) ¶ 7; Ex. A (CD) ¶ 91.

C.    The Southern Pathway Consent Decree Is Reasonable

A court addressing the reasonableness of a CERCLA consent decree must first consider "the decree's likely efficaciousness as a vehicle for cleansing the environment."  *Cannons II*, 899 F.2d at 89; *see also Calif. Dept. of Toxic Substances Control v. Mid Valley Dev., Inc.*, 2011 WL 13366014, *1 (E.D. Cal. 2011) (citing *Cannons II*, 899 F.2d at 89-90).  The reviewing court should also consider whether the consent decree "adequately compensates the public for the costs of response and remediation" and the reasonableness of the decree in light of the parties' relative positions in litigation.  *Cannons II*, 899 F.2d at 89; *Mid Valley Dev.* at *1.

Under the proposed CD, Settling Defendants will fully perform the RI/FS investigation, regardless of its extent or duration: the investigation will follow where the data lead.  Settling Defendants will also pay all agency oversight costs associated with the RI/FS.  Settling Defendants must perform the investigation to EPA's satisfaction, with concurrence by DTSC; EPA's decision-making in that regard will be guided by the National Contingency Plan, the purposes of the RI/FS, and EPA's analysis, in consultation with DTSC, of the data collected.  In preparing

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decree*

15

the RI/FS Statement of Work, EPA's experienced Remedial Project Manager reviewed existing data in the Southern Pathway OU and consulted with the DTSC project manager and with many other offices within EPA.  Ex. C (Schulman Decl.) ¶ 6.  Settling Defendants' commitment to fully perform the RI/FS, at their own expense except for specifically enumerated exceptions, *see supra* n.7, is very favorable given the litigation posture for this portion of the Site.  *See supra* at 2-3; *see also* ECF No. 2999 (Montrose's Opposition to U.S. Motion for Summary Judgment, Sept. 25, 2020), at 21-23, 2-3 and *passim* (contesting costs as well as liability).  Most importantly, the open-ended nature of the investigation unless specific Endpoint Criteria are met for **all** DDT-related contaminants at **all** samples, and the consideration of all appropriate remedial alternatives in the Feasibility Study, protect the public interest, and Plaintiffs' interests, in protecting human health and the environment.  Ex. A (CD) ¶¶ 10.b, 10.d.(2)(a), 10.d.(2)(b); *id.* App. B (Statement of Work) at 25-26; *see also supra* at 11.

      D.     <u>The Southern Pathway Consent Decree Is Consistent with CERCLA</u>

      CERCLA reflects Congress's conclusion that those who caused pollution – not the taxpayers – should shoulder the cost of performing cleanup work at Superfund sites.  The statute explicitly favors settlement, especially where potentially responsible parties agree to perform work, and directs EPA to provide incentives for parties to settle.  *Cannons II*, 899 F.2d at 91-92 (citing 42 U.S.C. § 9613(f)(2)).  The CD is fully consistent with the three-fold purposes of CERCLA: (1) to remedy the effect of hazardous substances in the environment; (2) to ensure that the cost of those actions are borne to the extent possible by those who caused the releases and profited from them; and (3) to encourage settlement of CERCLA claims.  *Akzo Coatings*, 949 F.2d at 1418; *Cannons II*, 899 F.2d at 90-91; 42 U.S.C. §§ 9613(f), 9622(a).  Moreover, the CD is consistent with the National Contingency Plan's directives regarding Remedial Investigations and Feasibility Studies.  *See supra* at 7-8.  The CD is also consistent with published

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decree*

16

EPA CERCLA model provisions.  *See supra* at 12.  The CD also preserves Plaintiffs' rights against Settling Defendants to sue under CERCLA for any matters other than the work and costs specifically addressed in the CD, including the final cleanup of the Southern Pathway OU, and including all other OUs at the Site.  *See id*.  Last, the CD clearly furthers settlement, as its entry will allow resolution of the active litigation in this case.

E.    Having Considered Public Comment on the CD, the Plaintiffs Continue to Find It Fair, Reasonable, and Consistent with CERCLA

One comment letter was received on the CD, from the Del Amo Action Committee ("DAAC"); it is attached as Exhibit B.  The following section discusses the principal issues raised in this comment, grouped substantively, and is further supported by the Declaration of Michael Schulman (Ex. C).

