TODD KIM
Assistant Attorney General
PATRICIA L. HURST (DC Bar No. 438882)
Senior Counsel
E-mail: Patricia.Hurst@usdoj.gov
Environment and Natural Resources Division
U.S. Department of Justice
150 M Street NE
Washington, DC 20002
Telephone: (202) 532-3301
Attorneys for Plaintiff United States of America

[Additional Counsel Listed on Following Page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF CALIFORNIA, on behalf of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL,<br><br>Plaintiffs,<br><br>v.<br><br>MONTROSE CHEMICAL CORP. OF CALIFORNIA, et al.,<br><br>Defendants. | Case No. 2:90-cv-03122 (DOC) (GJS)<br><br>**PLAINTIFFS' NOTICE OF OPPOSITION TO ADDITIONAL STATUS CONFERENCES ON DEEP-OCEAN CONTAMINATION**<br><br>Judge: Hon. David O. Carter |

1

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*, Case No. 2:90-cv-03122
Plaintiffs' Notice of Opposition

ROB BONTA
Attorney General of California
SARAH E. MORRISON
Supervising Deputy Attorney General
CATHERINE WIEMAN (State Bar No. 222384)
E-mail: catherine.wieman@doj.ca.gov
MEGAN HEY (State Bar No. 232345)
E-mail: megan.hey@doj.ca.gov
Deputy Attorneys General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Telephone: (213) 269-6344
Facsimile: (213) 297-2802

Attorneys for Plaintiff State of California, on behalf of California Department of Toxic Substances Control

## I.   INTRODUCTION

The Court scheduled a status conference for August 8, 2024, and ordered Plaintiffs, the United States of America ("US") and the State of California on behalf of the California Department of Toxic Substances Control ("DTSC"),[1] to produce a member of the federal and state multi-agency workgroup investigating the scope, extent, and environmental impact of contamination at 14 historic waste disposal sites in the deep ocean off the coast of California ("Workgroup"). *See* June 14, 2024, Order (ECF No. 3119) ("Order"). Plaintiffs will produce two Workgroup members at the August 8 status conference in response to the Order.

Plaintiffs file this notice to make clear that they believe they and their Workgroup members should not have to appear at all on August 8 because (a) no Party has presented an issue to the Court for decision involving deep-ocean

---

[1] The US is the lead agency overseeing the cleanup of the Montrose Chemical Corporation Superfund Site in Torrance, California ("Montrose Site"). DTSC reviews and consults with the US consistent with Subpart F of the Comprehensive Environmental Response, Compensation, and Liability Act's ("CERCLA") National Contingency Plan, 40 C.F.R. §§ 300.500-300.525, as the lead State support agency.

2

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*, Case No. 2:90-cv-03122
Plaintiffs' Notice of Opposition

1  contamination–indeed, the area the Workgroup is studying is not part of the
2  Montrose Site; and (b) this Court has no role in oversight of the Workgroup's
3  activities. Even so, Plaintiffs will produce Workgroup members, out of an
4  abundance of caution, to make sure that there is nothing for the Court to learn
5  about the deep-ocean contamination that might be relevant to the current lawsuit.
6      Plaintiffs are willing to produce the Workgroup members even though
7  Plaintiffs' counsel have responded to the Court's inquiries about the deep-ocean
8  contamination at two prior status conferences, and in the Parties' Joint Status
9  Report, and have previously conveyed to this Court that the deep-ocean
10 contamination is not relevant to the case currently before the Court because the
11 issues presently before the Court do not involve any of the 14 deep-ocean disposal
12 sites. *See* January 22, 2024, Hearing Tr. (attached as Ex. 1); June 6, 2024, Hearing
13 Tr. (Ex. 2); Joint Status Report, filed May 10, 2024 (ECF No. 3107).
14     Plaintiffs also wish to make clear that the Workgroup members who will
15 appear in response to the Court's Order are able to speak only for themselves based
16 on their personal knowledge and experience. It is not possible for any one
17 Workgroup member to represent the views of the multi-agency, multi-disciplinary
18 Workgroup.