1.    Comments regarding adequacy and scope of RI/FS

Comment:  DAAC states several concerns about the scope of the RI.  First, DAAC asks why 34 parcels, rather than 56, were included in the initial Site Investigation Area for the RI, mentioning that the "drainage area ran across what are now the backyards of homes all along 209th Street."  Second, DAAC objects to the scope being "narrowed even further by requiring only one boring per yard; with a step out if they do detect a needle in the haystack."  DAAC states that this plan "cannot detect all of the DDT found under residents' homes," and adds "What if the single boring hits the edge of a zone of contamination but much higher concentrations are hidden 10 feet away?"  DAAC suggests that EPA consider the "ITRC literature on Incremental Sampling Methodology" and that "surface sampling" be conducted.  Third, DAAC also raises concerns about whether the investigation will be sufficient if some residents do not grant access to their yards.

Response:  As described below, EPA came to its decisions about the scope of the RI through application of technical expertise and review of the existing data and evidence, after consultation with DTSC and with several offices within EPA.

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decree*

17

Such agency technical decision-making is entitled to judicial deference. *Cannons I*, 720 F. Supp. at 1035; *Randolph*, 736 F.2d at 529.  Plaintiffs provide the following specific responses to DAAC's concerns about the scope of the RI.

   **a.     Number of yards in initial Site Investigation Area:**  The 34 parcels chosen for the initial Site Investigation Area represent the estimated extent of the former slough area west of the historic Torrance Boulevard and South Vermont Avenue interchange, where contamination in stormwater would be most likely to have been deposited within the previously uninvestigated areas of the Southern Pathway OU.  Ex. C (Schulman Decl.) ¶ 12.  EPA determined the estimated extent of the former slough area based on the following: historic aerial photographs, showing ponding and flooding, from the 1940s to 1960s (the period when the Montrose Plant was operating but before modern stormwater infrastructure); historic United States Geological Survey topographic maps; input from EPA technical staff; review of the previous investigations within the Southern Pathway OU; and expert witness reports prepared for the litigation.  *Id.* ¶ 13.  The 34 parcels within the Site Investigation Area align well with the map that DAAC includes with its comment.  Ex. B (DAAC comment), Attachment B.  The 34 boring locations include all but one of the orange-shaded parcels on that map, as well as sixteen additional parcels.  Ex. C (Schulman Decl.) ¶ 16.  (The pink-shaded parcels on that map are the ECI-adjacent Residential Properties that have already been sampled under EPA oversight, as indicated on that map, *id.*)  As described above at page 11, if any contamination is found above conservative Endpoint Criteria in any sample in the initial Site Investigation Area, EPA may direct that additional sampling be performed elsewhere, beyond the 34 parcels, to characterize the nature and extent of the contamination and the risks to human health and the environment.

   **b.     Initial sampling of one boring per yard**:  Plaintiffs disagree with DAAC's assertion that taking one boring per yard might somehow miss ***all*** contamination within the Site Investigation Area and produce a "false negative."

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decree*

18

The Statement of Work for the RI/FS contains layers of protection against a false negative.  First, in each boring, a minimum of five to six soil samples will be tested and analyzed from multiple depths (including "surface sampling," as suggested by DAAC) and for multiple contaminants, reducing the likelihood that any given boring will miss contamination.  Second, the likelihood of a "false negative" is greatly lessened by the structure of the Endpoint Criteria:  it is only if *no* contamination above those criteria is found in any of the initial approximately 198 samples throughout the initial Site Investigation Area that the investigation will be limited to just those samples.  If contamination is found in any sample, then EPA can require additional sampling to further delineate the nature and risks of the contamination; such sampling may include sampling within those 34 parcels or beyond them.  Ex. A (CD) App. B (Statement of Work) at 23-25; *see also supra* at 11.