19 **II.    BACKGROUND**
20     **A.    Montrose's Historic Ocean Disposal of Acidic Waste That
21            Contained DDT**
22     After a review of historic records, the U.S. Environmental Protection
23 Agency ("USEPA") made initial findings in 2021 describing the historic ocean
24 waste disposal practices of Defendant Montrose Chemical Corp. of California
25 ("Montrose"). *See* USEPA Memorandum dated April 20, 2021, Ex. 1 to
26 Montrose's Notice of Lodging, filed June 27, 2024 (ECF No. 3120-1). USEPA
27 determined that, from about 1948, Montrose contracted with California Salvage
28

Company ("California Salvage") to bring a tanker truck to its facility in Torrance, which would pump about 3,000 gallons of spent filtrate acid sludge from the facility's waste storage tank into the tanker truck. This acid waste contained DDT. *Id*. at 3.

USEPA also determined that California Salvage drove the tanker truck to the harbor and unloaded Montrose's acid waste from the truck onto a barge. California Salvage then towed the barge to an approved location offshore and released the acid waste from the barge directly into the ocean (though one deponent heard rumors that California Salvage would sometimes dump the waste closer to shore). *Id*. at 3. This disposal practice continued until the early 1960s, when Montrose built an acid recovery plant at its Torrance facility. *Id*.

In its 2021 Memorandum, USEPA stated that Montrose used barges exclusively to dispose of its acid waste in bulk to the ocean; USEPA found no evidence that Montrose put its acid waste in barrels, or any other sort of container, that were then dumped into the ocean. *Id*. at 4.

**B.     The 2001 Consent Decree Addressing Montrose's Liability for Disposals in "Offshore Areas"**

Over 23 years ago, on March 15, 2001, the Court entered a consent decree resolving Montrose's CERCLA liability for waste disposal in "Offshore Areas," which include:

> [T]he areas in and around Santa Catalina and the other Channel Islands . . . the San Pedro Channel . . . any ocean dumpsites used for disposing of wastes from the Montrose Plant Property and any offshore areas to which hazardous substances, including without limitation DDT, aerially or otherwise originating from the Montrose Plant Property or the Stauffer Dominguez Plant Property have or may come to be located.

2001 Consent Decree ¶ 5(H).

4

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*, Case No. 2:90-cv-03122
Plaintiffs' Notice of Opposition

In May 2001, Montrose paid $73 million to the United States under the 2001 Consent Decree, including $30 million for natural resources damages and $43 million for past and future response costs. *Id.* ¶¶ 7, 11. USEPA has used some of these funds to perform cleanup work at the Montrose Palos Verdes Shelf site, which is a near-shore, underwater (130-490 feet or 40-150 meters deep) area that became contaminated through chemical runoff from the Montrose facility[2] into the Pacific Ocean via sewage outfalls.

The Montrose Palos Verdes Shelf site is different from the deep-ocean Disposal Site #2 identified by the Workgroup. Disposal Site #2 is in the San Pedro Channel about halfway (12 miles or 19 km) between the Palos Verdes Peninsula and Santa Catalina Island. Disposal Site #2 is approximately eight miles (13 km) beyond the Palos Verdes Shelf and is at a depth of around 3,200 feet (1,000 meters).[3]

Paragraph 8 of the 2001 Consent Decree contains a covenant not to sue with respect to past and future costs incurred in response to, and natural resources damages from, DDT and other hazardous-substance releases from the Montrose facility to "Offshore Areas." The Parties have not asked this Court to interpret or apply Paragraph 8 or any other provision of the 2001 Consent Decree in this litigation.

### C.    The Three Consent Decrees this Court Entered in 2021

On September 30, 2021 (ECF Nos. 3073 and 3074), the Court entered the three other consent decrees that resolved the active litigation and secured Settling Defendants'[4] commitment to perform cleanup and investigation work valued at

---

[2] The Montrose Chemical Corp. facility is located at 20201 Normandie Ave, Torrance, CA 90502.

[3] *See* https://www.epa.gov/ocean-dumping/southern-california-ocean-disposal-site-2-investigation.