DAAC also refers to the ITRC literature on incremental sampling methodology as an alternative soil sampling approach.  Incremental sampling methodology involves collecting many separate soil samples and blending them together to create a single composite sample, which would provide an average contaminant concentration.  Ex. C (Schulman Decl.) ¶ 19.  In this context, composite averaging could allow a high contamination finding in a single sample to be masked by a lower average contamination value.  *Id.*  In contrast, EPA's selected methodology means that if *any* one soil sample at any depth shows contamination above Endpoint Criteria, the investigation may not be limited to the initial sampling.

    **c.**    **Access**:  Last, DAAC's concern about what would happen in the event a resident refuses access for sampling is addressed by the Statement of Work, which provides for replacement borings to be taken, at location(s) approved by EPA, if one or more residents within the 34 parcels does not allow access.  Ex. A (CD) App. B (Statement of Work) at 24-25.

*United States and State of CA v. Montrose Chemical
Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decree*

19

1    Comment: DAAC asks that the RI workplan "include Kenwood Ave., the
2    ECI property, the seven adjacent properties to ECI and the Royal Blvd. Landfill
3    regardless of who pays."  DAAC requests a "complete and through [sic]
4    investigation of the whole 'Historical Stormwater Pathway South-OU6'" be
5    conducted.  DAAC states that the workplan outlined in the CD "will not ensure
6    that if there is contamination on any of these properties that it would be found."

7    Response: The RI/FS **does** require Settling Defendants to incorporate the
8    findings at the ECI Property and the seven adjacent Residential Properties, where
9    EPA has performed or overseen extensive sampling, as well as sampling
10   previously done in the Royal Boulevard Landfill.  Ex. A (CD) App. B (Statement
11   of Work) at 3, 7, 20, 21.  (The RI workplan for the Southern Pathway OU does not
12   include Kenwood Avenue because Kenwood Avenue is not within that OU.  Ex. C
13   (Schulman Decl.) ¶ 9.)  The RI/FS then proceeds to require sampling in the Site
14   Investigation Area, which has not previously been sampled.  *See supra* at 7, 9.
15   Last, if contamination is found in the Site Investigation Area, EPA may require
16   further sampling in the Southern Pathway OU within and/or beyond the Site
17   Investigation Area.  *See supra* at 11.

18   Comment: DAAC asks that EPA "not limit" the Feasibility Study, which
19   should "[l]ook at all the clean-up options and favor productive use clean ups."

20   Response:  Plaintiffs agree that the FS should not be limited.  The FS will
21   look at all appropriate cleanup options.  Ex. A (CD) ¶ 10.b.  The section of EPA's
22   RI/FS guidance that is cited in the Statement of Work (and which DAAC cites as
23   potentially objectionable) merely says that for high-volume, low-concentration
24   waste, **if** treatment technologies are not practicable, then evaluation of alternatives
25   in an FS may focus "primarily on various containment options"; in other words, if
26   a particular technology is truly not feasible, the FS may focus primarily elsewhere.
27   *See* excerpt from *Guidance for Conducting Remedial Investigations and Feasibility*
28   *Studies Under CERCLA*, EPA/540/G-89/004, Oct. 1988, section 1.5), attached to

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decree*

20

1  this Memorandum as Exhibit E.

2      <u>Comment</u>:  DAAC states that the RI/FS should reassess previously

3  completed ecological risk assessments from the 1992-2008 time period.  DAAC

4  also raises a concern about what the Statement of Work means by saying that

5  Settling Defendants may "utilize existing [human health] risk assessments

6  completed by EPA for ECI and the [adjacent Residential Properties]."

7      <u>Response</u>:  Plaintiffs agree that the RI/FS should review and incorporate

8  previously completed human health and ecological risk assessments for the

9  Southern Pathway OU.  The Statement of Work provides for the incorporation of

10  previous risk assessments conducted by EPA and other parties into the

11  comprehensive risk assessment required as part of the RI/FS.  Ex. A (CD) App. B

12  at 7-8.  The RI/FS will not re-perform the ecological risk assessments already

13  completed, but if the site investigation suggests that further ecological risk

14  assessment is needed in the portion of the Southern Pathway OU beyond the ECI

15  Property and the adjacent Residential Properties, then EPA can require Settling

16  Defendants to perform an additional ecological assessment.  *Id.* at 8.  The RI/FS

17  does require Settling Defendants to perform a new Human Health Risk Assessment

18  to evaluate new data, and to incorporate previous data collection and risk

19  assessments as part of the comprehensive Human Health Risk Assessment.  *Id.* at

20  7.