[4] The Settling Defendants are Montrose, Bayer CropScience Inc., Stauffer Management Company LLC, and TFCF America, Inc.

5

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*, Case No. 2:90-cv-03122
Plaintiffs' Notice of Opposition

over $77 million, as well as to make payments of over $8 million for past response costs incurred by the US and DTSC. These Consent Decrees are:

- The "O&M Consent Decree" (ECF Nos. 3087, 2987), which commits the Settling Defendants (together with one other settling defendant who is not a party to the case) to perform long-term operation and maintenance ("O&M") of the Chlorobenzene Plume groundwater remedy at the Dual Site OU of the Montrose Site;
- The "DNAPL Consent Decree" (ECF Nos. 3088, 3050), which commits the Settling Defendants to perform the cleanup of dense non-aqueous phase liquid ("DNAPL") contamination that rests primarily under the footprint of the former Montrose plant property; and
- The "Southern Pathway Consent Decree" (ECF Nos. 3089, 3054), which commits the Settling Defendants to perform a Remedial Investigation and Feasibility Study in the Southern Pathway portion of the Montrose Site, also known as the "Historic Stormwater Pathway – South."

Work is proceeding smoothly under all of the 2021 Consent Decrees. The Settling Defendants have timely met all deadlines, including, among others, the payment of past response costs, the completion of field sampling, the establishment of financial assurance, and the completion of tasks and submission of deliverables required under the three Consent Decrees. There have been no formal disputes raised by any Party under any of the 2021 Consent Decrees. *See* Joint Status Report, filed May 10, 2024 (ECF No. 3107).

Importantly, none of the 2021 Consent Decrees has to do with the deep-ocean contamination in the 14 historic waste disposal sites being addressed by the Workgroup.

6

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*, Case No. 2:90-cv-03122
Plaintiffs' Notice of Opposition

## III. PLAINTIFFS SHOULD NOT HAVE TO APPEAR OR PRODUCE WORKGROUP MEMBERS AGAIN ON THE DEEP-OCEAN CONTAMINATION.

### A. There Is No Issue Before the Court Involving the Deep-Ocean Contamination.

The Parties agree that the issue of Montrose's liability for any deep-ocean contamination is not before the Court. *See* Joint Status Report, filed May 10, 2024 (ECF No. 3107), at 10. In the operative Third Amended Complaint, and in their prior complaints, Plaintiffs have not sought to compel Montrose or any other entity to pay for or perform cleanup work at any of the deep-ocean waste disposal sites, including Disposal Site #2. Nor have Plaintiffs sought a declaratory judgment on Montrose's liability for any deep-ocean contamination.

The Court has repeatedly acknowledged that there is no issue before it regarding the deep-ocean contamination. At its January 22, 2024, status conference, the Court underscored that its inquiry into deep-ocean contamination is not based on its jurisdiction over this litigation against Montrose:

> THE COURT: And *regardless of Montrose's involvement or non-involvement or multiple group, not inviting litigation* -- but what I'm saying is what's the duty of at least inquiring about where we are? Because I could have remedial work being done on the Montrose facility, the waterways and the shelf, and have a, literally, an environmental nuclear time bomb going off. If that's the case, I really would like to know what's being done, because that case could become part and parcel of this case.

January 22, 2024, Hearing Tr., Ex. 1, at 10, line 24 to 11, line 6 (emphasis added). The Court made similar statements at its June 6, 2024, status conference:

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*, Case No. 2:90-cv-03122
Plaintiffs' Notice of Opposition

> THE COURT: From my perspective, I don't care. In
> other words, I don't care who is involved, whether it's Montrose or
> somebody else.
> I care that this isn't being defined. I care that
> the local officials may or may not know. I care that if we
> do have an ecological disaster that we're all aware of it,
> and chose to sit on our hands and do nothing about it.
> Or that we took some kind of action in terms of
> coordinating through your good offices, back to the federal
> government. And we tie in the local people here so they're
> aware that we may have a real issue.
> That may not be Montrose's responsibility at all.
> So I don't care if Montrose.
> I just care, What do we have down there? So far
> I've heard, We don't know.