21      <u>Comment</u>:  DAAC also raises concerns about the public's opportunity to

22  understand the past investigations at this OU, and about residents' ability to

23  understand the context of whether to consent to sampling in their yards.

24      <u>Response</u>:  The past investigations have been summarized in various public

25  documents, as set forth in the Statement of Work.  Ex. A (CD) App. B (Statement

26  of Work) at 19, 20 n.2.  After completion of the RI/FS, which will include analysis

27  of data from these past investigations as well as the sampling that Settling

28  Defendants will perform in the Southern Pathway OU, EPA will review the RI/FS

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decree*

21

and develop a Proposed Plan, on which the public will have the opportunity to comment before any remedy is selected for the Southern Pathway OU. *See supra* at 8. Plaintiffs share DAAC's concern about giving residents within the Site Investigation Area appropriate context about why it would be helpful to allow access for sampling in their yards. Accordingly, even in advance of moving to enter this CD, EPA has already conducted an information session for affected residents. Ex. C (Schulman Decl.) ¶ 20. EPA intends to conduct further outreach before access is requested. *Id.* EPA has also developed and is implementing a comprehensive community involvement plan at the Site, as discussed below at page 23.

> 2. <u>Comments regarding safety and DDT exposure at the Site</u>

<u>Comment</u>: "The problem with a piecemeal approach on this site is that the contamination is most often found in peoples [sic] yards, the air they are breathing and is compounded by the multigenerational health impacts" of chemical exposure.

<u>Response</u>: As described above at note 2, it is EPA's practice to divide Superfund sites into discrete OUs to facilitate organization of investigation and cleanup, as it has done here. EPA has worked to protect public health before, during, and after the cleanups occurring at different OUs of the Site. *See, e.g.,* ECF No. 3055-1 (Plaintiffs' Memorandum in Support of Motion to Enter Proposed Consent Decrees) at 19-23. There has been enormous progress toward cleanup at several OUs in the past months, leading to the lodging of the Southern Pathway, DNAPL, and O&M CDs, which represent nearly $80 million of cleanup and investigation work at three areas of the Site. The DNAPL and groundwater cleanups will protect the public health. *Id.* Many of the concerns raised by the comment address harms allegedly caused by exposure to DDT during active operations; should such harms have occurred, CERCLA would not be the vehicle for their relief.

<u>Comment</u>: DAAC mentions a "white layer" at 1144 Torrance Boulevard.

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decree*

22

Response:  DTSC sampled this white layer and laboratory analysis showed that it was not DDT.  *See* Ex. C (Schulman Decl.) ¶ 11.

      3.    Other comments regarding community involvement at the Site

Comment:  DAAC states that a "robust community engagement plan" is needed, and that "[i]mpacted residents should be engaged in the evaluation of health risks to the public" and "in technology identification and selection."  DAAC requests "that a specific community involvement process be documented in writing," and that the process "include in depth presentations with multi stakeholder engagement."  DAAC also requests technical assistance.

Response: EPA has written a comprehensive community involvement plan for the Site, which EPA updated in 2020 after soliciting community input. Community Involvement Plan for the Montrose and Del Amo Superfund Sites, Sept. 2020, https://semspub. epa.gov/work/09/100018256.pdf; Fact Sheet for the Montrose and Del Amo Superfund Sites, Spring 2019, https://semspub.epa.gov/work/09/100018256.pdf.  EPA recognizes the importance of community involvement and values the input of DAAC and other members of the public.  DAAC has been involved as a stakeholder at the Site since 1993, *see* ECF No. 3055-1 (Plaintiffs' Memorandum in Support of Unopposed Motion to Enter Proposed Consent Decrees), Ex. A (O&M CD) Att. A (ROD) at II.3-1, and EPA hosts regular public information sessions to inform the public of Site news, *see id.* Ex. C (Wetmore Decl.) ¶ 17.

      4.    Comments on miscellaneous CD provisions

Comment:  DAAC objects to preamble language in the CD stating Settling Defendants' position that hazardous substances, including DDT, found in the Southern Pathway OU come from sources other than the Montrose Plant Property.