June 6, 2024, Hearing Tr., Ex. 2, at 43, lines 24-25 to 44, lines 1-13. And, later in the proceeding:

> THE COURT: Whether this absolves [Montrose] in terms of clause you
> referred to or not, *whether this is still liability on
> Montrose's part, that's for the future. I have no opinion
> about that. It's not in front of me.* I just care that the
> public is knowledgeable about this.

*Id*. at 53, lines 23-25 to 54, lines 1-2 (emphasis added).

      Nevertheless, the Court indicated after extensive questioning of counsel for Plaintiffs about the deep-ocean contamination at its January 22 and June 6 status conferences that it would schedule a third conference, at which it would question the "head" of the Workgroup about its activities, including its communications with Congress and local officials, and about the activities of the Scripps Institution of Oceanography ("Scripps"):

> THE COURT: What I'd really like, and you don't
> want me to do it, I'd like the board -- or the head of the
> board to appear in my court and give me the information that
> both of you are not knowledgeable about. I'd like to know
> what they're meeting and what they're doing. I'd love to

8

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*, Case No. 2:90-cv-03122
Plaintiffs' Notice of Opposition

>know that the United States senator is aware of this. I'd love to know that the Board of Supervisors is aware of it. I'd like to get further clarification about what Scripps is doing. I'd like to know if I've got 25,000 barrels or non-barrels down there of DDT, or 300- to 500,000.

*Id*. at 51, lines 11-21.

Based on statements by the Court, the purpose of the Court's inquiry appears to be (1) to highlight the potential threats that may be posed by the deep-ocean contamination for the local community, and (2) to encourage federal, state, and local governments to prioritize their response to the deep-ocean contamination:

>THE COURT: In other words, it's the same place we started when I asked you about the local community being involved in the meetings that we're having and paying you the compliment that They're engaged and knowledgeable and are involved in our case. It's the same thing that I think should be happening here.
>And but for the *L.A. Times* writing the front-page article and stirring this up, I think everybody has gone to sleep, quite frankly. This Court doesn't want to be in that position if this is truly a public health issue. It sure seems to be of some concern.

*Id*. at 52, lines 1-9. These are both laudable goals. But they are outside the oversight function that is appropriate for this Court to perform to ensure that its three 2021 Consent Decrees are successfully implemented.

Our Nation's adversarial adjudication system follows the principle of party presentation. *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). "[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Id*. Writing for a unanimous Supreme Court in *United States v. Sineneng-Smith,* Justice Ruth Bader Ginsburg explained the principle of party presentation this way:

9

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*, Case No. 2:90-cv-03122
Plaintiffs' Notice of Opposition

> "[C]ourts are essentially passive instruments of government." They "do not, or should not, sally forth each day looking for wrongs to right. [They] wait for cases to come to [them], and when [cases arise, courts] normally decide only questions presented by the parties."

590 U.S. 371, 376 (2020) (quotation omitted). *See also Baird v. Bonta*, 81 F.4th 1036, 1041 (9th Cir. 2023) ("The principle of party presentation instead requires the court to rely on the parties to frame the issues for decision." (quotation omitted)).

The principle of party presentation applies equally to courts when overseeing implementation of consent decrees. *See, e.g., Keepseagle v. Perdue*, 856 F.3d 1039, 1052-53 (D.C. Cir. 2017) (citing *Greenlaw*, court refused to entertain legal arguments raised for the first time on appeal in dispute under settlement agreement). As a general rule, "[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in judgment).

Plaintiffs are not currently seeking to compel Montrose to pay for or perform any cleanup work in the deep ocean, in this or any other proceeding. Settling Defendants are not seeking a determination of their liability for any deep-ocean contamination. Because the Parties are not asking the Court to resolve an issue pertaining to deep-ocean contamination the Court should refrain, under the well-established principle of party presentation, from exploring historic waste disposal in the deep ocean in the context of this lawsuit.

**B.     The Court Has No Role in Overseeing the Activities of the Workgroup.**

As discussed below in Section IV(A), the Workgroup is tasked with further understanding Disposal Site #2, including (1) potential waste volumes and

10

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*, Case No. 2:90-cv-03122
Plaintiffs' Notice of Opposition

composition; (2) potential risks to human health and the environment; and (3) strategies that may be available to reduce any adverse impacts.