Response: The statement in the CD regarding Settling Defendants' position follows a sentence clearly stating that the "Plaintiffs allege that these hazardous substances migrated from the Montrose Plant Property to the Southern Pathway

*United States and State of CA v. Montrose Chemical
Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decree*

23

OU via a historic stormwater pathway."  Ex. A (CD) ¶ N.  These two statements, taken together, simply reflect the disputed liability positions at this portion of the Site.  Plaintiffs are therefore not "giv[ing] credence" to Settling Defendants' assertion, but rather have gone on the record as disagreeing with it.

Comment: DAAC objects to CD language stating that "this Consent Decree does not obligate any Settling Defendant to agree to perform or fund any portion of the RD/RA for the Southern Pathway OU."

Response: This is a simple statement of fact; the CD does not resolve the yet-to-be-determined cleanup ("remedial design/remedial action" or "RD/RA"); it neither obligates Settling Defendants to perform it nor releases Settling Defendants from liability for that cleanup.  *See supra* n.5.  The Plaintiffs intend to pursue responsible parties as needed once EPA selects a remedy, following completion of the RI/FS and development of a proposed cleanup plan.  *See id.; see also supra* at 8.  Once the remedy is selected, the parties will endeavor to reach a cooperative resolution through another consent decree.  Ex. A (CD) ¶ P; *see also supra* n.5.

Comment:  DAAC objects to the CD definition of "force majeure."

Response:  The CD's force majeure language (¶ 44) is the model language from EPA's published model remedial design/remedial action consent decree, found at https://cfpub.epa.gov/compliance/models/view.cfm?model_ID=81.

## VI.    CONCLUSION

The proposed CD secures Settling Defendants' performance, with minimal expense to taxpayers, of the Remedial Investigation and Feasibility Study for the Southern Pathway OU, the crucial next step toward selecting and executing a cleanup for that portion of the Site.  The RI/FS will be performed to EPA's specifications, according to CERCLA's direction for RI/FS work.  The Settling Defendants also agree to pay $4 million in agency response costs, as well as agency costs of overseeing the investigation.  This comprehensive investigation and consideration of remedial alternatives will protect public health and the

*United States and State of CA v. Montrose Chemical
Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decree*

24

environment.  The CD reflects significant coordination and technical evaluation within and among the agencies, as well as careful consideration of the public interest and of public comment.  For these reasons, as well as those stated above and in the supporting declarations, the Plaintiffs request that the Court enter the Southern Pathway CD as fair, reasonable, and consistent with CERCLA.

*United States and State of CA v. Montrose Chemical
Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decree*

25

1    Respectfully submitted,

2    JEAN E. WILLIAMS
     Acting Assistant Attorney General
3    Environment & Natural Resources Division

4

5    Dated: June 3, 2021          / s /Deborah A. Gitin
                                  DEBORAH A. GITIN
6                                 Patricia L. Hurst
7                                 Environmental Enforcement Section
                                  Environment & Natural Resources Division
8                                 United States Department of Justice
9                                 Attorneys for the United States of America

10

11   Dated: June 3, 2021          / s /Megan Hey
                                  MEGAN HEY
12                                Catherine Wieman
13                                Deputy Attorneys General
                                  California Attorney General's Office
14                                Attorneys for the State of California on behalf of
15                                the California Department of Toxic Substances
                                  Control
16

17   OF COUNSEL FOR THE UNITED STATES OF AMERICA:
18   Dustin Minor
     Xiao Zhang
19   Assistant Regional Counsel
20   U.S. Environmental Protection Agency,
     Region IX
21   75 Hawthorne Street
22   San Francisco, CA 94105

23                               **ATTESTATION**

24       I hereby attest that all other signatories listed, and on whose behalf this filing

25   is submitted, concur in the filing's content and have authorized this filing.

26

27   Dated: June 3, 2021          / s /Deborah A. Gitin
                                  DEBORAH A. GITIN
28

*United States and State of CA v Montrose Chemical*
*Corp. of California, et al.*
*Memorandum ISO Motion to Enter Consent Decrees*