There is no litigation before this Court or any other involving the activities of the Workgroup. Therefore, there is no public need for this Court to oversee the activities of the Workgroup in its role as the arbiter of this litigation. The Court has no jurisdiction over the Workgroup or the professionals who collaborate on these issues. They are not subject to the Court's oversight, nor should they be. The Workgroup members must pursue each of these novel and complex issues as they see fit, based on their professional judgment, in the time it takes to produce well-informed determinations and proposed solutions.

## IV. WORKGROUP MEMBERS CAN SPEAK ONLY FOR THEMSELVES.

### A. The Workgroup Is a Multi-Agency, Multi-Disciplinary, Body Charged with Four Specific Tasks.

The Workgroup is comprised of members from 10 federal and state agencies, including: (1) USEPA; (2) the National Oceanic and Atmospheric Administration's ("NOAA") Office of Marine and Aviation Operations; (3) NOAA's Office of Response and Restoration-Assessment and Restoration Division ("ORR"); (4) US Department of the Interior ("DOI"); (5) the California Department of Fish and Wildlife; (6) the California Ocean Protection Council; (7) the Los Angeles Regional Water Quality Control Board; (8) the California State Water Resources Control Board; (9) DTSC; and (10) the US Army Corps of Engineers.

These collaborating agencies came together in early 2021 after the *LA Times* reported in October 2020 on the work of scientists conducting research at the University of California at Santa Barbara.

11

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*, Case No. 2:90-cv-03122
Plaintiffs' Notice of Opposition

Since the inception of the Workgroup, decisions have been driven by senior representatives of the collaborating agencies, including the Deputy Director of USEPA Region 9's Superfund and Emergency Management Division ("SEMD"); the Director of NOAA's ORR; the Regional Environmental Officer of US Fish and Wildlife; USEPA Region 9's Office of Environmental Policy and Compliance; the Executive Officer of the Los Angeles Regional Water Quality Control Board; the Chief Deputy Director of the State Water Board; the Deputy Director of DTSC's Site Mitigation and Restoration Program; and the Executive Director of the California Ocean Protection Council.

These officials charged the Workgroup with four tasks: (1) document the operational and regulatory history of Disposal Site #2; (2) determine the nature of contamination of Disposal Site #2 and identify areas of significant waste disposal; (3) evaluate environmental conditions and trends of the Southern California Bight (the curved coastline between Point Conception and San Diego that encompasses the Channel Islands); and (4) if conditions at Disposal Site #2 are determined to threaten human health or the environment, conduct technology screening of potential options for addressing risk for Disposal Site #2. *See* Joint Status Report, filed May 10, 2024 (ECF No. 3107), at 14-15.

The Workgroup is focusing on the first two tasks; the third and fourth will follow after the first two tasks are completed. *Id*. The Workgroup is investigating Disposal Site #2 first because Scripps is using its novel technology to capture images of the deep ocean floor within Disposal Site #2. *Id*.

The individual members of the Workgroup are from a variety of academic disciplines and together bring a broad array of knowledge and experience to these four tasks. *See* Spreadsheet of Workgroup Members, Ex. 1 to Notice of Filing dated June 11, 2025 (ECF No. 3115-1). The Members include environmental scientists, geologists, ecologists, and microbiologists. *Id*. There are also experts in

12

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*, Case No. 2:90-cv-03122
Plaintiffs' Notice of Opposition

water quality, spacial data, and ordnance and explosives, as well as project managers and an environmental lawyer. *Id*. The members of the Workgroup have a common understanding that, while the issues before them are novel, all will lend their expertise to determine what can and should be done to address contamination in the deep ocean.

Each collaborating agency participating in the Workgroup retains its own autonomy and speaks with its own voice with respect to the deep-ocean contamination. USEPA fulfills the nominal role of coordinating the Workgroup by facilitating, organizing, and setting the agenda for the meetings. Membership in the Workgroup is limited to federal and state agencies to allow members to speak candidly as their agencies navigate unchartered waters. Even so, Workgroup members frequently engage with scientific experts outside government, who have extensively vetted the Workgroup's conceptual model for Disposal Site #2. They also consult frequently with citizens, academics, non-governmental organizations, local governments, and others.

Workgroup members respond to any and all inquiries from the public. The Workgroup created a website to share developments with the public, which includes a point of contact for the public to ask questions. Since October 2020, Workgroup members have responded to over 160 such inquiries, including several inquiries from representatives of local governments. Workgroup members have also met with local officials about the deep ocean at their request, including Tim McCosker, City Councilman for the San Pedro area, in June 2023. Partly in response to the concerns of the Court, the United States also recently invited the City and the County of Los Angeles, through their counsel, to consult with members of the Workgroup at any time they wish.

13

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*, Case No. 2:90-cv-03122
Plaintiffs' Notice of Opposition

### B. The Workgroup Members Who Will Appear on August 8 Can Speak Only for Themselves.

Plaintiffs will produce Workgroup members Judy Huang and Edwin "Chip" Poalinelli at the August 8 status conference. Since 2006, Ms. Huang has been a senior Remedial Project Manager ("RPM") in USEPA's Superfund and Emergency Management Division ("SEMD"). The SEMD's Southern California Branch includes the Montrose Site as well as others in the San Fernando Valley, San Gabriel Valley, and Orange County North Basin, and multiple Federal Facilities. Ms. Huang serves as the facilitator and organizer of the Workgroup and prepares the agenda for each Workgroup meeting.

Mr. Poalinelli was recently promoted to Assistant Director of SEMD's Southern California Branch and is a newly-appointed Workgroup member. Before becoming the Assistant Director, Mr. Poalinelli served as the first-line supervisor for one of the SEMD's Southern California Sections, which oversees large Superfund sites, including the Montrose Site. His leadership focus has been on building USEPA's capacity to develop and sustain relationships with Los Angeles communities, and to improve collaboration among local, state, and federal agencies to clean up sites more efficiently and reduce their impacts on neighboring communities.

Ms. Huang and Mr. Poalinelli have prepared extensively for the August 8 status conference. They (1) reviewed the transcripts of the Court's January 22 and June 6 status conferences to understand the Court's expressed interests in the Workgroup's investigation of the deep-ocean contamination; (2) met with other Workgroup members to gather information specific to the Court's expressed interests; and (3) met with the employee coordinating USEPA's response to the deep-ocean contamination to understand the current status of USEPA's investigation.

14

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*, Case No. 2:90-cv-03122
Plaintiffs' Notice of Opposition

Ms. Huang and Mr. Poalinelli will endeavor to provide full and fair answers to the Court's inquiries about the activities of the Workgroup. But they must answer the Court's questions based on their own personal knowledge and experience. They may lack technical knowledge in the hands of other Workgroup members that might allow for more nuanced answers to certain questions the Court may ask.

Because the Workgroup is a collaboration of independent federal and state agencies, Ms. Huang and Mr. Poalinelli cannot speak for the Workgroup as a whole. They can, however, provide the Court with their own perspectives based on their knowledge and experience.

Respectfully submitted,

**FOR THE UNITED STATES OF AMERICA:**

TODD KIM
Assistant Attorney General

Dated: <u>August 1, 2024</u>  /s/ Patricia L. Hurst
Patricia L. Hurst
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice

15

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*, Case No. 2:90-cv-03122
Plaintiffs' Notice of Opposition

FOR THE CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL:

Dated: August 1, 2024

/s/ Megan Hey
Rob Bonta
Attorney General of California

Megan Hey
Deputy Attorney General
California Attorney General's Office

OF COUNSEL FOR THE UNITED STATES OF AMERICA:

Ylan Nguyen
Dustin Minor
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, CA 94105

**ATTESTATION**

I hereby attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized this filing.

Dated: August 1, 2024

/s/ Patricia L. Hurst
Patricia L. Hurst

16

*United States and State of CA v. Montrose Chemical Corp. of California, et al.*, Case No. 2:90-cv-03122
Plaintiffs' Notice of Opposition